UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| SHEILA LEWIS,<br>Individually and on behalf of a class of<br>Persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTBILT HOMES, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**C V 5 1 0    0 1 6**

Civil Action No.: _____

## CLASS ACTION COMPLAINT

Plaintiff Sheila Lewis ("Plaintiff"), individually and on behalf of all others similarly situated, for this class action complaint against Scotbilt Homes, Inc. ("Scotbilt" or "Defendant"), alleges upon information and belief, except as to the allegations which pertain to Plaintiff and her counsel which claims are based on personal knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of herself and all other individuals who purchased a manufactured home that was manufactured and sold by Defendant.

2. When Plaintiff and other similarly situated purchased their manufactured homes, they were provided an Insulation Disclosure Form as required by the Federal Trade Commission ("FTC") in 16 CFR Part 460 and/or other forms that disclosed the amount and R-Value of insulation that was installed in their homes.

1

3.      This action alleges that Defendant has violated federal law and state statutory law and common law in issuing Insulation Disclosure Cards to Plaintiff and others similarly situated, breaching its contracts with these homeowners and suppressing from Plaintiff and other Class members the true R-Value in the insulation installed in their manufactured homes. Plaintiff seeks, *inter alia*, an order permanently enjoining Defendant from manufacturing and selling homes with a lower R-Value of insulation than is represented and requiring Defendant to add more insulation to homes already sold as well as to homes manufactured by Defendant in the future.

4.      Plaintiff seeks certification of a Class comprised of all United States residents who purchased a home manufactured and sold by Scotbilt who paid for goods and/or services they did not receive in the form of a lower R-Value of insulation as a result of the improper conduct of Defendant

5.      Defendant's illegal conduct, as alleged herein, injured Plaintiff and the Class in numerous ways, including, but not limited to

>      a. Plaintiff and the Class have lost the use of adequate insulation and, as a result, are incurring increased daily costs of heating and cooling their homes;
>
>      b. Plaintiff and the Class will experience diminution in value of their homes due to the fact that Plaintiff and the Class must disclose to prospective buyers that the insulation in their attic was not correctly installed, or alternatively, Plaintiff and the Class would be required to fix the problem prior to sale without disclosure;
>
>      c. Plaintiff and the Class are in possession of homes that do not comply with the material provisions of the Sales Agreements, the Scotbilt Warranty, and federal regulations.

2

6.      Plaintiff brings this seven count Complaint to redress said injuries on behalf of herself and the Class, alleging:

      I.      Violation of 18 U.S.C. § 1962(c)

      II.     Violation of O.C.G.A. 16-4-4 (Georgia RICO)

      III.    Breach of Express Warranty

      IV.    Violation of Magnuson-Moss Warranty Act

      V.     Violation of the Georgia Uniform Deceptive Trade Practices Act

      VI.    Breach of Contract

      VII.   Unjust Enrichment

      VIII.  Misrepresentation by Concealment

## JURISDICTION AND VENUE

7.      The claims made by Plaintiff on behalf of herself and the other members of the Class are brought for relief including, but not limited to, injunctive relief, equitable monetary relief and monetary damages well in excess of $5,000,000.00, as appropriate for the particular causes of action asserted below. Although the exact number of Class members is unknown, upon information and belief, there are at least 100 members in the putative Class.  Plaintiff, a citizen of the state of Florida, is a citizen of a state different from Defendant, a citizen of the state of Georgia.  Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d)(2)(A), 28 U.S.C. §1332(a)(1), 28 U.S.C. §1331 and 29 U.S.C. §1367.

8.      Venue is proper in this District and Division pursuant to 28 U.S.C. §1391.

9.      Scotbilt is found, does business in or transacts business within this District and Division. Scotbilt maintains its world headquarters within this District and Division.

3

10.    Scotbilt's improper conduct set forth herein occurred in this District and Division. Scotbilt directly advertised, marketed and sold manufactured homes to consumers in this District. Scotbilt's headquarters are located within this District and the wrongdoing described herein was directed by Scotbilt from its headquarters in this District.

11.    The harm alleged herein occurred in this District and Division or emanated from Scotbilt's improper conduct that occurred within this District and Division.

## PARTIES

### Plaintiff

12.    Plaintiff Sheila Lewis is an adult resident citizen of Florida.

### Defendant

13.    Defendant Scotbilt Homes, Inc. is believed by Plaintiff to be a Georgia corporation or business whose principal place of business is located at 2888 Fulford Road, Waycross, Georgia 31503 and whose agent for service in the State of Georgia is Sam P. Scott. Defendant manufactures homes in the State of Georgia and sells these homes throughout the United States.

## FACTS

14.    In manufacturing and distributing manufactured homes, Scotbilt installs insulation in those homes.  In particular, insulation is installed in the roof and/or attic cavity of the homes that are manufactured by CMH.

15.    As a seller of new manufactured homes, Scotbilt is required by law to provide to Plaintiff and others similarly situated certain information that discloses the type, thickness and R-Value of the insulation that was installed in the roof and/or attic of their homes.  16 C.F.R. §460, *et seq.* (the "R-Value Rules").

4

16.     The FTC has promulgated rules about R-Values to protect consumers against deceptive and misleading advertising claims. The FTC issued the R-Value Rules to prohibit, on an industry-wide basis, specific unfair or deceptive acts or practices that mislead consumers because of inaccurate representations about insulating capacity.

17.     The FTC's R-Value Rules require home insulation industry members, including Scotbilt and its retailers, to provide R-Value information based on the results of standardized tests to consumers at the point of sale.

18.     Scotbilt failed to comply with these FTC regulations that require Scotbilt to provide correct information to consumers, either directly or through its retailer agents, about the R-Value of the insulation used in its manufactured homes. Specifically, Scotbilt provided false and misleading information about the R-Value of the insulation that was installed in the roof and/or attic of the manufactured homes sold to Plaintiff and Class members.

19.     For the insulation installed in the roof and/or attic cavity of the homes purchased by Plaintiff and Class members, Scotbilt uses "stabilized" blown insulation manufactured by US GreenFiber LLC or other insulation manufacturers.

20.     An R-Value indicates the insulation's resistance to heat flow. The higher the R-Value, the greater the insulating effectiveness. With few exceptions, R-Values range from R-1 to R-30, and typically range between R-14 and R-28. Scotbilt systemically represents that insulation installed in its manufactured homes is installed to a certain R-Value when in fact the actual R-Value is less than what is promised and represented.

21.     Scotbilt failed to install insulation in the attic cavities of all its manufactured homes to the R-Value represented because (1) it systematically failed to follow proper installation techniques and/or (2) it used improper calculation methods to determine the amount

of insulation that would be needed to obtain the insulation depth required to achieve the represented R-Value.

22.     Improper installation of insulation can affect the R-Value of the insulation. For example, the failure to add the required amount of moisture when installing "stabilized" blown insulation will cause the insulation to become compressed. Certain levels of moisture are necessary when installing stabilized blown insulation because stabilized insulation contains a special dry adhesive that, when installed correctly, is activated by water and "sets up" to create a blanket-like mass. Insulation that is compressed due to improper installation will not provide its full rated R-Value. Therefore, it is important to properly install insulation according to the insulation manufacturer's instructions to achieve the represented R-Value. A minor variation in the depth of insulation due to improper installation can materially affect the R-Value, as a one-inch variance can change the R-Value from R-21 to R-14.

23.     Regardless of whether Scotbilt properly installed the insulation, Scotbilt did not even install the amount of insulation into the attic cavities of its manufactured homes that was necessary to achieve the R-Value represented to customers because Scotbilt used a flawed methodology for calculating or determining the amount of insulation that would be necessary to achieve a specific R-Value.

24.     In December 2000, FTC staff issued a public letter stating that averaging insulation depths to determine R-Value violates FTC regulations, including 16 C.F.R. §460.1, *et seq.* This December 2000 letter stated that FTC regulations require "the installation of loose-fill insulation at or above the required minimum settled thickness at every location" and that the "minimum thickness labeling requirement . . . [does not] provide[] loose-fill installers with the

6

discretion to leave some areas at less than minimum settled thickness and then average the overall thickness as a means to yield the appropriate R-Value."

25.     In Plaintiff's home, the insulation is insufficient to produce the represented R- and U-Values (described below).   Because Scotbilt systematically failed to properly install the insulation, and/or improperly calculated R-Value by, among other things, averaging insulation depth, the R-Values and U-Values of insulation in Plaintiff's and Class members' homes are not as represented.

26.     Because the effect of R-Values is non-linear in terms of insulating capacity, the difference between what was represented and what Plaintiff and Class members received is material.

27.     As a result of Scotbilt's failure to properly install insulation and/or its failure to properly calculate the amount of insulation required to achieve the disclosed R-Value, the representations regarding R-Value provided by Scotbilt were false and misleading to consumers.

28.     Scotbilt also improperly calculated and fraudulently represented the U-Values of the insulation, which can be used to determine the R-Value, on the "data plate" included in every home prior to shipment as required by U.S. Department of Housing and Urban Development ("HUD") regulations.

29.     U-Values rate how much heat is lost through a material or combination of materials.   The lower the U-Value the better the insulation capacity provided by that material. Thus, a U-Value of 0.35 would indicate better energy efficiency than a U-Value of 0.43.   U-Values can also be correlated to the R-Value, such that if the U-Value is wrong, the R-Value is also wrong.

7

30.    Thus, when Scotbilt represents the R-Value or component U-Value of the blown insulation in its manufactured homes to its customers via advertising and other disclosures required by the FTC and HUD, it routinely misrepresents the R-Value of the insulation provided to consumers in these manufactured homes. Scotbilt also does not disclose the material fact that, to obtain the represented R-Value, the insulation needed to be properly installed, which it was not, and/or the insulation needed to be installed using proper calculations for determining the amount of insulation that would be necessary to achieve a certain R-Value, which it was not.

31.    Improper installation of insulation in a manufactured home is also a violation of quality assurance standards promulgated by HUD, as set forth in 24 C.F.R. § 3280, *et seq.* Under these regulations, and specifically 24 C.F.R. §3282.251(a), such homes should never have been sold in the first place if insulation is not properly installed. Thus, as the insulation was uniformly improperly installed, such a failure constitutes a "defect" under the HUD regulations, requiring Scotbilt to repair Class members' homes for the life of their homes. Such a uniform defect results not only in a need to make the appropriate repairs, but also in increased cooling and heating costs.

32.    This misrepresentation of the R-Value and U-Value of the blown insulation was not accidental. Along, with its Design Approval Primary Inspection Agency ("DAPIA") and its In-Plant Primary Inspection Agency ("IPIA"), PFS Corporation, Scotbilt undertook a fraudulent and deceptive scheme to mislead home purchasers regarding the insulative capacity of their home.

33.    DAPIAs are third-parties selected by Scotbilt to, among other things, approve its manufactured home designs for compliance with the Federal Manufactured Home Construction Safety Standards.   IPIAs are third-parties selected by Scotbilt to be on-site at Scotbilt's

8

manufacturing plants in order to, among other things, evaluate quality control and to assure that the homes Scotbilt manufactures actually conform to the designs approved by the DAPIA.

34.     This fraudulent scheme required the participation of the DAPIA and IPIA, PFS Corporation, which signed off on Scotbilt's insulation designs, calculations, and installation methodologies, with knowledge that these designs, calculations and methodologies were fraudulent and deceptive.

35.     As a result of these illegal practices, Plaintiff and other members of the Class have suffered injury in fact, lost money or property and/or have been damaged by Scotbilt's conduct in that they have (1) paid more for their manufactured homes than they would have if they had known that the home was not equipped with a the amount of insulation that was advertised in terms of the R-Value of the insulation; (2) incurred millions of dollars in losses in increased daily costs of heating and cooling their homes due to the lower R-Value of the insulation actually installed; (3) incurred the costs of repair (or of the future repair to) the insulation to ensure that the home is actually insulated at the R-Value originally represented by Scotbilt; and, (4) suffered a diminution in the resale value of their homes as a result of the fact that the deficient R-Value must be disclosed to prospective buyers that the insulation in the attic was not correctly installed, or alternatively, Plaintiff and the Class are or were required to fix the problem prior to re-sale.

## SHEILA LEWIS' TRANSACTION

36.     In May of 2005, Plaintiff purchased a manufactured home that was manufactured by Scotbilt. The manufactured home bears serial number SBHGA1180500605A/B. As part of the purchase of the manufactured home, Plaintiff received a sales order form and/or an Insulation Disclosure Form from Scotbilt that represented to Plaintiff that the insulation in the attic cavity

of her manufactured home would have an R-Value of R-21. Scotbilt also included a Data Sheet inside Plaintiff's home that represented to Plaintiff that the insulation in her attic would have a U-Value of U-.046. At the time of issuing the Insulation Disclosure Form, Scotbilt was using blown insulation and represented that it blew the insulation in the attic cavity of Plaintiff's home to a depth of 5.68 inches. The insulation in the attic cavity of Plaintiff's home is significantly less than 5.68 inches. By representing to Plaintiff and others similarly situated that they were receiving a higher R-value of insulation than what was actually installed, Defendant has violated the federal law and the statutory and common laws in the State of Georgia. Further, by providing misleading information on the FTC required Insulation Disclosure, Defendant violated federal law as well as the laws of the State of Georgia. This action is brought pursuant to Georgia law.

**THE INSULATION ENTERPRISE**

37.    As described above, in furtherance of its fraudulent scheme, Scotbilt reduced the amount of insulation installed in the homes it manufactured for the purpose of maintaining and increasing sales of its manufactured homes and to ensure higher profits for those homes. Scotbilt knew that the R-Value of the homes it sold were materially lower than what that was represented to its customers.

38.    As a result of Defendant's fraudulent scheme as alleged herein, Scotbilt's consumers were lulled into a sense of security believing that these homes were insulated to the levels that Scotbilt represented. Relying on these non-disclosures and misrepresentations, Plaintiff and other Class members paid millions of dollars for the manufactured homes that they would not have otherwise paid had they known the truth.

39.     Scotbilt's scheme to defraud and conceal the truth was carried out through the use of an illegal enterprise ("the Insulation Enterprise"). Scotbilt and others in the Insulation Enterprise have participated in the enterprise's affairs through a pattern of racketeering activity consisting of countless acts of mail and wire fraud. These predicate acts of racketeering activity were related to each other in furtherance of the scheme described above and amounted to continuing racketeering activity and, therefore, constitute a pattern of racketeering through which Defendant has violated 18 U.S.C. § 1962(c).

40.     The following persons constitute the Insulation Enterprise, which is an association-in-fact enterprise: (i) Scotbilt, the defendant in this litigation and (ii) and its DAPIA and IPIA, PFS Corporation who fraudulently approved its designs, calculations and installation methodologies despite knowledge that they were deceptive to ensure that Scotbilt continued to sell homes at inflated prices.

41.     The Insulation Enterprise was an ongoing organization which existed continuously from as early as 1999 through the present. Scotbilt was associated with the enterprise.

42.     The sales of manufactured homes have decreased substantially over the past decade, and have decreased even more drastically in recent years due to the tightening of credit markets. If Scotbilt had failed or fails to maintain its sales of manufactured homes during this industry-wide downturn, its IPIAs and DAPIAs could also potentially loose the valuable contracts that it has with Scotbilt. Accordingly, Scotbilt and its DAPIA and IPIAs share an interest in maintaining and/or increasing the sales of Scotbilt's manufactured homes during this decade-long industry decline in the sales of manufactured homes. The common purpose of the Insulation Enterprise was, therefore, to maintain and increase the sales of Scotbilt's

manufactured homes and conceal the shortfall of insulation caused by Scotbilt's designs, calculations and installation methodologies which allowed Scotbilt to save money on materials used in the construction of its manufactured homes and to sell its homes at inflated prices. The members of the Insulation Enterprise acted as a continuing unit toward these ends.

43.     The Insulation Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendant engages. The structure of the Insulation Enterprise included the following: (a) Scotbilt as providers of the designs; (b) PFS Corp. and perhaps other DAPIAs and IPIAs rubber stamp approval of these designs, calculations and methodologies. Scotbilt and its DAPIAs and IPIAs associate with, participate in, and control the affairs of the Insulation Enterprise.

44.     The members of the Insulation Enterprise have participated in the operation and management of the Insulation Enterprise in at least the following ways: (a) Scotbilt submitted designs for approval which (b) the IPIA and DAPIA provided rubber stamp approval of Scotbilt's fraudulent scheme, granting it legitimacy and allowing Scotbilt to misrepresents the R-Value. The Insulation Enterprise could not have been successful without the participation of both.

45.     While Scotbilt and the other participants are members of the Insulation Enterprise, each has an existence that is separate and distinct from the Insulation Enterprise.

46.     The Insulation Enterprise oversaw, coordinated, and facilitated the commission of numerous predicate offenses in order to deceive consumers regarding the R-Value of the insulation included in Scotbilt's manufactured homes.

47.     As alleged above, the Insulation Enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. The members of the enterprise shared a

12

common purpose, and the enterprise functioned as a continuing unit having a structure for decision-making, oversight, coordination, and facilitation of the predicate acts. Scotbilt asserted control over this association-in-fact enterprise, and used its position of control over it to ensure that the R-Value of the insulation overrepresented. The Insulation Enterprise successfully and fraudulently sold homes despite misrepresenting the value of the insulation included in the home.

48.     Defendant has engaged in a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5), by committing at least two acts of racketeering activity, i.e. indictable violations of 18 U.S.C. §§ 1341 and 1343 within the past ten years. In fact, Defendant has committed thousands of acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiff and Class members. The pattern of racketeering activity included numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 in furtherance of Defendant's fraudulent scheme, including the use of the United States mails and wires, to discuss and approve designs, to file reports regarding compliance with design and installation procedures, as well as other correspondence, contracts, and agreements between the members of the Insulation Enterprise which was in furtherance of the fraudulent scheme.

49.     Defendant's misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving, among others, purchasers of Scotbilt manufactured homes such as Plaintiff and Class Members. Defendant was, and continues to be, under a continuing duty to disclose the material facts regarding the insulation. Because of its knowing, affirmative, and/or active concealment of the fraudulent nature of the R

13

and U-Values marketed to Plaintiffs and the Class, Defendant is estopped from relying on any statutes of limitations related defense.

50.     Defendant either knew or recklessly disregarded the fact that the misrepresentations and omissions were material.

51.     Plaintiff and Class members relied on the misrepresentations and omissions in purchasing their manufactured homes.

52.     As a result, Defendant obtained money and property belonging to Plaintiff and Class Members and Plaintiff and Class Members have been injured in their business or property.

53.     The Insulation Enterprise operated on a nationwide basis and utilized interstate communications including the United States mail and wire across state lines.  The activities of the enterprises are national in scope and have a substantial impact upon interstate commerce.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on behalf of herself and all members of a Class composed of all those persons who purchased a manufactured home that was manufactured by Scotbilt Homes, Inc. who had blown insulation installed in their manufactured home at an insufficient depth to provide the R-Value represented.

55.     Plaintiff avers that the Class is so numerous that joinder of all persons is impractical. On information and belief, Defendant has sold thousands of manufactured homes that would be encompassed by the homes at issue in the proposed Class definition.

56.     Plaintiff believes that the names and addresses of the Class members are readily attainable from Defendant.

57.     Plaintiff avers that the questions of law and fact common to the Class predominate over questions which may affect individual Class members.  In fact, Georgia law

14

governs the dispute for all Class members. The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include, but are not limited to, the following:

   (a) Whether Scotbilt misrepresented the R-Value of insulation in its manufactured homes;

   (b) Whether Defendant, its DAPIA and its IPIA formed an enterprise under RICO;

   (c) Whether Defendant engaged in a fraudulent or deceptive scheme to mislead and conceal home purchasers as to the amount of insulation in their homes;

   (d) Whether, in representing that its homes contain a certain R-Value but providing a lower R-Value, Defendant breached the contracts, agreements and/or express and implied warranties with regard to Plaintiff and the Class;

   (e) Whether, in representing that the homes contain a certain R-Value but providing a lower R-Value, Defendant suppressed material issues of fact from Plaintiff and the Class;

   (f) Whether, in representing that the homes contain a certain R-value but providing a lower R-value, Defendant violated the FTC's Trade Regulation Rule Covering Labeling and Advertising of Home Insulation (the "R-value Rule"), 16 C.F.R. Part 460;

   (g) Whether Defendant has engaged and is still engaging in unfair or deceptive acts and practices;

   (h) Whether Defendant has engaged and is still engaging in unconscionable acts and practices;

(i)   Whether the members of the Class have been damaged and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief or statutory damages to which each Class member is entitled.

58.     Plaintiff asserts claims that are typical of the claims of the entire Class.

59.     Plaintiff will fairly and adequately represent and protect the interest of the Class in that she has no interest antagonistic to those of other members of the Class.

60.     Plaintiff has retained counsel who is competent and experienced in the prosecution of class action litigation.

61.     Plaintiff and members of the Class have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct.

62.     Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

63.     Absent a class action, it is not likely that Defendant will ever be required to disgorge the profits that it has made as a result of activities which violate the various states' statutory and common law.  Further, the members of the Class will not obtain the full relief to which they are entitled.

64.     Absent a class action, Class members will continue to suffer losses without remedy and Defendant will be permitted to retain the proceeds of its ill gotten gains.

## COUNT I

## **VIOLATION OF 18 U.S.C. § 1962(c)**

65.     Plaintiff incorporates herein and make a part hereof the allegations in the preceding paragraphs as if fully set forth herein.

66.     This cause of action for violation of 18 U.S.C. § 1962(c) is brought by Plaintiff and the putative Class against Defendant in connection with the activities of the Insulation Enterprise as described above.

67.     As set forth above, Defendant and the other participants in the Insulation Enterprise have conducted or participated in conducting the affairs of the Insulation Enterprise through a pattern of racketeering activity which included numerous predicate acts of mail and wire fraud in violation of 18 U.S.C. §§1341 and 1343.

68.     As a direct and proximate result, Plaintiff and members of the Class have been injured in their business or property by the predicate acts constituting the pattern of racketeering activity.  Specifically, Plaintiff and members of the Class have been injured in their business or property in that their homes are properly insulated and are worth less than they believed because of Defendant's deceptive scheme. Additionally, Plaintiff and members of the Class paid more for their homes than they would have paid if not for Defendant's fraudulent scheme to mislead consumers with regard to the amount of insulation present in the homes.

69.     Accordingly, Defendant is liable to Plaintiff and the Class for three times their actual damages as proven at trial, plus interest and attorneys' fees.

COUNT II

VIOLATION OF O.C.G.A §16-4-4 (VIOLATION OF THE GEORGIA RICO ACT)

70.     Plaintiff incorporates by reference all of the preceding paragraphs.

71.     This cause of action for violation of O.C.G.A. §16-4-4 is brought by Plaintiff and the putative Class against Defendant in connection with the activities of the Insulation Enterprise as described above.

17

72.    As set forth above, Defendant and the other participants in the Insulation Enterprise have conducted or participated in conducting the affairs of the Insulation Enterprise through a pattern of racketeering activity which included numerous predicate acts of mail and wire fraud in violation of 18 U.S.C. §§1341 and 1343 and O.C.G.A. §16-14-3(9)(A)(xxix).

73.    As a direct and proximate result, Plaintiff and members of the Class have been injured in their business or property by the predicate acts constituting the pattern of racketeering activity. Specifically, Plaintiff and members of the Class have been injured in their business or property in that their homes are properly insulated and are worth less than they believed because of Defendant's deceptive scheme. Additionally, Plaintiff and members of the Class paid more for their homes than they would have paid if not for Defendant's fraudulent scheme to mislead consumers with regard to the amount of insulation present in the homes.

74.    Accordingly, Defendant is liable to Plaintiff and the Class for three times their actual damages as proven at trial, plus interest and attorneys' fees

## Count III

## BREACH OF EXPRESS WARRANTY

75.    Plaintiff incorporates by reference all of the preceding paragraphs.

76.    Defendant expressly gives warranties by specific words or actions to Plaintiff and Class members, both through the issuance of its written warranty accompanying all of its manufactured homes and/or its advertising stressing the excellence and reliability of its products in general, and the R-Value of its manufactured homes in particular, that the manufactured homes sold to Plaintiff and the Class were free from defects in materials and workmanship and that any defects would be repaired or replaced under the warranty. In addition, Defendant is

18

required to warrant such homes in terms of their insulating capacity and the homes' compliance with federal regulations for the life of such homes.

77.     The manufactured homes made by Scotbilt, at the time of sale and when delivered to Plaintiff and Class members, did not conform to Scotbilt's express warranties in that the homes were not free from defects in materials or workmanship due to the manner in which the insulation in such homes was installed.

78.     Defendant has failed or refused to repair the defects in the manufactured homes and/or the warranty has failed in its essential purpose causing Plaintiff and the Class to suffer injury and damages.

79.     Plaintiff provided notice to Defendant of the defect and the breach of the warranty and has given Defendant the opportunity to cure or attempt to cure the defects, but Defendant has failed or refused to do so.

80.     Defendant has failed or refused to correct the defect in Class members' homes despite being aware of the defect and having received complaints from Class members that their homes were difficult to heat and cool.

81.     Defendant knew when it manufactured, distributed and sold the homes purchased by Plaintiff and Class members that the homes were defective and therefore in violation of the express warranty at the time of sale.

82.     Scotbilt actively suppressed these material facts about the defects in the insulation. Plaintiff and the Class, because of limited attic access, the technical issues regarding insulation installation, and Scotbilt's superior knowledge, could not reasonably have had knowledge of the facts sufficient to have discovered the cause of such injury or breach of warranty by Scotbilt or its cause during any claimed warranty period, as the acts of Scotbilt that

19

caused such injuries were difficult for class members to detect.  Applying any claim warranty limitations period would therefore be unconscionable and unenforceable.

83.      As alleged above, and due to the nature of the alleged defect, Scotbilt sold Class members manufactured homes that violated its express warranties.  This defect has manifested itself in the homes of Plaintiff and all Class members.  Class members will need to obtain an adequate and effective repair of their defective homes as soon as practicable to minimize further damage.

84.      As a result of Defendant's breach of warranty, Plaintiff and Class members have been damaged.

**COUNT IV**

**MAGNUSON-MOSS WARRANTY ACT**

85.      Plaintiff incorporates by reference all of the preceding paragraphs.

86.      As part of the basis of the bargain between Plaintiff and others similarly situated and Defendant, Scotbilt provided a written warranty and implied warranty on the manufactured homes.

87.      The sales transaction was subject to the provisions and regulations of the Magnuson Moss Warranty Act, 15 U.S.C. 2301 et. seq.

88.      Plaintiff and members of the Class are "consumers" as defined in the Magnuson Moss Warranty Act.  Defendant Scotbilt is a "supplier" and "warrantor" as defined by the Magnuson-Moss Warranty Act.

89.      The manufactured home in question is a "consumer product" as defined in the Magnuson Moss Warranty Act and the home was manufactured and sold after July 4, 1975. The

express warranty provided by Scotbilt and/or required by statute to be provided by Scotbilt is a "written warranty" as defined in the Magnuson-Moss Warranty Act.

90.     Defendant breached the written warranty with regard to Plaintiff and other Class members manufactured homes.

91.     Defendant was aware or should have been aware of the defects at the time of the sale.

92.     Defendant's conduct described herein is a violation of the Magnuson-Moss Warranty Act.

## COUNT V

## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (Ga.Code Ann.§ 10-1-370)

93.     Plaintiff incorporates by reference all of the preceding paragraphs. Scotbilt as described above, undertook at least the following deceptive trade practices:

> Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; advertises goods or services with intent not to sell them as advertised; and engages in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

94.     Scotbilt knew that its conduct was deceptive, and continued to willfully engage in the conduct.

95.     Plaintiff and the Class have been damaged, or are likely to be damaged by Scotbilt's deceptive conduct.

96.     Plaintiff and the Class are entitled to injunctive relief as equity allows, including an injunction requiring that Scotbilt repair the homes purchased by Plaintiff and the Class.

21

## COUNT VI

## BREACH OF CONTRACT

97.     Plaintiff incorporates by reference all of the preceding paragraphs.

98.     Plaintiff and Class members entered into a contract with Defendant whereby Defendant agreed to provide a home with a certain R-value of insulation, in Plaintiff's case, R-21.

99.     Defendant did not provide R-21 insulation in the attic cavity but, instead, provided a lower R-value because it did not install the insulation to the appropriate depth.

100.    As a result of Defendant's breach of contract, Plaintiff and Class members have been damaged.

## COUNT VII

## UNJUST ENRICHMENT

101.    Plaintiff incorporates by reference all of the preceding paragraphs.

102.    The acts of Defendant resulted in Plaintiff and Class members paying more for the homes than it was worth, resulting in profit earnings in excess of what should have been earned for the homes sold. This resulted in Defendant being unjustly enriched by receiving profits in excess of the amount actually and fairly earned for the particular home sold.

103.    As a result, Defendant has retained money which, in justice and equity, belongs to Plaintiff and the members of the Class. Defendant has been unjustly enriched and must return them to Plaintiff and the Class.

104.    Alternatively, Defendant must disgorge all amounts it was paid from the dealerships to whom it sold the homes that were sold to Plaintiff and the Class in the form of the difference in the value of a home with the represented R-value and the actual R-value delivered.

## COUNT VIII

## MISREPRESENTATION BY CONCEALMENT

105.    Plaintiff incorporates by reference all of the preceding paragraphs.

106.    Defendant suppressed from Plaintiff and all Class members that it was not installing the insulation properly and in accordance with the manufacturer's installation instructions to obtain the R-value which was represented and required.

107.    Defendant entered into a pattern or practice of fraud that included the fraud practiced on Plaintiff and Class members.

108.    Plaintiff and Class members relied on and were induced to act by Defendant's misrepresentations and concealment.  The reliance of Plaintiff and Class members is inferred from the fact that Plaintiff and the Class purchased the homes and would not have done so if they had been told of the improper conduct of Defendant in installing the insulation in the attic of their homes.

109.    As a result of Defendant's suppression of material facts, Plaintiff and Class members have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an award against Defendant as follows:

a.    Certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and her counsel as counsel for the Class;

b.    Awarding Plaintiff and the Class compensatory damages and all statutory, exemplary or treble damages permitted by law;

c.    Awarding Plaintiff and the Class punitive damages as a result of Defendant's willful and intentional unlawful and inequitable conduct;

     d.     Permanently enjoining Defendant from continuing to engage in the unlawful and inequitable conduct alleged herein;

     e.     Granting Plaintiff and the Class all equitable remedies permitted by law;

     f.     Ordering and instructing Defendant to provide restitution and/or to disgorge into a common fund or constructive trust all monies paid by Plaintiff and the Class to full extent to which Defendant is unjustly enriched by its unlawful and inequitable conduct alleged herein;

     g.     Granting Plaintiff and the Class the costs of prosecuting this action, together with interest and reasonable attorneys' and experts' fees; and

     h.     Granting such other relief as the Court may deem just and proper under the circumstances and applicable laws.

     i.     An order certifying that the action may be maintained as a class action;

     j.     An order enjoining Defendant from continuing to sell these homes until it begins to properly install the insulation.

This **3** day of ~~January~~ Feb, 2010.

LAW OFFICE OF TONY CENTER, P.C.

TONY CENTER
Attorney for Plaintiff
GA Bar No. 118185

**OF COUNSEL:**

Joe R. Whatley, Jr.
Edith M. Kallas
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, New York, 10036
(212) 447-7070
(212) 447-7077 *Fax*
jwhatley@wdklaw.com
ekallas@wdklaw.com

24

W. Tucker Brown
Sara C. Hacker
**WHATLEY, DRAKE & KALLAS, LLC**
1000 Park Place Towers
2001 Park Place North
Birmingham, AL 35203
(205) 328-9576
(205) 328-9669 *Fax*
tbrown@wdklaw.com
shacker@wdklaw.com

Lynn W. Jinks, III
Christina D. Crow
Nathan A. Dickson II
**JINKS, CROW & DICKSON, P.C.**
P. O. Box 350
Union Springs, Alabama 36089
(334) 738-4225
(334) 738-4229 *Fax*
ljinks@jinkslaw.com
ccrow@jinkslaw.com
ndickson@jinkslaw.com

David Selby II
**KEE & SELBY LLP**
1900 International Park
Suite 220
Birmingham, Alabama 35243
(205) 968-9906 Direct
(205) 968-9909 Fax
ds@keeselby.com