**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | | |
|---|---|---|
| SHEILA LEWIS, Individually and on behalf of a class of Persons similarly situated, | ) ) ) | |
| | ) | Civil Action No.:  CV-510-016 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTBILT HOMES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF SCOTBILT'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), 12(b)(7) and 9(b)**

Pursuant to Rules 12(b)(6), 12(b)(7) and 9(b) of the Federal Rules of Civil Procedure, DEFENDANT SCOTBILT HOMES, INC. (hereinafter "Scotbilt") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint as follows:

**INTRODUCTION**

Plaintiff purports to state claims on behalf of herself and asserts class allegations for: (1) violation of 18 U.S.C. § 1962(c), Federal RICO statute; (2) violation of O.C.G.A. § 16-14-4 (*sic*), Georgia RICO statute; (3) breach of express warranty; (4) violation of Magnuson-Moss Warranty Act; (5) violation of Georgia Uniform Deceptive Trade Practices Act; (6) breach of contract; (7) unjust enrichment; and (8) misrepresentation by concealment.  [See Dkt. Entry No. 1; (hereinafter "Plaintiff's Complaint") at 3; Counts I – VIII; 14-16].  Plaintiff's formulaic and generalized allegations against Scotbilt fail to state a claim upon which relief can be granted as to all class allegations and counts 1, 2, 3, 4, and 6.  On their face, these claims fail as a matter of law.

Plaintiff's Complaint must also be dismissed in its entirety for failure to join an indispensable party under Rule 12(b)(7). The indispensable party is the State Office of Insurance and Safety Fire Commissioner whom Plaintiff alleges conspired with Scotbilt as a member of a criminal enterprise on which the racketeering allegations are based.

## PLAINTIFFS' FACTUAL ALLEGATIONS AND CLAIMS

Plaintiff alleges that in May of 2005, she purchased a manufactured home from Scotbilt. [See Plaintiff's Complaint at ¶ 36]. [1]   With her purchase, Plaintiff alleges that she "received a sales order form and/or and Insulation Disclosure Form from Scotbilt." [See id.].   All of Plaintiff's claims revolve around the allegation that Scotbilt represented that the attic insulation in Plaintiff's manufactured home would have an "R-Value of R-21" but did not. [See id.].   On this basic set of facts, Plaintiff alleges an Insulation Enterprise [See Plaintiff's Complaint at ¶¶ 37-53], seeks class certification and alleges the myriad of claims set forth above. However, as Scotbilt illustrates herein, Plaintiff's claims for class certification and her substantive claims must fail.

## ARGUMENT AND CITATION OF AUTHORITY

**I.**   **The Court should grant Scotbilt's Motion to Dismiss Plaintiff's class allegations, federal and state RICO claims, breach of warranty claim, violation of the Magnuson-Moss Act claim, and breach of contract claims.**

Plaintiff's class allegations, Federal and State RICO claims, breach of express warranty claim, violation of the Magnuson-Moss Warranty Act claim and breach of contract claims must

---

[1] This Court accepts as true the factual allegations in the complaint and construes them in a light most favorable to the plaintiff. Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). However, where the face of the complaint clearly reveals the existence of a meritorious affirmative defense, such as the expiration of the statute of limitations, dismissal is appropriate. Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc); see generally 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 352 (2d ed. 1990) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate.)

be dismissed under Rule 12(b)(6) for failure to state a claim.[2]

A.      **Standard of Review**

Plaintiff's claims cannot survive scrutiny under the standard set forth by the U.S. Supreme Court decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007); see also Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). In Twombly, the Supreme Court explained that "a formulaic recitation of the elements of a cause of action will not do" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) citing Twombly, 127 S. Ct. at 1965 (stating [a] complaint must contain enough facts to indicate the actual presence of the required elements.). To that end, a plaintiff bears the burden to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." Twombly, 127 S. Ct. at 1965.

The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 1964 ("retiring" the "no set of facts" standard and holding that a plaintiff is obligated to "provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd., v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

In addition, where, as here, the plaintiff asserts a claim for fraud or claims based on alleged fraud, the fraud allegations are subject to the heightened pleading standard of Rule 9(b) that requires a plaintiff to plead all averments of fraud with particularity. Brooks v. Blue Cross &

---

[2] While Plaintiff's class allegations should be dismissed for all claims for the reasons set forth herein, Defendant has not moved to dismiss Plaintiff's individual claim for violation of the Georgia Uniform Trade Practices Act, unjust

Blue Shield of Fla. Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). Where the allegations of fraud do not include the who, what, where, and when of the alleged fraud, the claim for fraud must be dismissed. US. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310, 1315 (11th Cir. 2002); Ackerman v. Nw. Mut. Life Ins. Co., 172 F.3d 467, 469-70 (7th Cir. 1999).

### B.   Plaintiff's Class Allegations are Fatally Flawed and Subject to Dismissal

Plaintiff's class allegations must be dismissed as the purported class definition set forth in Plaintiff's complaint is fatally flawed and inadequate.   The Supreme Court made clear in Twombly that a class action is subject to dismissal under Rule 12(b)(6) where the pleadings are insufficient.  550 U.S. at 548. "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) (citations omitted) (upholding dismissal of class allegations based on absence of adequately defined clearly ascertainable class).  "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." John v. National Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007);[3] see also In re Mutual Funds Investment Litigation, 566 F.3d 111, 115 (4th Cir. 2009) (dismissing action under 12(b)(6) where class definition in securities action failed to satisfy loss causation standard);  cf. Hyler v. Reynolds Metal Co., 434 F.2d 1064 (5th Cir. 1970) (granting motion to dismiss based on class definition only after granting plaintiff  the opportunity to amend class definition).

As a preliminary matter, a class must meet a minimum standard of definiteness that will allow the trial court to determine membership in the proposed class.  Earnest v. General Motors

---

enrichment or misrepresentation by concealment.
[3] Scotbilt does not move to deny class certification but rather files this motion as 12(b)(6) motion as Plaintiff's allegations as pled fail to state a claim upon which relief can be granted.  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 941 (9th Cir. 2009) (noting that "[a] defendant may move to deny class certification before a plaintiff

Corp., 923 F.Supp. 1469, 1473 (N.D.Ala. 1996). A class definition must specify a "particular group at a particular time frame and location who were harmed in a particular way" and define the class "such that a court can ascertain its membership in some objective manner." Sherr v. Raytheon Co., 261 F.R.D. 651, 661 (M.D.Fla. 2009) (quoting Edwards v. McCormick, 196 F.R.D. 487, 491 (S.D.Ohio 2000)). "Before analyzing the Rule 23(a) requirements . . . a court must determine whether the class definition is adequate." O"Neill v. Home Depot U.S.A., Inc., 243 F.R.D. 469, 477 (S.D. Fla.2006) (internal cit. omitted). "A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 630 (S.D.Fla. 2008) quoting Perez v. Metabolife Int'l., Inc., 218 F.R.D. 262, 269 (S.D.Fla.2003). "In order for a party to represent a class, the class sought to be represented must be adequately defined and clearly ascertainable." LaBauve v. Olin Corp., 231 F.R.D. 632, 662 (S.D.Ala.2005) (collecting cases); see also Turner v. Murphy Oil, USA, Inc., 234 F.R.D. 597, 611 (E.D.La. 2006) ("A precise definition is essential to identify those entitled to notice and those bound by a judgment."); Colindres v. QuitFlex Mfg., 235 F.R.D. 347 (S.D.Tex. 2006) ("A class definition must be precise, objective, and presently ascertainable.").

Plaintiff brings the instant action on behalf of a class:

> composed of all those persons who purchased a manufactured home that was manufactured by Scotbilt Homes, Inc. who had blown insulation installed in their manufactured home at an insufficient depth to provide the R-Value represented.

[Plaintiff's Complaint at ¶ 14]. Plaintiff prays for a class to be certified naming Plaintiff as named class representative to pursue the eight counts set forth in the Complaint. [Id. at ¶ 57;

---

files a motion to certify a class.").

Prayers for Relief (a) and (i)].  This is the only class definition set forth in the Complaint.  This class definition is untenable as it will require multiple "mini-trials" to determine who is a potential class member and creates an impermissible fail safe class.

1. **Plaintiff cannot maintain a class action on behalf of the class stated due to the individualized inquiry required to identify class members**

Ascertaining who is a potential class member will require, at a minimum, examination and testing of each and every manufactured home produced and sold by Scotbilt in order to determine the dimensions of attic space, the depth, type and manufacturer of the insulation installed, whether each purchaser ordered additional insulation from the base model, whether the insulation has been altered since manufacture, and any items unique to each particular home that could effect the R-value.  At a minimum, deposition testimony will be required establishing for each individual home, based on the particular dimensions, depth, type and manufacturer of insulation, and any unique items peculiar to that particular home that the depth of insulation present is insufficient to provide the R-Value represented.  Moreover, Plaintiff does not allege that Scotbilt represented the same R-value to each potential class member as Plaintiff.  Plaintiff alleges that R-values range from R-1 to R-30 and typically range between R-14 and R-28. [Compl. at ¶ 20].  Therefore, the Court will likewise have to make a separate inquiry into the R-value represented. It is likely that a factual dispute will exist based on the data related to each home whether the insulation provides the R-value indicated.   In sum, discovery, depositions and argument will be required for every single potential class member and require a series of mini-trials to determine who could be a potential class member.  Such result would generate "massive administrative burdens" that "would counteract any efficiency gains from the class action procedure."  Fisher v. Ciba Specialty Chemical Corp., 238 F.R.D. 273, 302 (S.D.Ala. 2006).

This extraordinary amount of inquiry will be required simply to determine potential class members.

Class definitions which require this type of individualized inquiry have been routinely rejected by Courts across the country.  In <u>Fisher</u>, whether someone was a proper member of the purported class turned on whether a particular piece of property was income producing as of a date certain.  <u>Id</u>. at 277.  In refusing to allow class treatment, the Court held "large-scale judicial fact-finding will be needed to ascertain whether potential class members are properly classified as in or out of the class."  <u>Id</u>. at 300.  Similarly, class treatment of a breach of express warranty claim has been refused for a purported class of "all periodontists, oral surgeons, and similar medical-dental professionals who had experienced a failure rate in excess of their normal rate and whose failure was higher than warrantied by the defendants."  <u>Cohen v. Implant Innovations, Inc.</u>, 259 F.R.D. 617, 630 (S.D.Fl.2008).  The Court reasoned that "in order to determine who is a member of the putative class, the Court would first have to make a legal determination on the defendant's rate of failure [and] to decide whether the marketing materials prepared by the defendant constitute an express warranty pursuant to the applicable law and determine whether the failure rate experienced by each purported class member was higher than warrantied by defendant."  <u>Id</u>.; <u>see</u> <u>also</u> <u>Adair v. Johnston</u>, 221 F.R.D. 573, 577 (M.D.Ala. 2004) (denying class treatment for class consisting of all purchasers of certain life insurance policy covered by ERISA based on detailed fact intensive analysis required to identify class members who had purchased life insurance as part of an ERISA plan as opposed to those who had purchased outside of such plan).[4]  The proposed class in the instant action requires equivalent individualized inquiry to

---

[4]   It should be noted that Plaintiff's class definition is fatally flawed as it applies to Plaintiff's individual claims as well.  In particular, Plaintiff's class definition is not inclusive of purchasers who gave notice of the alleged defect in the manufactured home despite pleading that the breach of warranty and Magnuson-Moss Warranty Act claim concern Scotbilt's failure or refusal to repair defective work after notice of the defect.  [Plaintiff's Compl. at ¶¶ 78-

determine the identity of class members making Plaintiff's class allegations fail as a matter of law.

### 2.  **Plaintiff's proposed class creates an impermissible fail safe class**

The purported class is likewise fatally flawed as it is a "fail safe" class.  Each of Plaintiff's claims turns on whether the amount of insulation present in each home sold by Defendant contains sufficient depth of insulation to provide the R-value represented.  If the insulation is sufficient, each and every claim of Plaintiff fails.  Such class definitions have been referred to as "fail-safe" classes.  See Joel S. Feldman, et al., Ascertainability:  An Overlooked Requirement for Class Certification, Litigation and Administrative Practice Course Handbook Series, PLI Order No. 18243 (July, 2009).  When the class determination is dependent on the defendant's liability, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability is made.  Id.

Whether the depth of insulation present in mobile homes manufactured by Scotbilt is sufficient to provide the R-value represented will likely turn on expert testimony to be resolved by a jury.  If the jury sides with Scotbilt's experts, as to any particular purported class member such person would not be in the class.  If the jury sided with Scotbilt's experts on all purported class members, there simply would be no class members as no one would have received a depth of insulation insufficient to provide the R-value represented.  Conversely, if the jury sides with Plaintiff's experts for a particular purported class member concerning the depth of insulation, such person would be in the class.  For these reasons, "[t]he definition creates a fail-safe class, because the class members either win or are not in the class-- the individual class members cannot lose the case."  Id.

Proposed fail safe classes have been uniformly disallowed.  In Genenbacher v.

80, 92].

CenturyTel Fiber Co., II, 244 F.R.D. 485 (C.D.Ill. 2007), Plaintiff sought certification of class of:

> All owners and former property owners in the State of Illinois whose land was not and is not subject to any easement for the purpose of operating a fiber optic telecommunications network but whose land CenturyTel Fiber Company II, LLC and or Digital Teleport, Inc. and their subsidiaries and affiliates have entered to install, maintain, or operate a fiber optic or other telecommunications cable network without obtaining the consent of the owner of the land.

Id. at 487.  In denying class treatment, the Court noted that a plaintiff "must propose a class over which the Court can enter a judgment that is enforceable, whether favorable or unfavorable, with respect to the members of the class" and held that the suit impermissibly sought to assert a "fail safe" class "because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class."  Id.; see also Boca Raton Community Hosp., Inc. v. Tenet, 238 F.R.D. 679, 686 (S.D. Fl 2006) (recognizing that proposed class defined as  "all acute-care hospitals in the United States" that received Medicare payments and "were eligible, or would have been eligible but for Defendant's conduct, to seek reimbursement for Outlier costs for any of the cost years ending 2000 through 2004" as fatally flawed because it "required a determination of what level of overcharging was unlawful prior to identifying which hospitals were in the class").  Here, the class as pled creates an impermissible fail safe class and fails as a matter of law.

For these reasons, Plaintiff class definition is fatally flawed and the class allegations should be dismissed.

**C.  Plaintiff's federal civil RICO claim fails as a matter of law as it does not allege two predicate acts and does not conform to Eleventh Circuit Pleading Requirements. (Plaintiff's Count I)**

Plaintiff's alleged civil RICO claim must be dismissed for failure to comply with the

pleading requirements set forth <u>Twombly</u> and failing to plead fraud with particularity as set forth in Rule 9(b).  Plaintiff alleges a federal civil RICO claim pursuant to 18 U.S.C. § 1962(c) predicated on mail and/or wire fraud.  [<u>See</u> Plaintiff's Complaint at ¶¶ 66, 67].  "To establish a civil RICO violation under § 1962(c), the plaintiff[] must satisfy four elements of proof:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Edwards v. Prime, Inc., et. al.</u>, 2010 WL 1404280 *8 (11th Cir., April 9, 2010) (internal cit. omitted); <u>see</u> <u>also</u> <u>Durham v. Business Management Associates</u>, 847 F.2d, 1505, 1512 (11th Cir. 1988) (stating same) (internal cit. omitted).

"A pattern of racketeering activity – a combination of elements 3 and 4 is shown when a racketeer commits at least two distinct but related predicate acts."  <u>Id</u>. (internal cit., quotes omitted).  "Civil RICO claims which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."  <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007) citing <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1380-1381 (11th Cir. 1997).  Additionally, the Local Rules of the Southern District of Georgia require "[a]ll pleadings which allege violations of … RICO, and other similar statutes, whether federal or state, ***shall specifically state each alleged violation***."  Southern District of Georgia Local Rule 9.1 (emphasis added).

The Eleventh Circuit has stated:

> [t]o satisfy the Rule 9(b) standard, RICO complaints must allege:
> (1) the precise statements, documents or misrepresentations made;
> (2) the time and place of and person responsible for the statement;
> (3) the content and manner in which the statements misled the Plaintiffs; and
> (4) what the Defendants gained by the alleged fraud.

<u>Id</u>. At 1316-1317.  The Rule 9(b) "pleading with particularity" requirement applies to a RICO action predicated on "a pattern of mail and wire fraud."  <u>West Coast Roofing and Waterproofing,</u>

Inc. v. Johns Manville, Inc., 287 Fed.Appx. 81, 86 (11th Cir. 2008) citing Ambrosia Coal, 482 F.3d at 1317.

Pleading a civil RICO claim "requir[es] th[e] plaintiff [to] identify the fraudulent representations with particularity…"  West Coast Roofing, 287 Fed.Appx. at 86.  "In order to survive a motion to dismiss, a plaintiff ***must*** allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts."  Rogers v. Nacchio, 241 Fed.Appx. 602, 607 (11th Cir. 2007) (emphasis added) citing Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir. 1997); see also Iqbal, 129 S.Ct. at 1949 (stating "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible on its face***.") (internal cit. quotes omitted, emphasis added); 18 U.S.C.A. § 1961(5) (stating "pattern of racketeering activity requires at least two acts.").

Plaintiff has not pled specifically a single instance of mail or wire fraud.[5]  As to her own claim, Plaintiff avers that she "…received a sales order form…"  [See Plaintiff's Complaint at ¶ 36].  Plaintiff does not allege in her Complaint or her Civil Rico Case Statement [See Dkt. Entry No. 7] that Scotbilt used the mails or wire to transmit any document to her at any time. Moreover, as to Plaintiff's class allegations, rather than set forth any of the Eleventh Circuit requirements for pleading fraud with particularity as set forth in Clausen, 290 F.3d at 1310 – the who, what, where and when – Plaintiff baldly asserts throughout her complaint and case statement: "countless acts of mail and wire fraud" [Plaintiff's Complaint at ¶ 39], "numerous predicate offenses" [Id. at ¶ 46], "thousands of acts of racketeering activity" [Id. at ¶ 48],

---

[5]  The elements of mail and wire fraud under 18 U.S.C §§ 1341 and 1343 are: (1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme.  U.S. v. Maxwell, 579 F.3d 1282 (11th Cir. 2009).

"numerous acts of mail and wire fraud" (Id.), and "numerous predicate acts of mail and wire fraud" (Id. at ¶¶ 67, 72).  Plaintiff alleges in her Complaint and Case Statement that Scotbilt and its IPIA and DAPIA utilized the mails and wires to discuss and approve plan designs. [Plaintiff's Complaint at ¶ 48; Dkt. Entry No. 7 at 8-9].  However, nowhere in these conclusory allegations does Plaintiff provide specific identification of the factual detail concerning two alleged incidents of mail or wire fraud; i.e. the specific document mailed, the date mailed, whom it was mailed or wired to, whom it was mailed or wired from, or where it was mailed or wired to or from.

In an apparent effort to justify her clear inability to specifically identify any predicate acts, Plaintiff tells the Court, "…Plaintiff cannot allege the exact details of such mail and wire fraud because such information is in the custody of Defendant or other third parties and will *likely be obtained through discovery*."  [See Dkt. Entry No. 7 at ¶ 5(c) (emphasis added).  Hence, Plaintiff beseeches the Court to disregard the pleading standard required by Twombly, Rule 9 and the Local Rules of this Court and embark on a discovery fishing expedition.  This request contradicts binding Supreme Court precedent.  See Twombly, 127 S.Ct. at 1967 (quoting "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.") (internal cit. omitted).

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management,' given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side…Probably, then it is only by taking care to require allegations that reach the level suggesting [plausibility of the cause of action] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence…

Id. (internal cits., quotes omitted); Iqbal, 129 S.Ct. at 1950 (stating "Rule 8 marks a notable and generous departure from the hyper-technical code pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than legal conclusions.").

Plaintiff's Complaint falls well short of the pleading requirements set forth by the U.S. Supreme Court in Twombly and Iqbal and must be dismissed.  See e.g. Ambrosia Coal, 482 F.3d at 1316-1317 (affirming District Court dismissal of Plaintiff's civil RICO claims for failure to plead with "the required level of specificity.").  Such heightened pleading must be demanded in an action alleging RICO to ensure that a Plaintiff cannot turn an ordinary fraud or breach of contract allegation into a RICO allegation.  See Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F.Supp.2d 1276 (S.D.Ga. 2003) (quoting "[Plaintiffs] have essentially 'taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in [RICO] statutory language.  This is not the purpose for which RICO was enacted.'") citing Robert Suris Gen. Contractor Corp. v. New Metropolitan Federal Savings and Loan Ass'n, 873 F.2d 1401, 1404 (11th Cir. 1989); see also e.g.  Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir.1988) (stating that "this circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.").  Accordingly, Plaintiff's federal RICO claim fails as a matter of law.

**D. Plaintiff's Georgia civil RICO claim fails as a matter of law as it does not allege two predicate acts and does not conform to Eleventh Circuit Pleading Requirements. (Plaintiff's Count II)**

Plaintiff block-copies her alleged federal RICO claim as a Georgia RICO claim. [Compare Plaintiff's Complaint ¶¶ 65-69 with ¶¶ 70-74].  For the same reasons her federal RICO claim fails, Plaintiff's Georgia RICO claim fails.  A Georgia RICO claim must allege at least two predicate acts.  See O.C.G.A. § 16-14-3(8)(A).  Additionally, just as with a federal claim, an

alleged Georgia RICO claim must plead the requisite predicate acts with particularity.  See Curtis Investment Co., LLC v. Bayerische Hypo-Und Vereinsbank, 341 Fed.Appx. 487, 491 (11th Cir. 2009) (affirming dismissal of Georgia RICO claim, in part for failure to plead predicate acts of mail and wire fraud "with the particularity required by Rule 9(b)."); see also Bodie v. Purdue Pharma Co., 236 Fed.Appx. 511, 524 (11th Cir. 2007) (indicating that heightened pleading standard – "a higher threshold of specificity" - under Rule 9(b) applies to state law fraud claims brought in federal court.).

Additionally, under Georgia law,

> [a] private RICO plaintiff must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [it] purportedly sustained.   To establish this nexus, the plaintiff must show that one of the predicate acts directly harmed *it*, not a third party.

Schoenbaum Limited Co. v. Lenox Pines, LLC, 262 Ga.App. 457, 470 (2003) (emphasis in original, internal cit., quote omitted).  As set forth above, Plaintiff has not alleged use of the mail and or wire in her transaction with Scotbilt; she merely avers that she "received a sales order form…"  [See Plaintiff's Complaint at ¶ 36].  As to herself and the purported class members, Plaintiff has not alleged a single, identifiable instance of mail or wire fraud.  Finally, in addition to not alleging specifics concerning two instances of communications between Scotbilt and the DAPIA or IPIA, Plaintiff fails to allege that such unspecified incidents related to her model or her transaction.  [Id. at ¶ 48, Case Statement at 8-9].  Accordingly, Plaintiff lacks standing to bring a Georgia RICO claim as she has not pled the required nexus between a predicate act and her alleged injury.  See Schoenbaum, 262 Ga. App. at 470.  Plaintiff's Georgia RICO claim must fail as: (1) it does not allege two predicate acts; (2) does not plead those "un-alleged" acts with the specificity required by federal law; and (3) does not allege the causal nexus required by

Georgia law.

     **E.**    **Plaintiff's claims for breach of express warranty are barred by her failure to comply with the conditions precedent set forth in the warranty. (Plaintiff's Count III)**

Plaintiff fails to allege facts demonstrating that she properly and timely complied with the provisions of the express warranty she now wishes to enforce.  Plaintiff alleges that Scotbilt provided her with a written warranty.  [See Plaintiff's Complaint at ¶ 76].  The express warranty Plaintiff seeks to enforce is for a period extending one year from the date of retail delivery of the manufactured home.  [See "Exhibit A" attached to Scotbilt's Motion to Dismiss at HO-6].[6,7] Under the terms of the warranty, Plaintiff was required to give Scotbilt written notice of any claim under the warranty within ten days of the expiration of the warranty period.  [See Exhibit "A" at HO-6, 8].  Although, Plaintiff alleges that she provided Scotbilt with notice of the alleged defect and breach of warranty, her complaint does not contain any allegations as to when she gave this notice or whether it was timely.  [See Plaintiff's Complaint at ¶ 79].

> When a warrantee brings a breach of express warranty claim, the terms of the written warranty control. Dryvit Systems v. Stein, 256 Ga.App. 327, 329(1), 568 S.E.2d 569 (2002); DeLoach v. Gen. Motors, 187 Ga.App. 159, 159-160(3), 369 S.E.2d 484 (1988). Thus, a warrantee can succeed on a breach of the warranty claim only if she has first satisfied the express conditions precedent for enforcement "as prescribed" by the warranty. Dryvit Systems, 256 Ga.App. at 329(1), 568 S.E.2d 569

Culberson v. Mercedes-Benz USA, Ltd.  274 Ga.App. 89, 91, (2005).  "Where notice to the manufacturer within a specified time is a condition precedent to recovery on a breach of warranty claim, the notice must be given as prescribed."  Dryvit Systems, Inc. v. Stein, 256 Ga.App. 327 (2002).

---

[6] "The express warranty is the only express warranty given by Scotbilt."  [Exhibit A at HO-6].

[7] "The Court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged."  Day v. Taylor, 400 F.3d 1272, 1276

In <u>Dryvit</u>, the express warranty required the warrantee to notify the warrantor of any defects within 30 days. <u>Id.</u> at 328, 568 at 570. Because it was undisputed that the warrantee never provided the required notice, the court found that the warrantor had no obligations under the warranty. <u>Id.</u> Because Plaintiff does not allege that she gave Scotbilt written notice of her claims within ten days of the expiration of the warranty period, she has not pled facts sufficient to support her claim for breach of warranty and her claims fail under the holding of <u>Twombly</u>, 127 S. Ct. 1955 (2007).

### F. **Plaintiff's claims under the Magnuson-Moss Warranty Act fail because her claims on the express warranty fail. (Plaintiff's Count IV)**

In making her Magnuson-Moss claim, Plaintiff alleges that Scotbilt breached the written warranty with regard to her and other class members' manufactured homes. [<u>See</u> Plaintiff's Complaint at ¶ 90]. Consequently, Plaintiff's Magnuson-Moss claims are barred for the same reason as her express warranty claim.

The Magnuson-Moss Act "does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." <u>Johnson v. Jaguar Cars, Inc.</u>, 2006 WL 1627125 (N.D.Ga. 2006). Thus, as a preliminary matter, the Court must examine whether Plaintiff has properly pled her breach of warranty claim under Georgia state law. <u>Id.</u> <u>See also</u>, <u>Walsh v. Ford Motor Co.</u>, 807 F.2d 1000, 1016 (D.C.Cir.1986)("state warranty law lies at the base of all warranty claims under Magnuson-Moss"); <u>Sharpe v. General Motors Corp.</u>, 198 Ga.App. 313, 314, (1991) (Magnuson-Moss Warranty Act "relates to damages, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty under state law "); <u>Hines v. Mercedes-Benz USA, LLC</u> 358 F.Supp.2d 1222, 1235 (N.D.Ga. 2005)("To recover under the MMWA, therefore,

(11th Cir. 2005).

Plaintiff must show that Defendant breached written and implies (sic) warranties arising under Georgia law"); Gilbert v. Monaco Coach Corp. 352 F.Supp.2d 1323, 1331 (N.D.Ga. 2004)("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor*."). Bailey v. Monaco Coach Corp., 350 F.Supp.2d 1036, 1040 (N.D.Ga. 2004)(unless the Act "prescribes a regulating rule, courts should apply state law to written and implied warranty claims made under the Act.")

As discussed previously, Plaintiff has not sufficiently pled a claim for breach of express warranty under Georgia law.  Absent a properly pled state law warranty claim, Plaintiff's claim for breach of the express written warranty under the Magnuson-Moss Act also fails.

**G.      Plaintiff's claims for breach of contract are barred by the four year statute of limitations.  (Plaintiff's Count VI)**

Plaintiff claims that, in May 2005, she purchased a manufactured home manufactured by Scotbilt.  [See Plaintiff's Complaint at ¶ 36].  Plaintiff filed the present lawsuit on February 3, 2010, over fours years after she purchased the manufactured home. see id.  Plaintiff does not allege the existence of a written contract between her and Scotbilt.  [See Plaintiff's Complaint generally].[8]

The statute of limitation for a claim for breach of contract not reduced to writing is four years.  See O.C.G.A. §§ 9-3-25 and 9-3-26.  Under Georgia law, "the discovery rule is not applicable to a cause of action based on breach of contract; with respect to a breach of contract claim, the statute of limitation runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." Leathers v. Timex Corporation, 174 Ga. App. 430,

---

[8] To the extent Plaintiff's Complaint seeks to allege fraud in the inducement to enter into an agreement (See e.g. Plaintiff's Compl. at ¶ 51), such claim is subject to dismissal for failure to plead fraud with particularity as set froth in previously.  See Rogers v. Nacchio, 241 Fed. Appx. 602, 209 (11th Cir. 2007) (noting that Rule 9(b) applies to

431, 330 S.E.2d 102 (1985).  As set forth above, Plaintiff alleges that she purchased the subject manufactured home in May 2005.   [See Plaintiff's Complaint at ¶ 36].   Consequently, any alleged contract between Plaintiff and Scotbilt was breached in 2005 at the time of purchase and the statute of limitations for this claim expired in May 2009.

## II.   Plaintiffs Complaint Must be Dismissed for Failure to Join an Indispensible Party

This Court should join the State Office of Insurance and Safety Fire Commissioner as a necessary party to this action, or in the alternative, Count I, Count II, Count V, and Count VII of Plaintiff's Complaint should be dismissed for the failure to join an indispensable party.[9]

Plaintiff has alleged a comprehensive conspiracy and enterprise involving Scotbilt, its Design Approval Primary Inspection Agency ("DAPIA"), and its In-Plant Primary Inspection Agency ("IPIA"), the State Office of Insurance and Safety Fire Commissioner,[10] which caused the alleged harm suffered by Plaintiff and those purportedly similarly situated to Plaintiff. [See Plaintiff's Complaint at ¶ 32].   Plaintiff, however, only filed suit against Scotbilt in this case. Pursuant to Fed. R. Civ. Pro. 19(a), this Court must join the State Office of Insurance and Safety Fire Commissioner as a party to this action if feasible in order to protect Scotbilt's interests, to protect the interest of this non-party, and to promote the policy of judicial economy.  In the event that this Court determines that the State Office of Insurance and Safety Fire Commissioner cannot be joined, then Count I, Count II, Count V, and Count VII of Plaintiff's case should be

pleading fraud in the inducement).
[9] In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence. See Davis Co. v. Emerald Casino, Inc., 268 F.3d 477 (7th Cir. 2001); see also English v. Cowell, 10 F.3d 434, 437 (7th Cir.1993); Capitol Leasing Co. v. Fed. Dep. Ins. Corp., 999 F.2d 188, 191 (7th Cir.1993).
[10] Plaintiff actually alleges that ScotBilt's IPIA is PFS Corporation. See Plaintiff's Complaint at ¶ 32.  Georgia is one of the ten states where a state agency acts as the exclusive IPIA in the state. See Department of Housing and Urban Development, http://www.nls.gov/offices/hsg/ramh/mhs/mhsid.cfm.  Under federal and Georgia law, the State Office of Insurance and Safety Fire Commissioner acts as the exclusive IPIA in the State of Georgia. See Ga. Comp. R. & Regs. Ch. 120-3-7-.06; see also O.C.G.A. § 8-2-130 et seq.; O.C.G.A. § 8-2-160 et seq.; accord 24 CFR

dismissed under Fed. R. Civ. Pro. 19(b).

Fed. R. Civ. Pro. 19 addresses the joinder of non-parties.  The Court should engage in a two part analysis under Rule 19.  See Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843 (11th Cir. 1999). First, the Court must consider whether a non-party should be joined as a "necessary party" under subsection (a) of Rule 19.  See id. at 847; Fed. R. Civ. Pro. 19(a).  A party is considered "necessary" to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings. Id.  If the Court determines that the non-party is necessary, then the non-party should be joined if feasible. Id.  Second, if the court concludes that the non-party is necessary and cannot be joined for practical or jurisdictional reasons, then the Court must then determine if the non-party is "indispensable" under subsection (b) and whether the action should be dismissed in "equity and good conscience." See Fed. R. Civ. Pro. 19(b); accord Laker, 182 F.3d at 847.

## A.   The State Office of Insurance and Safety Fire Commissioner is a necessary party

As the former Fifth Circuit indicated in Schutten v. Shell Oil Company, 421 F.2d 869 (5th Cir. 1970), the essence of Rule 19 is to balance the rights of all those whose interests are involved in the lawsuit.  The Court noted that the plaintiff's right to control his own litigation and to choose his own forum is not unlimited. Schutten, 421 F.2d at 873.  The defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Id.  Non-parties who could be affected by the litigation or any judgment entered therein have interests which must be considered. Id.  Finally, the public and the judicial system has an interest in seeing that the litigation is both effective and expeditious. Id.  For these

3282.352.

reasons, Rule 19 was formulated to avoid circuity of actions and aid in judicial administration.

The Eleventh Circuit previously affirmed a trial court's finding that an alleged co-conspirator was a necessary party under circumstances practically identical to those presented in this case. See Laker, 182 F.3d at 847-848.  In Laker, the Court held that that "a joint tortfeasor will be considered a necessary party when the absent party 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'" Id. at 848 (citing Haas v. Jefferson National Bank, 442 F.2d 394 (5th Cir. 1971)).  Like the case at hand, the plaintiff in Laker alleged that a non-party was a co-conspirator with the only named defendant in the case. Id. at 845.

The Court held that the non-party co-conspirator was a necessary party because it was alleged to be an "active participant" in the allegations. Id. at 848.  As here, the issues presented in Laker concerned the implementation of law. Id. at 845.  The specific issues in Laker involved the government's legal obligation to schedule and coordinate flight slots at British airports. Id. The government of the United Kingdom delegated this responsibility to a private entity, which was alleged to have been involved in the conspiracy which was the subject of that litigation. Id.

The Court found that the non-party had an interest in the litigation because the resolution of the issues presented to the trial court necessarily required the trial court to evaluate the non-party's conduct and issue a judgment which would "inevitably comment upon the neutrality and impendence of the process." Id.; accord Boles v. Greenville Housing Authority, 468 F.2d 476 (6th Cir. 1972)(finding that the Department of Housing Urban Development was an indispensable party under Rule 19 when plaintiffs indirectly attacked the agency's approval of a development plan).  According to the Court, the plaintiff would be required to establish that the non-party acted other than in an independent manner in order to prove its claims against the named

defendant, which would surely implicate the interests of this non-party. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Boles,</u> 468 F.2d 476 (finding that HUD was an indispensable party where plaintiffs attacked its implementation of its own policies holding that HUD had a "right to defend the integrity of its administrative decisions…").   The Court also considered the fact that absent the non-parties cooperation, the defendant would not have been able to engage in the conduct complained of by the plaintiff. <u>Id.</u> at 849.   In sum, the Court found that the non-party was such a central figure in the allegations that its presence in the lawsuit was necessary if feasible.

Like the non-party in <u>Laker</u>, the State Office of Insurance and Safety Fire Commissioner is a necessary party to this case and should be joined.[11]   Based on Plaintiff's allegations alone, the State Office of Insurance and Safety Fire Commissioner is clearly an "'active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'"   Plaintiff has alleged that Scotbilt conspired with its IPIA, the State Office of Insurance and Safety Fire Commissioner to engage in an enterprise to defraud Plaintiff and other purchasers of Scotbilt's products by misleading them as to the insulation value of Scotbilt's products. [<u>See</u> Plaintiff's Complaint at ¶¶ 32-34, 37-53].   According to Plaintiff, the conspiracy and enterprise at issue "could not have been successful without the participation of the [State Office of Insurance and Safety Fire Commissioner]" <u>Id.</u> at ¶ 44.

While Plaintiff seeks relief only from Scotbilt for the harm caused by the alleged conspiracy and enterprise involving the State Office of Insurance and Safety Fire Commissioner, any ruling by this Court will implicate the rights and interests of this non-party.   Plaintiff seeks to

---

[11] In fact, as Plaintiff in the instant action seeks both damages and equitable relief, the instant action presents a stronger case for finding the State Office of Insurance and Safety Fire Commissioner as a necessary party than the facts presented in <u>Laker</u>.   In <u>Laker</u>, while the plaintiff sought damages as well as equitable relief enjoining the continuation of the conspiracy initially, by the time the case was presented to the Circuit Court the plaintiff's claim for equitable relief had been rendered moot. <u>Id.</u>   Thus, the plaintiff was only seeking damages for the alleged conspiracy involving the named defendant and other non-parties. <u>Id.</u>

enjoin Scotbilt and by extension, the other potential defendants, from continuing to engage in the alleged tortious conduct. [See Plaintiff's Complaint at Count V, Prayer for Relief (d)]. This Court's ruling on Plaintiff's request for equitable relief will require the Court to evaluate the conduct of the State Office of Insurance and Safety Fire Commissioner, thereby affecting its interests. Under these circumstances, the State Office of Insurance and Safety Fire Commissioner is a necessary party under Rule 19 as applied by the Eleventh Circuit in Laker. Moreover, the failure to add the State Office of Insurance and Safety Fire Commissioner as a party could result in multiple actions involving the same issues and resulting in inconsistent judgments.

### B. The State Office of Insurance and Safety Fire Commissioner should be joined if feasible or the instant action dismissed for failure to join an indispensable party

This Court has at least conditional jurisdiction over the State Office of Insurance and Safety Fire Commissioner. Absent express waiver by the state, the Eleventh Amendment bars state law claims against the state in federal court. See U.S. Const. amend XI; see also Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281 (11th Cir. 2003). The State of Georgia has not expressly waived its sovereign immunity for tort actions filed in federal court. See O.C.G.A. § 50-21-20 et seq.; see also O.C.G.A. § 50-21-23(b)("[t]he state waives its sovereign immunity only to the extent and in the manner provided in this article and only with respect to actions brought in the courts of the State of Georgia. The state does not waive any immunity with respect to actions brought in the courts of the United States"); O.C.G.A. § 50-21-28 ("[a]ll tort actions against the state under this article shall be brought in the state or superior court of the county wherein the loss occurred…"). While most subject matter jurisdiction issues cannot be waived by the parties and must be raised

by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of jurisdiction. See Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998); Calderon v. Ashmus, 523 U.S. 740, 745 (1998).  Rather, "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." Schacht, 524 U.S. at 389.  The Eleventh Amendment creates a volitional defense which must be asserted by the state and can be waived if not raised. See McClendon v. Georgia Dept. of Community Health, 261 F.3d 1252 (11th Cir. 2001).  Thus, unlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does. Id.

If this Court determines that it is not able to join the State Office of Insurance and Safety Fire Commissioner as a party to this action or the State Office of Insurance and Safety Fire Commissioner asserts its right to sovereign immunity, then it should dismiss Count I, Count II, Count V, and Count VII[12] of Plaintiff's Complaint under subsection (b) of Rule 19.[13]   If a necessary party cannot be joined, the court must then proceed under Rule 19(b) and consider whether in "equity and good conscience," the suit should proceed without the necessary party. See Fed. R. Civ. Pro. 19(b).  The Court considers four factors in this analysis: (1) how prejudicial a judgment would be to the non-joined and joined parties; (2) whether the prejudice could be lessened depending on the relief fashioned; (3) whether the judgment without joinder would be

---

[12] These are the only causes of action asserted by Plaintiff which implicate the conduct of the State Office of Insurance and Safety Fire Commissioner.

[13] The DAPIA which is also alleged by Plaintiff to be a member of the conspiracy and enterprise is not a necessary or indispensable party as defined by Rule 19 and applied in Laker. While the DAPIA clearly has an interest in this case based on Plaintiff's allegations, it is not similarly situated to the non-party co-conspirator in Laker or the State Office of Insurance and Safety Fire Commissioner.  Unlike an IPIA, a DAPIA is selected by the manufacturer and is not required to be approved by the Department of Housing and Urban Development. See 24 CFR 3282.361.  In fact, a manufacturer such as ScotBilt is permitted to enter into as many contracts with DAPIA's as it wishes. See 24 CFR 3282.203.  Since the DAPIA in this case is not subject to the same approval requirements and sanctions as the IPIA, it would not be as prejudiced by a judgment entered by this Court and therefore would not qualify as a necessary and indispensable party under the authority established by Laker. Compare 24 CFR 3282.352 with 24 CFR 3282.361.

adequate; and (4) whether the plaintiff would have any alternative remedies were the case dismissed for non-joinder. See Laker, 182 F.3d 848. Each of these factors weigh in favor of finding that the State Office of Insurance and Safety Fire Commissioner is indispensable and that Plaintiff's Complaint should be dismissed in its absence.

Laker addressed this very issue finding that the non-party co-conspirator was both a necessary and indispensable party and therefore, portions of plaintiff's complaint were subject to dismissal because it was not subject to joinder. The Court noted that the "primary factor" weighing in favor of the dismissal was the prejudice that would flow to the non-party if the case were permitted to proceed. Id. at 849. The Court found that the plaintiff's complaint, at its very core, challenged the manner in which the government implemented its regulations concerning the scheduling of flight slots. Id. To prove its case, the Court stated that the plaintiff would necessarily have to prove that the government delegee, and by extension the government itself, failed to follow British law. Id. at 849. The result of such a showing could be that the government could withdraw its approval of the non-party co-conspirator as its legal delegate to schedule and coordinate flight slots. Id. As a result, the Court found that the non-party would be prejudiced by not being able to participate in the lawsuit. Id.; accord Boles, 468 F.2d at 479.

These same factors at play are present in this case. Under Georgia law, the State Office of Insurance and Safety Fire Commissioner is designated with the exclusive legal responsibility of performing the role as the IPIA. See Ga. Comp. R. & Regs. Ch. 120-3-7-.06; see also O.C.G.A. § 8-2-130 et seq.; O.C.G.A. § 8-2-160 et seq.; accord 24 CFR 3282.352. The State Office of Insurance and Safety Fire Commissioner performs this function under the authority granted and the standards established by the Department of Housing and Urban Development. See 24 CFR 3282.351 et seq. As set forth above, any inquiry by this Court into the issues

presented by Plaintiff's Complaint will require the Court to evaluate the legality of the State Office of Insurance and Safety Fire Commissioner's conduct. See e.g. Laker, 182 F.3d at 849. To award Plaintiff the recovery that she seeks against Scotbilt, this Court must determine that the State Office of Insurance and Safety Fire Commissioner violated its legislative directives and duties. See e.g. Id.; Boles, 468 F.2d at 4769 (finding that HUD was an indispensable party where the plaintiff attacked its implementation of its own policies).

Like Laker, the failure to properly perform this responsibility could cause the Department of Housing and Urban Development to disqualify or withdraw its approval of the State Office of Insurance and Safety Fire Commissioner as the exclusive IPIA for Georgia. Compare 24 CFR 3282.352 (providing that a State may act as an IPIA with the approval of the Department of Housing and Urban Development) and 24 CFR 3282.355 (addressing the acceptance of the State as the IPIA by the Department of Housing and Urban Development) with 24 CFR 3282.356 (providing that the Department of Housing and Urban Development can disqualify any IPIA that fails to adequately perform its required functions).  Accordingly, any judgment entered by this Court against Scotbilt could be prejudicial to the State Office of Insurance and Safety Fire Commissioner. See e.g. Laker, 182 F.3d at 849.  For this reason, Count I, Count II, Count V, and Count VII of Plaintiff's Complaint cannot proceed without the State Office of Insurance and Safety Fire Commissioner as a party.[14]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(7) and 9(b) should be GRANTED.

---

[14] Only Plaintiff's claims which implicate the conduct of the State Office of Insurance and Safety Fire Commissioner are subject to dismissal under Rule 19(b). See e.g. Laker, 182 F.3d at 850.

Respectfully submitted this 3rd day of May, 2010.

GILBERT, HARRELL,
SUMERFORD & MARTIN, P.C.

*s/ James L. Roberts, IV*
Wallace E. Harrell
Georgia Bar No.: 328800
James L. Roberts, IV
Georgia Bar No.: 608580
Jeffrey S. Ward
Georgia Bar No.: 737277
Stephen V. Kinney
Georgia Bar No.:  422101
Jason M. Tate
Georgia Bar No.: 250827

777 Gloucester Street                    *ATTORNEYS FOR DEFENDANT*
Post Office Box 190                        *SCOTBILT HOMES, INC.*
Brunswick, Georgia 31520
Telephone: (912) 265-6700
Facsimile: (912) 264-3917

CONNER AND JACKSON, PC
Neal L. Conner, Jr.
Georgia Bar No.: 182000

P.O. Box 1278                               *ATTORNEYS FOR DEFENDANT*
Waycross, GA 31502                      *SCOTBILT HOMES, INC.*
Phone: (912)-283-4394
Fax: (912)-285-9813

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF SCOTBILT'S MOTION TO DISMISS**

**PURSUANT TO FED. R. CIV. P. 12(b)(6), 12(b)(7) and 9(b)** via the Court's electronic filing

system upon the following counsel of record:

**Christina D. Crow, Esq.**
**JINKS, CROW & DICKSON, PC**
**P.O. Box 350**
**Union Spring, AL 36089**
**Phone: (334)-738-4225**
**ccrow@jinkslaw.com**


**Tony Center, Esq.**
**LAW OFFICE OF TONY CENTER, PC**
**313 W. York St.**
**Savannah, GA 31401**
**Phone: (912)-233-9696; Fax: (912)-232-8620**
**tonycenter@comcast.net**


and via U.S. Mail to the following attorneys of record:

Joe R. Whatley, Jr., Esq.
Edith M. Kallas, Esq.
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036


W. Tucker Brown, Esq.
Sara C. Hacker, Esq.
WHATLEY DRAKE & KALLAS, LLC
1000 Park Place Towers
2001 Park Place North
Birmingham, Alabama 35203


Lynn W. Jinks, III, Esq.
Nathan A. Dickson, II, Esq.
JINKS, CROW & DICKSON, PC
P.O. Box 350
Union Spring, AL 36089

David Selby, II, Esq.
KEE & SELBY LLP
1900 International Park, Suite 220
Birmingham, AL 35243

This 3rd day of May, 2010.

_**s/ James L. Roberts, IV**_
James L. Roberts, IV
Georgia Bar No.: 608580

Post Office Box 190
Brunswick, Georgia 31520
(912) 265-6700