# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

SHEILA LEWIS, Individually and on
behalf of a class of Persons similarly
situated,

      Plaintiff,

      v.

SCOTBILT HOMES, INC.

      Defendant.

Civil Action No.: CV-510-016

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff Sheila Lewis (hereinafter "Plaintiff" or "Lewis") submits this Response in Opposition to Defendant Scotbilt Homes, Inc.'s (hereinafter "Defendant" or "Scotbilt") Motion to Dismiss filed pursuant to Rules 12(b)(6), 12(b)(7) and 9(b) of the Federal Rules of Civil Procedure.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 3, 2010, Lewis filed a Class Action Complaint ("Complaint") on behalf of herself and on behalf of a nationwide class of individuals who purchased a Scotbilt mobile or manufactured home. *See* Complaint (Dkt. #1) ("Compl.") at ¶1. Plaintiff asserts the following claims against Scotbilt: (1) violation of the of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); (2) violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (Georgia RICO), O.C.G.A. § 16-4-4; (3) Breach of Express Warranty; (4) Violation of Magnuson-Moss Warranty Act; (5) Violation of the Georgia Uniform Deceptive Trade Practices Act; (6) Breach of Contract; (7) Unjust Enrichment; and (8)

Misrepresentation by Concealment. Compl. at ¶6. On May 3, 2010, Defendant moved to dismiss a number of the Counts in the Complaint.[1]

Lewis's claims arise out of Scotbilt's uniform failure to provide purchasers of its manufactured homes with the amount of attic insulation that Scotbilt represented would be installed in the attic. Compl. at ¶21. When a consumer purchases a Scotbilt manufactured home, Scotbilt is required by federal law to provide these purchasers with information that discloses the type, thickness and R-Value[2] of insulation that is installed in the attic of the home. Compl. at ¶15. As part of its fraudulent scheme, Scotbilt systematically represents to its consumers through these required disclosures that the insulation installed in its manufactured homes is installed to a certain R-Value when, in fact, the actual R-Value is less than what Scotbilt represents and promises. Compl. at ¶20.

In each in every home Scotbilt manufactured, Scotbilt systematically and uniformly failed to install insulation in the attic cavities to the R-Value represented to the purchasers. Compl. at ¶21. Specifically, Scotbilt systematically failed to follow proper installation techniques and/or used improper calculation methods to determine the amount of insulation that would be needed to obtain the insulation depth required to achieve the represented R-Value. Compl. at ¶21. Because of Scotbilt's uniform and systematic failures, Scotbilt's representations to Lewis and the class members regarding R-Value were false and misleading. Compl. at ¶27. As a result of Scotbilt's illegal practices, Lewis and the class members have been injured in numerous ways including paying too much for their home, increased daily costs of heating and cooling and diminution in the value of their homes. Compl. at ¶35.

---

[1] Notably, Defendant did not move to dismiss counts 5, 7 and 8.

[2] R-Value indicates insulation's resistance to heat flow. The higher the R-Value, the greater the insulating effectiveness. Compl. at ¶20.

When Lewis purchased her Scotbilt manufactured home, she received an insulation disclosure form from Scotbilt that represented that the insulation in the attic cavity of her home would have an R-Value of R-21.  Compl. at ¶36.  At the time it issued her disclosure form, Scotbilt represented that it installed the insulation in the attic cavity of her home to a depth of 5.68 inches.  *Id*.  The depth of insulation in the attic cavity of Plaintiff's home is significantly less than 5.68 inches.  *Id*.

By representing to Plaintiff and others similarly situated that they were receiving a higher R-value of insulation than what was actually installed, Scotbilt has committed fraud on the Plaintiff and other putative class members.  *See* Compl. at ¶¶37-53.  As set forth above, because of Scotbilt's systematic fraudulent conduct, all putative class members would have received similarly fraudulent and misleading Insulation Disclosure Forms and Data Sheets regarding the insulative capacity of their homes.  Scotbilt carried out this fraudulent scheme through the use of an illegal enterprise ("the Insulation Enterprise").  Compl. at ¶39.  In direct furtherance of the fraudulent scheme described above, and described in particular for Plaintiff, Scotbilt and the other members of the Insulation Enterprise utilized the mail and wire in countless ways to communicate and facilitate the fraudulent scheme to mislead consumers and purchasers of Scotbilt's manufactured homes. Compl. at ¶39.  To carry out the fraudulent scheme, Scotbilt had to get its designs, calculations and methodologies regarding the measurement of R-Value and installation of insulation approved by its Design Approval Primary Inspection Agency ("DAPIA").  Compl. at ¶¶40, 43-44.  To obtain this approval, Scotbilt mailed, faxed and/or emailed these design, calculations and methodologies to PFS Corporation and in turn, these third parties would have mailed or email those approvals back to Scotbilt.  Compl. at ¶48.  Plaintiff believes that other acts of mail or wire fraud were also used to carry out the scheme as well. RICO Case Statement ("RCS") at 8-9.

## ARGUMENT AND CITATION TO AUTHORITY

### A.  Standard of Review

On a motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly* , 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (quotation marks, citations, and brackets omitted).  Plaintiff's allegations, when assumed to be true, must only be enough to raise a right to relief above the speculative level.  *Mills*, 511 F.3d at 1303.

### B.  Plaintiff Class Allegations are Sufficiently Pled

Defendant argues that Plaintiff's class claims should be dismissed even before Plaintiff is permitted the opportunity to conduct discovery.  In most cases, courts first allow precertification discovery and delay the resolution of class issues until a motion for class certification is filed. *South Broward Hosp. Dist. v. Medquest*, 516 F. Supp. 2d 370, 401 (D.N.J. 2007) ("the usual practice favor[s] precertification discovery"); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification").   Indeed, the dismissal of class allegations at the pleading stage is appropriate only in those rare cases in which it is clear from the face of the complaint alone that the plaintiff cannot satisfy the requisites to maintain an class action.  *South Broward Hosp. Dist.*, 516 F. Supp. 2d at 401-02 ("Dismissal of class allegations at [the pleading] stage should be done rarely[.]"); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d at 615 ("[T]he

granting of motions to dismiss class allegations before discovery has commenced is rare."); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (dismissal of class allegations should only occur "in those rare cases where the complaint itself demonstrate that the requirements for maintaining a class action cannot be met."); *Brazil v. Dell, Inc.*, No. C-07-01700, 2008 WL 4912050, at *3 (N.D. Cal. Nov. 14, 2008) ("dismissal of class actions at the pleading stage is nonetheless rare"); *Andrews v. Home Depot*, No. 03-CV-5200, 2005 WL 1490474, at *2 (D.N.J. June 23, 2005) ("A defendant may move to strike class action allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").

In *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008), the Eleventh Circuit Court of Appeals reversed a district court's decision dismissing the plaintiffs' class allegations at the pleading state pursuant to Rule 12(b)(6). The Court held that "pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing[.]" *Id*. at 1309 (citing *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370 (1982) and *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973)). Notably, Scotbilt failed to cite to *Mills* in its brief.

As in *Mills*, court's routinely find that a Rule 12(b) dismissal of class allegations is "premature" because the plaintiff should be provided the opportunity to conduct discovery before the class issues are addressed and resolved. *Id*. at 1309 (holding that the district court's dismissal of class allegations was "premature"); *see also In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d at 615 ("the motions to dismiss or strike the class allegations are premature and are denied"); *South Broward Hosp. Dist.*, 516 F. Supp. 2d at 402 (holding that

dismissal of plaintiff's class allegation would be "premature"); *Andrews*, 2005 WL 1490474 at *3 ("Dismissal of the class action allegations would be premature at this stage of the litigation and is not appropriate.").  This is because discovery will aid in clarifying the factual and legal predicates that must be established at class certification.  *Huff*, 485 F.2d at 713 ("Maintainability [of a class action] may be determined on the basis of pleadings, but the determination usually should be predicated on more information than the complaint itself affords."); *Brazil*, 2008 WL 4912050 at *3 (holding that discovery helps clarify the predicates of the class action so "dismissal at the pleading stage is unusual").  Indeed, "the shape and form of a class action evolves only through the process of discovery." *Abdallah v. Coca-Cola*, No. 1:98-CV-3670, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) (rejecting a "premature" defendant's motion to dismiss class action claims before discovery).  *See also* Wright *et al.*, Federal Practice and Procedure § 1785.3 (the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery).

Defendant incorrectly argues that this is one of those rare cases in which it is explicitly clear from the face of the Plaintiff's Complaint alone that class action treatment is inappropriate. Thus, Defendant's motion to dismiss the class allegations should be denied.

### 1. Plaintiff pleaded an ascertainable class.

Defendant first argues that Plaintiff's proposed class definition is not "ascertainable" and therefore, the class allegations should be dismissed.  An ascertainable class is an implied prerequisite of Federal Rule of Civil Procedure 23 that requires the class be defined by objective rather than subjective criteria and prohibits a class definition that is "so broad, amorphous, and vague that it fails to meet the minimum standard of definiteness." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st

Cir.1986) (explaining that a class definition should be based on objective criteria so that class members may be identified without individualized fact finding); Ann. Manual For Complex Litig., § 21.222 (An identifiable class exists if its members can be ascertained by reference to objective criteria.").

As stated in Moore's Federal Practice, "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria … [T]he class should not be defined in terms of whether its members were treated 'properly,' adequately,' 'reasonably,' or constitutionally,' because then class membership depends on a determination of the merits as to each potential class member." 5 James Wm. Moore, *et al.*, *Moores Federal Practice* § 23.21(3). Scotbilt does not contend that Plaintiff's proposed class is defined by subjective criteria or that the class definition is "amorphous" or "vague."

Defendant cites *DeBremaecker*, as setting forth the standard for pleading an ascertainable class. The plaintiffs in that case filed a class action against the City of Houston seeking a preliminary injunction to prohibit harassment, intimidation and arrest. *DeBremaecker*, 433 F.2d at 733. The plaintiffs sought to represent "residents of this State active in the 'peace movement' who have been harassed and intimidated as well as those who fear harassment and intimidation in exercising their First Amendment right of free expression in the form of passing out leaflets in furtherance of the cause." *Id*. at 734. The Court affirmed dismissal of the class allegations holding that individuals active in the "peace movement" did not constitute a clearly ascertainable class given that there was a "patent uncertainty of the meaning of 'peace movement.'" *Id*. In addition, the Court held that there was no evidence introduced at the preliminary injunction hearing "which would have assisted the district court in accurately delineating membership in a workable class." *Id*.

*DeBremaecker* is clearly distinguishable.  First, Plaintiff's proposed class definition contains no vague terms creating a "patent uncertainty" as was the case in *DeBremaecker*. Second, Plaintiff's proposed class definition is not defined by subjective or amorphous criteria. Plaintiff seeks to represent a class of individuals that purchased a Scotbilt manufactured home that did not receive the amount of insulation in the attic of that home to provide the R-Value that was represented.[3]  Membership in this putative class is defined by objective criteria rather than subjective criteria and is defined without the use of vague or subjective phrases as was the case in *DeBremaecker*.[4]  Third, although the court in *DeBremaecker* dismissed the plaintiffs' class allegations on a motion to dismiss, the court held an evidentiary hearing before dismissing the class allegations.  Here, in contrast, Scotbilt's contends that Plaintiff's class allegations should be dismissed even before the Plaintiff is permitted the opportunity to conduct discovery relating to Plaintiff's class allegations.

---

[3] As explained in Section B. 1. ii. below, the allegations in Plaintiff's Complaint make clear that *all* Scotbilt manufactured homes contained insufficient insulation in the attics because of Scotbilt's systematic conduct.

[4]     In section B. of its brief, Defendant cites only four cases, in addition to *DeBremaecker*, that address dismissal of class allegations at the pleading stage.  The other twelve cases cited by Defendant in support of its argument that class allegations should be dismissed on a Rule 12(b)(6) motion are decisions addressing class certification.  This underscores that the dismissal of Plaintiff's class allegations would be premature at the pleading stage and that Plaintiff should be permitted to conduct pre-certification discovery.
        In any event, these four cases are either distinguishable or inapplicable.  In *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007), the district court dismissed plaintiffs' class allegations on the basis that the class was not ascertainable.  On appeal, however, the plaintiffs did not even contend that the proposed classes were ascertainable.  *Id.*  Rather, the plaintiffs proposed two newly defined classes for the first time on appeal.  *Id.* Therefore, this case is inapplicable.
        In *Earnest v. General Motors Corp.*, 923 F. Supp. 1469, 1473 (N.D. Ala. 1996) the plaintiffs sought to represent a class of individuals that owned or leased vehicles equipped with "engines and/or engine control modules" manufactured by the Defendants "such as those in the said vehicles of the named Plaintiffs."  The Court found that there was no guidance or indication as to the meaning of "engines and/or engine control modules … such as those in the said vehicles of the named Plaintiffs."  *Id.*  Thus, the Court held that "the class definition offered by the plaintiffs could potentially mean anything the plaintiffs want it to mean at any particular time." *Id.* at 1474.  As explained above, here Plaintiff's class definition contains no vague terms which would prohibit the court from determining membership in the class.
        Lastly, both *In re Mutual Funds Investment Litig.*, 566 F.3d 111, 515 (4th Cir. 2009) and *Hyler v. Reynolds Metal Co.*, 434 F.2d 1064 (5th Cir. 1970) are inapplicable here as neither case addresses the dismissal of class allegations because of the failure to plead an ascertainable class.

Because Plaintiff's class definition is defined by objective, definite criteria, dismissal of Plaintiffs' class allegations on the basis that the class is not ascertainable would be improper and premature.

### i. Defendant conflates the Rule 23(b)(3) predominance requirement with the requirement that the class be ascertainable.

It is clear from Section B.1. of its brief that Defendant confuses or conflates, perhaps deliberately, the Rule 23(b)(3) predominance requirement[5] with the requirement that the class be ascertainable. Defendant argues that ascertaining who is a potential class member would require the testing of every potential class members' manufactured home and would require separate inquiries of potential class member to determine what R-value was represented to them.[6] *See* Defendant's Brief in Support of the Motion to Dismiss ("Def's Br.) at 6. Defendant's argument should be rejected. Although it couches its argument in terms of the ascertainability requirement, Defendant is really arguing that proving the elements of Plaintiff's claim on a class-wide basis would break down into too many individualized issues which would defeat to the Rule 12(b)(3) predominance requirement. While Plaintiff vigorously disputes this argument, it is irrelevant to whether the class is ascertainable or defined by objective, definite criteria.

In addition, resolution of the Rule 23(b)(3) predominance requirement as part of a Rule 12(b)(6) motion to dismiss class allegations is directly contrary to the Eleventh Circuit's holding is *Mills*. The Court in *Mills* held that the district court abused its discretion by addressing the Rule 23(b)(3) predominance requirement at the pleading stage. 511 F.3d at 1311. The district court dismissed class allegations at the pleading stage reasoning that class treatment was inappropriate because "the individualized inquiry of the facts surrounding the property damages

---

[5] To certify a class under Rule 23(b)(3), the moving party must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members."

[6] As set forth in Section B. 1. ii. below, Plaintiff disputes Defendant's argument here.

claims of thousands of … policy holders under thousands of separate insurance policies would predominate and overwhelm any common issues." *Id.* at 1308. The Court held that the district court's conclusion was "speculative at best and premature at least" and that the plaintiffs should have been given the opportunity to conduct discovery relevant to certification. *Id.* at 1310-11.

As the Court held in *Mills*, it would be premature to address Rule 23(b)(3) requirements at the pleading stage without providing Plaintiff the opportunity to conduct discovery.

### ii. Defendant ignores Plaintiff's allegations regarding Defendant's systematic and uniform conduct.

Again, Defendant argues that discovery would have to be obtained from every single potential class member for this action to be maintained as a class action. Even if this argument was related to whether the class is "ascertainable", the argument completely ignores the full allegations of Plaintiff's Complaint. Specifically, Scotbilt ignores and fails to address Plaintiff's allegation that *all* Scotbilt manufactured homes contain insufficient insulation due to Scotbilt's uniform or systematic failure to properly install the insulation and/or its failure to properly calculate the depth of insulation that would be necessary to achieve a certain R-Value. Thus, Scotbilt's representations to purchasers of its homes—the Plaintiff and the potential class members—were also uniformly incorrect given that Scotbilt is required by federal law to provide specific data regarding insulation to purchasers of its homes. When considering these allegations, Defendant is incorrect that discovery as to each individual class member would be necessary. *See, e.g., Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684, 696 (S.D. Ga. 2009) ("Where a defendant has engaged in a uniform scheme of fraudulent conduct toward the public or a large group of people, class treatment is appropriate.").

Indeed, in *Browder v. Fleetwood Enterprises, Inc.*, No. CV 07-01180, 2008 WL 4384245, at *7 (C.D. Cal. 2008), the Court granted the plaintiffs' motion for class certification in

a substantially similar case against another mobile home manufacturer.  The plaintiffs in that case also alleged that the defendant failed to install insulation in its manufactured homes to achieve the represented R-Value.  *Id*. at *2.  At class certification, the plaintiffs presented evidence obtained through discovery to support the allegation that "Fleetwood uniformly directed and instructed its manufacturing subsidiaries to install blown insulation and to calculate R-Values using flawed methods that are barred by FTC regulations." *Id*. at *1.  In certifying the class, the Court held that the "common question applicable to the entire class is whether Fleetwood is liable for applying a uniform flawed method of installing blown insulation and the extent to which that would lead to lower R-Values[.]" *Id*. at *6.  The Court also rejected the defendant's argument that to even determine who was in the class would require testing and investigation on an individualized basis to determine whether a home contained less insulation than was represented.  *Id*. at *5.  In rejecting this argument, the Court noted that the evidence submitted "would appear to show that the defect is uniform and widespread." *Id*. at *6.  Like the plaintiffs in Fleetwood, Plaintiff should be given the opportunity to conduct discovery to support her allegation that Scotbilt's failures with regard to insulation were uniform and widespread.

Lastly, the three cases cited by Defendant to support its argument here are clearly distinguishable as these cases are all decisions denying class certification, rather than decisions addressing a Rule 12(b)(6) motion to dismiss class allegations.  *See Fisher v. Ciba Specialty Chemical Corp.*, 238 F.R.D. 273, 295-310 (S.D. Ala. 2006) (denying class certification upon finding that the representative plaintiffs lacked standing to represent the interests of the class, the class was not adequately defined, and the questions of law or fact common to the class did not predominate over questions affecting individual members); *Cohen v. Implants Innovations, Inc.*, 259 F.R.D. 617, 630-631, 639-645 (S.D. Fla. 2008) (denying class certification upon finding that

the class was not adequately defined, and that the plaintiffs failed to satisfy the Rule 23(b)(3) predominance and superiority requirements) ; and *Adair v. Johnson*, 221 F.R.D. 573, 577-578 (M.D. Ala. 2004) (denying class certification upon finding that class definition was not adequately definite and ascertainable). Thus, in each of these cases, the plaintiffs would have the opportunity to conduct pre-certification discovery before the court addressed class issues. *See e.g.*, *Fisher*, 238 F.R.D. at 278 & n. 4 (noting that the motion for class certification included 140 pages of briefing and 240 exhibits which included transcripts of deposition testimony). Regardless, these cases are also distinguishable because, in each of these cases, the courts found that determining who was in the class would require extensive individualized fact-finding. *Fisher*, 238 F.R.D. at 301; *Coehn*, 259 F.R.D. at 631, *Adair*, 221 F.R.D. at 577-78. Unlike the class definitions in *Fisher*, *Cohen* and *Adair*, Plaintiff's class definition does not contain ambiguous terms or parameters and, as explained above, because Scotbilt uniformly failed to install insulation in its homes in a manner to reach the represented R-Value, large scale individualized fact-finding is not necessary to determine class membership.

### 2. Plaintiff did not plead a "fail safe class"

Defendant also ignores Plaintiffs allegations in arguing that the proposed class is a "fail safe" class. A "fail-safe class" is one which "precludes membership unless the liability of the defendant is established." *Kamar v. Radio Shack Corp.*, No. 09-55674, 2010 WL 1473877, at *1 (9th Cir. Apr. 14, 2010). Such "fail-safe classes" are barred because "a ruling in favor of the defendant on liability would mean there is no class, so no unnamed plaintiffs could be bound by the unfavorable decision; yet these plaintiffs would have the full benefit of any decision in their favor." *Eversole v. EMC Mortg. Corp.*, No. 05-124, 2007 WL 1558512 at *4 (E.D. Ky. May 29, 2007).

Defendant incorrectly argues that Plaintiff's proposed class definition is a liability-based, fail-safe class. As set forth above, Plaintiff alleges that Scotbilt's wrongful conduct relating to insulation was uniform and systematic, and thus, Scotbilt's wrongful practices affected all homes it manufactured and sold. Therefore, putative class members have already been identified, *i.e.*, the members of the proposed class are all purchasers of Scotbilt manufactured homes.[7] While the Complaint defines the class as all purchasers of Scotbilt manufactured homes "who had blown insulation installed in their manufactured home at an insufficient depth to provide the R-Value represented" (Compl. at ¶54), the allegations in the Complaint make clear that this additional language in the class definition is superfluous because Plaintiffs allege that *none* of the purchasers of Scotbilt manufactured homes received a home with insulation installed to the depth necessary to achieve the represented R-Value. Contrary to Defendant's argument, if a jury sided with Defendant's experts regarding its practices relating to insulation, *i.e.*, findings regarding installation methods and methods of calculating the depth of insulation necessary to reach a certain R-Value, then there would be an adverse judgment against the class.

Because the class is currently identifiable and no determination on the merits is required to identify the class members, Defendant is incorrect that Plaintiff's proposed class is a fail-safe class. Therefore, Defendant's motion to dismiss the class allegations should be denied.

### C. Plaintiff's Has Sufficiently Plead Her Federal and Georgia RICO Claims

#### 1. Plaintiff's Federal RICO claim is not due to be dismissed

In arguing that Plaintiff's RICO claims should be dismissed, Defendant's greatly misunderstand the requirements of both the "pattern of racketeering activity" prong of a civil RICO claim and the predicate acts of mail and wire fraud. To state a claim under 18 U.S.C.

---

[7] The membership in the class, however, may be limited by temporal scope depending on, among other things, the time period in which Scotbilt engaged in the alleged uniform wrongful practices relating to insulation.

§1962(c), the Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotation marks omitted); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). Scotbilt appears to only challenge Plaintiff's allegations with regard to the third and fourth elements of her claim under §1962(c).

Scotbilt misunderstands the elements of mail and wire fraud. The parties agree that the Plaintiff's RICO claims are based upon allegations regarding acts of mail and wire fraud. However, Scotbilt conflates the mail and wire elements of mail and wire fraud, with the scheme to defraud itself. The Eleventh Circuit has been clear that "the elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." *United States v. Maxwell,* 579 F.3d 1282, 1299 (11th Cir. 2009); *see also United States v. Hasson,* 333 F.3d 1264, 1270 and n. 7 (11th Cir. 2003); *United States v. Ellington,* 348 F.3d 984, 990 (11th Cir. 2003). The Supreme Court has held that "the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme or a step in [the] plot." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989). It is well established that even entirely truthful and innocent use of mail or wire can constitute mail or wire fraud so long as it is in furtherance of a scheme to defraud. *Schmuck*, 489 U.S. at 715.

Scotbilt spends most of its brief demanding that Plaintiff produce countless acts of fraud using the mail and wire. Defendant greatly misunderstands both the Plaintiff's allegations and legal elements of mail and wire fraud. Plaintiff has clearly alleged a scheme to defraud purchasers of Scotbilt homes with regard to the amount and quality of insulation in their homes. A scheme to defraud requires proof of a material misrepresentation, or the omission or

concealment of a material fact calculated to deceive another out of money or property. *Hasson,*

333 F.3d at 1270-71. Plaintiff has clearly alleged not only a scheme to defraud but has alleged

material misrepresentations, omissions, or concealment of material facts regarding the actual R-

Value of their homes. Comp. at ¶37-39. Plaintiff also clearly alleged that Scotbilt undertook

countless uses of interstate mail and wire in furtherance of that fraudulent scheme. *See, e.g,*

Comp. at ¶48. For instance, Plaintiff alleges that mail and wire were used to discuss and approve

designs and draft and file reports regarding compliance with design procedures. That the use of

mail and wire, themselves be fraudulent, is not required to establish a claim for mail and wire

fraud. Thus, while particularly requirement of Rule 9(b) of the Federal Rules of Civil Procedure

may be applied, Plaintiff has clearly alleged the substance of the fraud.

Plaintiff has clearly alleged the following:

(1) **precise statements, documents or misrepresentations made:** the R-Value statements in disclosures provided to Plaintiff Sheila Lewis, and other putative class members which represented that the insulation of the home was a certain R-Value, when it was actually far less, was a misrepresentation. This was included in disclosure documents provided at the time of sale. (Comp. at ¶ 36-38) (RCS at 8).

(2) **the time and place of and person responsible for the statements:** the false disclosures were given the Plaintiff, and other putative class members at the time purchase as part of the materials received with the home. Scotbilt was responsible for the statement as it created or completed the disclosure materials. (Comp. at ¶36).

(3) **the content and manner of in which the statements misled the Plaintiff:** the Plaintiff and other putative class members were misled because the disclosures informed them that the home had a particular R-Value. In the case of Sheila Lewis, Scotbilt's disclosures represented that the home had an R-Value of R-21. (Comp. at ¶36). Her home's insulation is not blown in enough to provide an R-Value of R-21, and provides a far lower R value than was represented by Scotbilt. This is true of the other putative class members, as well.

(4) **what the Defendants gained by the alleged fraud:** Scotbilt maintained or increased sales of its homes at prices inflated by their exaggerated claims

regarding the R-Value of the insulation in their homes, while also saving money on the use of insulation materials in their mobile homes. (Comp. at ¶42).

In light of these allegations, Scotbilt is clearly on notice as to what the allegedly fraudulent conduct was. Plaintiff has alleged that the mail and wire were used in furtherance of the scheme, and Scotbilt does not deny that it used the mail and wire. All Scotbilt denies is the existence of the fraudulent scheme. However, to state a RICO claim, there is no requirement that Plaintiff produce letters, emails, faxes, phone calls or other uses of mail and wire which are in and of themselves fraudulent. Thus, the allegations regarding the scheme are sufficient and clear and satisfy the pleading requirements of Rule 9(b).

Along the same lines, Plaintiff has alleged countless related acts of mail and wire fraud. Defendant routinely used the mail and wire in furtherance of the fraudulent scheme to misrepresent the R-Value of its homes. Scotbilt does not deny the use of mail and wire. If Scotbilt wishes to stand on its defense that it did not use the mail or wire two times in furtherance of the scheme to defraud the Plaintiff and the putative class, Plaintiff is entitled to discovery of the underlying using of the mail and wire in furtherance of the scheme because they are exclusively in the possession of Scotbilt. While Scotbilt mocks Plaintiff's request for discovery on the matter, it is unfortunately impossible for the Plaintiff to describe each of these uses of mail and wire in furtherance of the scheme without access to Scotbilt's records such as its email, fax and call records.

### 2. Plaintiff has alleged a sufficient "nexus" under the Georgia RICO act

In addition to the arguments regarding specificity, Scotbilt also argues that Plaintiff's Georgia RICO claims is due to be dismissed because of the failure to allege a sufficient nexus

between the alleged predicate acts of mail and wire fraud and the injury to Plaintiff.  This is simply not true.

Scotbilt cites a single case noting that Plaintiff must allege a "nexus" between a predicate act and the injury.  *See* Def's. Br. at 14 (citing *Schoenbaum Limited Co v. Lenox Pines, LLC*, Ga. App. 457, 470 (2003)).  Of course, Plaintiff and the putative class members have been directly injured by Scotbilt's fraudulent scheme.  Scotbilt undertook a scheme to defraud Plaintiff and purchasers of its homes.  Plaintiff alleges that the use of mail and wire to communicate with others and to perpetrate this fraud were rampant and vital to the success of the scheme.  As noted above, that the uses of the mail and wire themselves were not explicitly fraudulent, or directed at the Plaintiff, is inapposite. The fraudulent scheme was explicitly directed at the Plaintiff and other purchasers of Scotbilt's homes.  They are the only injured party.  Where a party is the only party injured by the fraudulent scheme, nexus and causation may be sufficient, even where the use of mail and wire are directed at third parties.  *See Bridge v. Phoenix Bond and Indem. Co.,* 553 U.S. 639, (U.S. 2008).  No party's injury is more direct than the Plaintiff's injury.  Thus, Plaintiff has clearly alleged the requisite pattern of racketeering activity made up of more than two acts of mail and wire fraud.  Without those acts of mail and wire fraud, the fraudulent scheme to defraud the Plaintiff and other putative class members by misrepresenting the R-Value of their purchased homes would not have succeeded.  Plaintiff and the other class members suffered direct injury from that fraudulent scheme, and no other party has a greater or more direct injury from the fraudulent scheme.  Plaintiff has therefore easily satisfied the "nexus" requirement.

### D. Plaintiff Sufficiently Pled Her Breach of Express Warranty Claim

Defendant argues that Plaintiff's breach of express warranty claim should be dismissed for failure to allege that Plaintiff timely complied with the notice provision of the warranty. Plaintiff alleged that "Plaintiff provided notice to Defendant of the defect and the breach of the warranty and has given the Defendant the opportunity to cure the defects, but Defendant has refused to do so." Compl. at ¶79. This allegation is more than sufficient to satisfy the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

In support of its argument regarding notice under the warranty, Defendant cites both *Culberson v. Mercedes-Benz USA, Ltd*. 274 Ga. App. 89, 91 (2005) and *Dryvit Systems, Inc. v. Stein*, 256 Ga. App. 327 (2002). These cases are inapplicable. Although both *Culberson* and *Dryvit Systems* stand for the general proposition that, when a plaintiff asserts a breach of express warranty claim, the terms of the written warranty control, these cases are both appeals from a trial court's order on a *motion for summary judgment*. In both *Culberson* and *Dryvit Systems*, the courts held that there was *no genuine issue of material fact* that the plaintiff failed to provide the required notice to the defendant. *See Culberson*, 274 Ga. App. at 91 (summary judgment in favor of defendant on express warranty claim proper where plaintiff did not disagree that she failed to satisfy the condition precedent to judicial enforcement of her rights under the limited warranty); *Dryvit Sys. Inc.*, 256 Ga. App. At 328-29 (holding that defendant was entitled to summary judgment on the breach of express warranty claim because the plaintiff "failed to comply with the mandatory notice provision … [and] [i]t is undisputed that [plaintiff] never notified [defendant] in writing, or otherwise, of any defects covered by the warranty.").

Neither *Culberson* nor *Dryvit Systems* address pleading standards related to express warranty claims and warranty notice provisions. Neither *Culberson* nor *Dryvit Systems* even

hold that a plaintiff asserting a breach of express warranty claim must specifically plead compliance with any warranty notice provision, must less that a plaintiff must plead in detail compliance with each and every element of the notice provision.

Plaintiff's allegations relating to the notice provided to Scotbilt are sufficient and Defendant's motion to dismiss the express breach of warranty claim should be denied.[8] Accordingly, Defendant's motion to dismiss the Magnuson-Moss Act claim solely on the grounds that the breach of express warranty claim was not properly pled should be denied as well.

### E. The Statute of Limitations is Tolled Due to Scotbilt's Fraudulent Concealment

Defendant argues that Plaintiff's breach of contract claim is barred by the statute of limitations and argues that there is no discovery rule applicable to a cause of action for breach of contract which would toll the statute of limitations. Dismissal on statute of limitations grounds is appropriate under Rule 12(b)(6) only if it is "apparent on the face of the complaint" that the claim is time barred. *Omar ex. Rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). "At the motion to dismiss stage, a complaint may be dismissed on the basis of a statute of limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc*., 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citation omitted).

Although Georgia law does not provide for a "discovery rule" for the tolling of a statute of limitations on a claim for breach of contract, Georgia law does provide that "[f]raud by which the plaintiff is debarred or deterred from bringing an action tolls any applicable period of

---

[8] If the Court finds that the Complaint fails to meet the level of specificity necessary to adequately plead compliance with the notice provision in the warranty, Plaintiff requests the opportunity to amend the Complaint to add more specificity as to the notice letter that Plaintiff provided regarding her breach of warranty claim. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given "when justice so requires.").

limitation." *Hill v. Fordham* , 186 Ga. App. 354, 357 (1988) (citing O.C.G.A. § 9-3-96). *See also Autry Petroleum Co. v. BP Products North America, Inc.*, No. 4:05-CV-113, 2006 WL 1174443, at *3 (M.D. Ga. May 1, 2006) (noting that the statute of limitations period on a claim for breach of contract can be tolled where the defendant is guilty of fraud); *McLendon v. Georgia Kaolin Co., Inc.*, 837 F. Supp. 1231, 1241 (M.D. Ga. 1993) ("Georgia law provides for tolling of the statue of limitations due to fraud by the defendant.").

In *Autry Petroleum*, the Court held that the plaintiffs' claims for breach of contract "may be dismissed only if, from the face of the Complaint, it is apparent (1) that the statute of limitations has run and (2) that there are no facts that Plaintiffs could prove that would support a finding that [Defendant] has committed a fraud which prevented Plaintiffs from bringing the action at an earlier time." 2006 WL 1174443 at *4. The court held that it would be inappropriate to dismiss the plaintiffs' breach of contract claims where plaintiffs alleged that the defendant "actively concealed its unlawful conduct," that "[a]n exercise of due diligence could not have discovered [defendant's] wrongful conduct," that "[defendant] willfully and intentionally concealed, suppressed[,] and failed to disclose material facts," and that [defendant] did this with "an intent to deceive Plaintiffs." *Id.*

Plaintiff's allegations here are similar to the plaintiffs' allegations in *Autry Petroleum*. Specifically, Plaintiff alleged the following:

- "Defendant's misrepresentations, acts of concealment and failures to disclose were knowing and intention, and made for the purpose of deceiving … purchasers of Scotbilt manufactured homes." (Compl. at ¶49);

- "Because of its knowing, affirmative, and/or active concealment of the fraudulent nature of the R and U-Values marketed to Plaintiff[] and the Class, Defendant is estopped from relying any statute of limitations defense." (Compl. at ¶49); and

- "Scotbilt actively suppressed these material facts about the defects in the insulation. Plaintiff and the Class, because of limited attic access, the technical

issues regarding insulation installation, Scotbilt's superior knowledge, could not reasonably have had knowledge of the facts sufficient to have discovered the cause of such injury or breach of warranty by Scotbilt or its cause … as the act of Scotbilt that caused such injuries were difficult for class members to detect." (Compl. at ¶ 82).

As in *Autry Petroleum*, Plaintiff has sufficiently alleged facts which, if proved, could toll the statute of limitations. Therefore, dismissal of Plaintiff's breach of contract claim on statute of limitations ground would be inappropriate at this time.

## F. The State Office of Insurance and Safety Fire Commissioner is Not a Necessary Party to the Action

Rule 19 of the Federal Rules of Civil Procedure addresses the joinder of nonparties. Rule 19 provides a two part test for determining whether an action should proceed in a non-party's absence. *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir. 1982).

In the first step of the Rule 19 analysis, the Court must apply the standards set forth in Rule 19(a) to determine whether the nonparty is a "necessary party" which is a party that should be joined if feasible. *Id.* Specifically, the standards set forth in Rule 19(a) require a determination of "whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject the parties to a risk of inconsistent obligations." *City of Marrietta v. CSX Transportation, Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999) (citing Fed. R. Civ. P. 19(a)(1)-(2)). Courts have routinely held that simple joint tortfeasors need not all be joined in one lawsuit. *See Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.... The Advisory Committee Notes to Rule 19(a) explicitly state that a tortfeasor with the

usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.").

A necessary party is a party whose "presence is critical to the disposition of the important issues in the litigation" and whose "evidence will either support the complaint or bolster the defense." *Haas v. Jefferson National Ba*nk, 442 F. 2d 394, 397 (5th Cir. 1971). Furthermore a necessary party must be an *active participant* in the allegations made in the complaint. *See Laker Airways, Inc. v. British Airways, PLC*, 182 F. 3d 843, 848 (11th Cir. 1999).

In *Haas*, the plaintiff attempted to collect stock from the defendant. The plaintiff contended that he had an agreement with a third party, Glueck, that Glueck would purchase the bank's stock but the plaintiff would own one-half of the stock. The bank claimed that Glueck subsequently sold the stock back to them to leverage debt. *See Hass*, 442 F.2d at 395. The court determined that Glueck was a necessary party because uncovering the nature of his interactions with the bank would determine the legal obligations the bank had to Haas. *Id*. at 398.

In *Laker*, the plaintiff alleged that British Airways conspired with a third party, a company in charge of awarding airport slots - ACL, to give British Airways desirable slots at plaintiff's expense. *See Laker*, 182 F. 3d 843 at 848. The court found that ACL was a necessary party because without its active participation, British Airways would have been unable to commit the acts that gave rise to the plaintiff's cause of action. *Id*. The ACL was the only entity that could assign the airport slots, and without its active participation and conspiracy British Airways wrongdoing would have been impossible. As a result the court dismissed the plaintiff's claim.

Scotbilt contends that the State Office of Insurance and Safety Fire Commissioner (hereinafter "the Commissioner's Office") is a necessary party to this action. However, unlike

the third parties in *Laker* and *Hass*, the Commissioner's Office is not a necessary party to this action. Plaintiff alleges that Scotbilt represented that its manufactured homes had a certain R-Value or depth of insulation when it knew, or should have known, that the methods and techniques it used to install that insulation resulted in homes with insufficient insulation to achieve the represented R-Value. Additionally, Plaintiff alleges that Scotbilt's fraudulent scheme required the participation of the DAPIA, PFS Corporation, which approved its insulation calculations and methodologies. Compl. at ¶34. The essence of this claim is that the DAPIA knowingly conspired with Scotbilt to defraud purchasers of manufactured homes. Compl. at ¶33-34. In her complaint, Plaintiff clearly alleges that PFS Corporation was the other wrongdoer. While Plaintiff may have mistakenly alleged that PFS was also Scotbilt's In-Plant Primary Inspection Agency or IPIA, this does not change the substance of Plaintiff's allegations.

According to Scotbilt, the Commissioner's Office acted as Scotbilt's IPIA. IPIAs are mandated by HUD to ensure that manufacturers' factories meet minimum government standards. *See* 24 CFR § 328.362. The Commissioner's Office lacked the authority to reverse, report, or in any other way override the decision of the DAPIA to approve Defendant's design plans. Given that role of the Commissioner's Office was merely to review the installation procedures, and not to direct any conduct, its role was by definition "passive." Any investigation into Defendant's actions will not involve questioning the neutrality and/or effectiveness of the Commissioner's Office. This is because the Commissioner's Office did not play an active part in the conspiracy to defraud Plaintiff. Plaintiff named the active wrongdoer, Scotbilt, as the sole party in her Complaint, but chose not to name either the DAPIA or the IPIA as parties. Plaintiff clearly intended to identify PFS as the other active wrongdoer, even though she was possibly incorrect in her assertion that PFS was also Scotbilt's IPIA. *See* RCS at 5 ("This fraudulent scheme

required the participation of Scotbilt's DAPIA and its IPIA, **PFS Corporation**, which signed off on Scotbilt's insulation designs, calculations and installation methodologies with knowledge that these designs, calculations and methodologies were fraudulent and deceptive.") (emphasis added).

Further, Scotbilt has not elaborated on how the Commissioner's Office would be impacted or prejudiced by any ruling or injunctive relief here, and Plaintiff has not asked for relief against the Commissioner's Office or any other third party. Accordingly, the Commissioner's Office is not a necessary party. Scotbilt's argument that the Commissioner's Office is a necessary party appears to be a mere procedural gimmick designed to force the dismissal of Plaintiff's rightly pled claims against Scotbilt. It does not appear that Scotbilt has informed the Commissioner's Office about the case, asked for imput from the Commissioner's Office regarding necessity, or otherwise tried to interplead it into the case.

If a nonparty is determined to be a necessary party, the Court moves to step two in the Rule 19 analysis to determine whether the party is an "indispensable party." *Challenge Homes*, 669 F.2d at 668. An indispensable party is one in which, if the party cannot be joined, the case should be dismissed. *Id*. at 669 n.3. Thus, "[i]f a necessary party cannot be joined, the court must then proceed to Rule 19(b) and consider whether in 'equity and good conscience,' the suit should proceed without the necessary party." *Laker*, 182 F.3d at 848. "The court balances four factors in this analysis: (1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Id*. at 848.

As noted above, the absence of the Commissioner's Office from this litigation would not prejudice any party or nonparty to this litigation. No party has asked for relief against the Commissioner's Office, nor would the inclusion of the Commissioner's Office in this case be necessary to provide the relief that Plaintiff has requested. The relief here could certainly be fashioned in such a way as to reduce any prejudice that might inure to any party or the Commissioner's Office. Thus, even if the Commissioner's Office is a necessary party, there is no basis for finding the Commissioner's Office an indispensible party. Therefore, the Court should deny Defendant's motion to dismiss for failure to join an indispensable party.[9]

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss in its entirety. Should the Court find that any part of Defendant's Motion to Dismiss is due to be granted, Plaintiff alternatively request that any dismissals be made without prejudice and the Court grant Plaintiff leave to amend her Complaint.

Dated: June 17, 2010          Respectfully submitted,


           /s/ Christina D. Crow
           Christina D. Crow, Esq.
           Georgia Bar No.: 198370
           P.O. Box 350
           Union Springs, AL 36089
           Phone (334) 738-4225
           ccrow@jinkslaw.com

---

[9] Plaintiff notes that the factual allegations that Scotbilt cites in support of its argument that the Commissioner's Office an indispensable party are allegations supporting Plaintiff's Federal and Georgia RICO claims. Thus, even if the Court agrees with Scotbilt regarding the Commissioner's Office, the Court should only dismiss the Federal and Georgia RICO claims without prejudice and grant the Plaintiff leave to re-plead these (and any other dismissed) claims.

Tony Center
**LAW OFFICE OF TONY CENTER, PC**
313 York Street
Savannah, Georgia 31401
(912) 233-9696
(912) 232-8620 *Fax*
tonycenter@comcast.net

Lynn W. Jinks, III
Christina D. Crow
Nathan A. Dickson II
**JINKS, CROW & DICKSON, P.C.**
P. O. Box 350
Union Springs, Alabama 36089
(334) 738-4225
(334) 738-4229 *Fax*
ljinks@jinkslaw.com
ccrow@jinkslaw.com
ndickson@jinkslaw.com

Joe R. Whatley, Jr.
Edith M. Kallas
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, New York, 10036
(212) 447-7070
(212) 447-7077 *Fax*
jwhatley@wdklaw.com
ekallas@wdklaw.com

W. Tucker Brown
Sara C. Hacker
**WHATLEY, DRAKE & KALLAS, LLC**
1000 Park Place Towers
2001 Park Place North
Birmingham, AL 35203
(205) 328-9576
(205) 328-9669 *Fax*
tbrown@wdklaw.com
shacker@wdklaw.com

David Selby II
**KEE & SELBY LLP**
1900 International Park
Suite 220
Birmingham, Alabama 35243
(205) 968-9906 Direct
(205) 968-9909 Fax
ds@keeselby.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of the foregoing document via the Court's electronic filing system upon the following counsel of record:

Wallace E. Harrell, Esq.
James L. Roberts, IV, Esq.
Jeffrey S. Ward, Esq.
Stephen V. Kinney, Esq.
Jason M. Tate, Esq.
GILBERT HARRELL SUMERFORD &
  MARTIN, PC
777 Gloucester Street
Post Office Box 190
Brunswick Georgia 31520

Neal L. Conner, Jr., Esq.
CONNER AND JACKSON, PC
Post Office Box 1278
Waycross, Georgia 31502

/s/      Christina D. Crow
        OF COUNSEL