UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| SHEILA LEWIS, Individually and on behalf of a class of Persons similarly situated, | ) ) ) ) | |
| | ) | Civil Action No.: CV-510-016 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SCOTBILT HOMES, INC. | ) ) | |
| Defendant. | ) | |

**DEFENDANT SCOTBILT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

DEFENDANT SCOTBILT HOMES, INC. (hereinafter "ScotBilt") replies to Plaintiff's Response to ScotBilt's Motion to Dismiss as follows:

**INTRODUCTION**

Plaintiff routinely goes outside of her pleadings in response to ScotBilt's Motion to Dismiss. The fact that Plaintiff needs to explain what she meant as opposed to what she pled necessarily means that Plaintiff failed to plead sufficiently. Plaintiff largely argues that ScotBilt's Motion is premature and that discovery should be permitted to cure any defects in her pleadings. In other words, Plaintiff asks the Court to overlook the heightened pleading requirements established by the U.S. Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) and permit discovery which will save her defective allegations despite her inability to satisfy the requisite pleading standard now.

Plaintiff's argument, however, is legally and fatally flawed in that it asked this Court to disregard the very purpose of a motion to dismiss. A motion to dismiss is a procedural tool intended to prevent "a wholly conclusory statement of claim [from surviving] a motion to

dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." See Twombly 127 S. Ct. at 1968. In Twombly, the Supreme Court expressly rejected Plaintiff's approach here finding that a plaintiff's complaint should not be permitted to go forward simply on the hope that the plaintiff could later support her case through discovery. Id. To the contrary, where Plaintiff's allegations are defective on their face, they are due to be dismissed at this stage, and Plaintiff cannot rely on the prospect of future discovery to rescue her claims.

## ARGUMENT AND CITATION OF AUTHORITY

**I.  Plaintiff's class allegations fail as a matter of law.**

Plaintiff's response appears to ignore the impact of the Supreme Court's decision in Iqbal decided May 18, 2009. It was not until Iqbal that the heightened pleading standard announced in Twombly was recognized to apply beyond the Sherman Act context. See 129 S.Ct. at 953. ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8…[that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts.") (internal quotes, cits. omitted).

None of the decisions cited by Plaintiff concerning class allegations at the 12(b)(6) stage were decided post - Iqbal. Accordingly, the Mills v. Foremost Ins. Co., and the other decisions cited by both Plaintiff and ScotBilt must be considered in light of the change in the pleading requirement under Rule 8 created byTwombly and application recognized in Iqbal. Nowhere in Iqbal or any subsequent Eleventh Circuit precedent is any suggestion that the heightened pleading standard applies only to substantive claims and not class allegations themselves. Courts have and should in light of Twombly and Iqbal dismiss class allegations where flaws exist in the

proposed class definition. See e.g. In re Mutual Funds Investment Litigation, 566 F.3d 111, 115 (4th Cir. 2009) (dismissing action under 12(b)(6) where class definition in securities action failed to satisfy loss causation standard); Kissling v. Ohio Cas. Ins. Co., Slip Copy, 2010 WL 1978862, E.D.Ky., May 14, 2010 (dismissing action where plaintiff's class allegations were not plausible on their face, in that the proposed class was not properly defined).

Plaintiff seeks to distance herself from the class definition pled and her actual allegations. However, Plaintiff's Complaint and, in turn, ScotBilt's Motion to Dismiss must be evaluated by what is alleged in Plaintiff's Complaint, not Plaintiff's after the fact explanation of what she meant to allege set forth in a responsive brief. See e.g. Plunkett v. Poyner, Slip Copy, 2009 WL 5176542 *4 (S.D.Fla. 2009) (stating "…Plaintiff may not bypass the pleading requirements of RICO complaints by filing the Rule 12.1 Civil RICO statement or pleading the statutory elements of his RICO claims in his Response in lieu of amending the Complaint."). Nowhere in Plaintiff's Complaint is any allegation as claimed by Plaintiff in her responsive brief that "all Scotbilt manufactured homes contain insufficient insulation . . ." [See Plaintiff's Response to ScotBilt's Motion to Dismiss (hereinafter "Plaintiff's Response") at 10]. Likewise, as pled, the Complaint does not seek certification of a class consisting of all purchasers of ScotBilt homes. Quite the contrary, Plaintiff has alleged a proposed fail safe class:

> composed of all those persons who purchased a manufactured home that was manufactured by Scotbilt Homes, Inc. who had blown insulation installed in their manufactured home at an insufficient depth to provide the R-Value represented.

[Plaintiff's Complaint at ¶ 14]. Despite Plaintiff's protests to the contrary, determination of who is in the class as stated will require examination, measurement and proof of the actual R-value present in each home compared to that represented.

3

Moreover, by its terms, this proposed class is a quintessential fail safe class. The class is "fail safe" "because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class." Genenbacher v. CenturyTel Fiber Co., II, 244 F.R.D. 485, 487 (C.D.Ill. 2007). Here, ignoring for the moment the distinction between the class definition pled and Plaintiff's explanation of who the class is intended to include, even assuming all purchasers of ScotBilt homes were potential class members, each purchaser would still either prevail or not be in the class. For instance, assume for the sake of argument that a class is certified consisting of all purchasers of ScotBilt homes (as Plaintiff now contends it meant to allege). If it is determined that all homes in fact had sufficient blown insulation to provide the R-Value represented then none of the purported class members would be in the class and hence not bound by the judgment. This undeniable result is precisely what is referred to as a class where a purported class member either wins or is not in the class and fails as a matter of law. For, these reasons Plaintiff's class allegations must be stricken and Scotbilt's Motion to Dismiss granted.

## II. Plaintiff's Federal and Georgia RICO claims fail as a matter of law for failure to plead with the required specificity. (Plaintiff's Count I and II)

Plaintiff misleads the Court by focusing on its pleading concerning only one of the two elements required to prove mail and wire fraud. The elements of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 are: (1) intentional participation in a scheme to defraud, **and**, (2) the use of the interstate mails or wires in furtherance of that scheme. U.S. v. Maxwell, 579 F.3d 1282 (11th Cir. 2009). However, Plaintiff's Complaint (and Plaintiff's Response) only attempts to provide explanation and describe with particularity the first element- the scheme to defraud.[1]

---

[1] As set forth below, Plaintiff fails to plead two predicate acts or the specific facts and circumstances of the misrepresentations with the required particularity.

4

Plaintiff makes no attempt to plead the precise statements, documents, communications or misrepresentations made by use of the mail or wire or the time and place and persons party to such communications. See Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007). The Eleventh Circuit is clear that "[i]n order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support **each** of the statutory elements for **at least two** of the pleaded predicate acts." Rogers v. Nacchio, 241 Fed. Appx. 602, 607 (11th Cir. 2007) (quoting Republic of Panama v. BCCI Holdings (Luxemborg) S.A., 119 F.3d 935, 949 (11th Cir. 1997)) (emphasis added); see also In re Managed Care Litigation 2009 WL 812257, *8 (S.D. Fl. March 26, 2009) (stating that "[i]n a case of mail or wire fraud that does not involve a misrepresentation of fact, the circumstances [that must be stated with particularity] ... consist of four elements: (1) a scheme to defraud; (2) intent to defraud; (3) reasonable foreseeability that the mails (or wires) would be used; and (4) *use of the mails (or wires) in furtherance of the scheme*." (quoting Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 n. 6 (8th Cir.1995)) (emphasis added).

Accordingly, in order to satisfy the pleading requirement under Twombly and Rule 9(b), Plaintiff must specifically identify two instances of use of the mail or wire by date, time, content, speakers, and explain how such <u>specific</u> instances of use of the mail or wire furthered the alleged fraudulent scheme. See West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 Fed. Appx. 81, 88-89 Fn. 5 11th Cir. 2008) (holding plaintiff failed to plead mail and wire fraud with particularity where plaintiff alleged that defendants "published . . . at least two documents, including product specification sheets, product approval guides, and information sheets, that were subsequently distributed to [plaintiff] through the . . . mail service" but failed to provide further explanation). Cf. Cocciolone v. Solowsky, 2009 WL 936667, *5-6 (April 6,

2009 S.D. Fl 2009) (finding plaintiff sufficiently pled mail and wire fraud where, among other things, dates and parties to specific telephone conversations were identified). Plaintiff's allegations concerning use of the mail and wire in her Complaint suffer from the same defect noted in West Coast Roofing requiring dismissal of Plaintiff's RICO claims.[2]

Plaintiff concedes that she cannot at this juncture "describe each [or any] of [the] uses of mail and wire in furtherance of the scheme without access to ScotBilt's records such as its email, fax and call records." (Plaintiff's Response at 16). Eleventh Circuit precedent provides that the failure to plead with particularity cannot be excused and dismissal avoided due to a plaintiff's "informational disadvantage." American Dental Association v. Cigna, et. al., 605 F.3d 1283, 1292-1293 (11th Cir. 2010).

Plaintiff's Complaint additionally fails to plead the alleged misrepresentations by ScotBilt with the required particularity. Plaintiff has conceded that she does not contend that any misrepresentation took place in any alleged mail or wire transmission or that any mail or wire transmission was directed to her. Plaintiff, however, must identify the specific misrepresentation with the particularity as required by Rule 9(b) and Twombly. "If the specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is plausible on its face." American Dental Assoc., 605 F.3d at 1292. Plaintiff fails to allege the date, time and specific content of any alleged misrepresentation made to anyone other than Plaintiff or the identity of any other person to whom an alleged misrepresentation was made. Accordingly, Plaintiff fails to allege the commission of at least two distinct but related predicate acts by

---

[2] It is important to note that the sufficiency of Plaintiff's allegations must be measured by the allegations set forth in the four corners of her Complaint and any allegations in the RICO statement or Response to Defendant's Motion to Dismiss are irrelevant. See Plunkett, 2009 WL 5176542 *4 cited supra. However, no statement or statements in either the RICO Statement or Response would save Plaintiff's deficient pleading.

6

ScotBilt required to survive a motion to dismiss. See Edwards v. Prime, Inc., et. al., 2010 WL 1404280 *8 (11th Cir., April 9, 2010). For these reasons, Plaintiff's RICO claims must be dismissed.

Just as with a federal claim, an alleged Georgia RICO claim must plead the requisite predicate acts with particularity. See Curtis Investment Co., LLC v. Bayerische Hypo-Und Vereinsbank, 341 Fed.Appx. 487, 491 (11th Cir. 2009) (affirming dismissal of Georgia RICO claim, in part for failure to plead predicate acts of mail and wire fraud "with the particularity required by Rule 9(b)."); Bodie v. Purdue Pharma Co., 236 Fed.Appx. 511, 524 (11th Cir. 2007) (indicating that heightened pleading standard – "a higher threshold of specificity" - under Rule 9(b) applies to state law fraud claims brought in federal court). Plaintiff's Georgia RICO claims likewise fail for the reasons set forth above. See Club Car, Inc. v. Club Car (Quebec) Imports, Inc., 276 F.Supp. 2d 1276, 1289 (S.D. Ga. 2003) (holding that "[b]ecause the Court has held that the alleged predicate acts fall short of stating a RICO claim in the federal sphere, those predicate acts likewise fail as a matter of state RICO law.").

**III.** **Plaintiff's claims for breach of express warranty and violations of the Magnuson Moss Act remain barred by her failure to plead compliance with the provisions of the express warranty. (Plaintiff's Count III and Count IV)**

In response to ScotBilt's Motion to Dismiss, Plaintiff does not direct the Court to specific allegations of fact within her Complaint showing that she properly and timely complied with the notice provisions of the express warranty. Rather, Plaintiff argues that her general allegation that she "provided notice to Defendant of the defect and the breach of the warranty and has given the opportunity to cure the defects, but Defendant has refused to do so" is sufficient to satisfy Rule 8 of the Federal Rules of Civil Procedure. [See Plaintiff's Response at 18]. Such general pleading is not sufficient. It is not enough for Plaintiff to have simply given notice of the alleged defect

7

and an opportunity to cure. Under the terms of the subject warranty, Plaintiff was required to give written notice of a warranty claim <u>within ten days of the expiration of the warranty period</u>. Because Plaintiff's complaint does not contain any allegations as to when she gave her notice or, whether it was timely, her complaint is insufficient under the holding of <u>Twombly</u>. See <u>Brisson v. Ford Motor Company</u>, 349 Fed.Appx. 433, 2009 WL 3326264 (11th Cir. 2009)(holding that trial court properly dismissed warranty claims where plaintiffs failed to allege that they presented vehicles to defendant, that defendant failed to make repair, and that they experienced a defect within the warranty period).

Plaintiff further creates a straw man and argues that <u>Culberson v. Mercedes-Benz USA, Ltd.</u> 274 Ga.App. 89, 91, (2005) and <u>Dryvit Systems, Inc. v. Stein</u>, 256 Ga.App. 327 (2002) are inapplicable because they do not address pleading standards related to express warranty claims and warranty notice provisions. [<u>See</u> Plaintiff's Response at 18]. These cases were not cited for the purpose of illustrating a pleading standard. Rather, they were cited for the purpose of demonstrating the necessity of timely compliance with the notice provisions of an express warranty in order to make a successful claim for breach of the warranty. It is <u>Twombly</u> which provides the applicable pleading standard. Because Plaintiff does not allege that she gave ScotBilt written notice of her claims within ten days of the expiration of the warranty period, she has not pled facts sufficient to support her claims for breach of express warranty and violations of the Magnuson Moss Act and these claims thereby fail.[3]

**IV.  Plaintiff's claim for breach of contract is barred by the applicable four year statute of limitations. (Plaintiff's Count VI).**

Plaintiff relies on O.C.G.A. §§ 9-3-96 and 9-3-98 and argues that the alleged fraud of ScotBilt tolled the statute of limitations as to her claim for breach of contract. As the Georgia

---

[3] Plaintiff does not dispute that portion of ScotBilt's brief stating that her Magnuson Moss Act claim is dependent upon the viability of her express warranty claim under state law.

Court of Appeals noted in City of McCaysville v. Cardinal Robotics, LLC, 263 Ga.App. 847, 848 (2003):

> It is well to remember that the fraud in question is not that which gives, but that which conceals a cause of action. To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent.

See also, McElmurray v. Augusta-Richmond County, 274 Ga.App. 605, 614-615, (2005).

Although Plaintiff alleges generally that ScotBilt misrepresented the nature of the mobile home and R-value, Plaintiff does not allege what actions ScotBilt took in order to conceal the alleged deficiencies or prevent her from discovering or investigating the same. This is especially true as it relates to the condition of the mobile home after the sale. There are no factual allegations as to what, if anything, ScotBilt did after the sale to prevent or deter Plaintiff from discovering the alleged deficiencies.[4]

Plaintiff's reliance on Autry Petroleum Company v. BP Products North America, Inc., 2006 WL 1174443 (2006) is misplaced. Autry, decided in 2006, predates Twombly and its requirement that the plaintiff plead factual allegations which are enough to raise a right to relief above the speculative level. Twombly, 127 S. Ct. at 1965. Plaintiff has not alleged any actions of ScotBilt that deterred her from bringing her claim for breach of contract in the time allowed by Georgia law. Rather, she has simply set forth conclusory allegations of fraudulent concealment but has not pled acts by ScotBilt sufficiently or with the particularity required to toll the running of the statute of limitation. See Jones v. Board of Regents of University System of

---

[4] For example, Plaintiff does not allege that Scotbilt attempted to explain away post sale complaints about the mobile home or otherwise deceive Plaintiff into thinking that issues with her mobile home were not the fault of Scotbilt.

Georgia, 219 Ga. App. 448, 449, 466 S.E.2d 869 (1995) (quoting Rigdon v.Barfield, 194 Ga. 77, 82, 20 S.E.2d 587 (1942)(stating that "[a] plaintiff cannot 'sit quietly by for a length of time exceeding that named in the statute of limitations, and avoid its operation and save [its] cause of action by the mere allegation that [it] made the discovery' only recently")). Consequently, her claim for breach of contract is subject to dismissal.

V. **ScotBilt's IPIA must be joined as an indispensable party or Plaintiff's Complaint is due to be dismissed.**

As briefed in full in its Memorandum of Law in Support of the Motion to Dismiss, Plaintiff's allegations demand that ScotBilt's IPIA, the Georgia State Office of Insurance and Safety Fire Commissioner, be joined as a necessary and indispensable party to the present action. The Laker case explored by ScotBilt in its Memorandum is squarely on point with the facts presented and is the controlling authority in this case. See Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843 (11th Cir. 1999); accord Boles v. Greenville Housing Authority, 468 F.2d 476 (6th Cir. 1972)(finding that the Department of Housing Urban Development was an indispensable party under Rule 19 when plaintiffs indirectly attacked the agency's approval of a development plan). Laker held that "a joint tortfeasor will be considered a necessary party when the absent party 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'" See Laker, 182 F.3d at 848. Based on Plaintiff's allegations, ScotBilt's IPIA, the Georgia State Office of Insurance and Safety Fire Commissioner, is clearly an "'active participant' in the allegations made in the complaint that is 'critical to the disposition of the important issues in the litigation,'" and therefore, should be joined if feasible.

Plaintiff clearly and unequivocally alleges that ScotBilt's IPIA was a participant in the "Insulation Enterprise" and a necessary party to effect the purported fraudulent scheme allegedly

perpetrated by ScotBilt. See Plaintiff's Complaint at ¶¶ 32-34, 42-44. Plaintiff specifically pleads that "[t]he structure of the Insulation Enterprise included the following: (a) ScotBilt as providers of the designs; (b) PFS Corp. and **perhaps other DAPIAs and IPIAs** rubber stamp approval of these designs, calculations, and methodologies. ScotBilt and **its DAPIAs and IPIAs** associate with, participate in, and control the affairs of the Insulation Enterprise." See Plaintiff's Complaint at ¶ 43)(emphasis added). Plaintiff's Amended Civil Rico Case Statement Pursuant to S.D. Ga. LR 19.1 lists the members of the Insulation Enterprise to include ScotBilt as well as "ScotBilt's DAPIAs and IPIAs, including PFS Corporation,…" See Plaintiff's Amended Civil Rico Case Statement Pursuant to S.D. Ga. LR 19.1 at 6. Moreover, Plaintiff specifically pleads in support of her class allegations that a question of law and fact common to the members of the Class, includes "Whether [ScotBilt], its DAPIA and its IPIA formed an enterprise under RICO?" See Plaintiff's Complaint at ¶ 15(b).

Plaintiff does not dispute that the Laker holding controls the present situation and does little to distinguish the Laker case from the facts presented. Despite the forgoing allegations, Plaintiff incredibly now argues that ScotBilt's IPIA is not a participant in the "Insulation Enterprise" or a necessary party to effect the purported fraudulent scheme allegedly perpetrated by ScotBilt. See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss at p. 23 ("….the Commissioner's Office did not play an active part in the conspiracy to defraud Plaintiff").[5] Much like her response to ScotBilt's Motion to Dismiss in its entirety, Plaintiff

---

[5] It should be noted that Plaintiff specifically pleads that the participation of ScotBilt's IPIA was **required** for ScotBilt to perpetrate this allegedly fraudulent and deceptive scheme. See Plaintiff's Complaint at ¶ 34. Plaintiff's response to ScotBilt's Motion to Dismiss, however, directly contradicts this allegation, as she now asserts that ScotBilt's IPIA was not part of the Insulation Enterprise and that the role of ScotBilt's IPIA in the fraudulent scheme was merely "passive." See Response at p. 23. Since Plaintiff alleged that the participation of ScotBilt's IPIA was required to perpetrate this allegedly fraudulent and deceptive scheme, Plaintiff's recant of this allegation must lead the Court to question the merit of Plaintiff's claim of a fraudulent enterprise/scheme in its entirety. If the participation of ScotBilt's IPIA was required as alleged by Plaintiff, and ScotBilt's IPIA did not participate as Plaintiff now concedes, then it would seem that Plaintiff's claims predicated on the existence of the fraudulent

opposes ScotBilt's Motion to Dismiss for Failure to Join Indispensible Party based on what she meant, not what she pled. As in other areas of her brief, Plaintiff impermissibly goes outside of her own pleadings to explain to the Court what she intended to plead (as opposed to what she actually plead) in a conspicuous effort to rescue her defective allegations. See Id. ("intended to identify PFS [Corporation] as the other active wrongdoer, even though she was possibly incorrect in her assertion that PFS was also ScotBilt's IPIA").

In this instance, Plaintiff states that although she alleges ScotBilt's "IPIA**s**" were a necessary party to alleged fraudulent scheme, she "intended to identify PFS [Corporation] as the other active wrongdoer, even though she was possibly incorrect in her assertion that PFS was also ScotBilt's IPIA." Id. Plaintiff's argument is frankly absurd in light of her own allegations. Plaintiff's allegations incorporate ScotBilt's "IPIAs", plural, as opposed to simply a single IPIA, PFS Corporation. See Plaintiff's Complaint at ¶¶ 42, 43. Moreover, Plaintiff specifically alleges that the Insulation Enterprise includes not only PFS Corporation, but "perhaps other DAPIAs and IPIAs." See Plaintiff's Complaint at ¶ 43.

Based on Plaintiff's allegations, the identity of the IPIA is of no consequence. The fact that Plaintiff incorrectly believed that the PFS Corporation was ScotBilt's IPIA does not change the fact that under Plaintiff's allegations the IPIA was an active participant in the "Insulation Enterprise" and a necessary party to effect the purported fraudulent scheme allegedly perpetrated by ScotBilt. See Plaintiff's Complaint at ¶ 34; see also Plaintiff's Complaint at ¶¶ 42-44. Based on Plaintiff's allegations and the Laker opinion, ScotBilt's IPIA, the Georgia State Office of Insurance and Safety Fire Commissioner, must be joined if feasible or the case must be dismissed.

---

scheme must fail.

## CONCLUSION

For the reasons set forth herein as well as the arguments set forth in Scotbilt's Motion to Dismiss, Scotbilt respectfully requests that its Motion to Dismiss be GRANTED.

Respectfully submitted, this 1st day of July, 2010.

                                                          GILBERT, HARRELL,
                                                        SUMERFORD & MARTIN, P.C.

                                                        ***s/ James L. Roberts, IV***
                                                        Wallace E. Harrell
                                                        Georgia Bar No.: 328800
                                                        James L. Roberts, IV
                                                        Georgia Bar No.: 608580
                                                        Jeffrey S. Ward
                                                        Georgia Bar No.: 737277
                                                        Jason M. Tate
                                                        Georgia Bar No. 250827

777 Gloucester Street
Post Office Box 190                                 *ATTORNEYS FOR DEFENDANT*
Brunswick, Georgia 31520                   *SCOTBILT HOMES, INC.*
Telephone: (912) 265-6700
Facsimile: (912) 264-3917

                                                        CONNER AND JACKSON, PC
                                                        Neal L. Conner, Jr.
                                                        Georgia Bar No.: 182000

P.O. Box 1278                                       *ATTORNEYS FOR DEFENDANT*
Waycross, GA 31502                         *SCOTBILT HOMES, INC.*
Phone: (912)-283-4394
Fax: (912)-285-9813

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May 2010, I served a true and correct copy of the foregoing DEFENDANT SCOTBILT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, via the Court's CM/ECF system, which will send an electronic notification of such filing to the following counsel of record:

**Christina D. Crow, Esq.**
**JINKS, CROW & DICKSON, PC**
P.O. Box 350
Union Spring, AL 36089
Phone: (334)-738-4225
ccrow@jinkslaw.com

**Tony Center, Esq.**
**LAW OFFICE OF TONY CENTER, PC**
313 W. York St.
Savannah, GA 31401
Phone: (912)-233-9696; Fax: (912)-232-8620
tonycenter@comcast.net

and via U.S. Mail to the following attorneys of record:

Joe R. Whatley, Jr., Esq.
Edith M. Kallas, Esq.
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036

W. Tucker Brown, Esq.
Sara C. Hacker, Esq.
WHATLEY DRAKE & KALLAS, LLC
1000 Park Place Towers
2001 Park Place North
Birmingham, Alabama 35203

Lynn W. Jinks, III, Esq.
Nathan A. Dickson, II, Esq.
JINKS, CROW & DICKSON, PC
P.O. Box 350
Union Spring, AL 36089

David Selby, II, Esq.
K<small>EE</small> & S<small>ELBY</small> LLP
1900 International Park, Suite 220
Birmingham, AL 35243

This 1st day of July, 2010.

*s/ James L. Roberts, IV*
James L. Roberts, IV
Georgia Bar No.: 608580

Post Office Box 190
Brunswick, Georgia 31520
(912) 265-6700