| | | |
|---|---|---|
| **SHEILA LEWIS,** | ) | |
| **Individually and on behalf of a class of** | ) | |
| **Persons similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.: 5:10-CV-LGW-JEG** |
| | ) | |
| **SCOTBILT HOMES, INC. and** | ) | |
| **GEORGIA STATE OFFICE OF** | ) | |
| **INSURANCE AND SAFETY FIRE** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Sheila Lewis ("Plaintiff"), individually and on behalf of all others similarly situated, for this class action complaint against Scotbilt Homes, Inc. ("Scotbilt"), alleges upon information and belief, except as to the allegations which pertain to Plaintiff and her counsel which claims are based on personal knowledge, as follows:

## INTRODUCTION

1.    Plaintiff brings this class action on behalf of herself and all other individuals who purchased a manufactured home that was manufactured and sold by Scotbilt.

2.    When Plaintiff and other similarly situated purchased their manufactured homes, they were provided an Insulation Disclosure Form as required by the Federal Trade Commission ("FTC") in 16 CFR Part 460 and/or other forms that disclosed the amount and R-Value of insulation that was installed in their homes.

3.     This action alleges that Scotbilt has violated federal law and state statutory law and common law in issuing Insulation Disclosure Cards to Plaintiff and others similarly situated, breaching its contracts with these homeowners and suppressing from Plaintiff and other Class members the true R-Value in the insulation installed in their manufactured homes.  Plaintiff seeks, *inter alia*, an order permanently enjoining Scotbilt from manufacturing and selling homes with a lower R-Value of insulation than is represented and requiring Scotbilt to add more insulation to homes already sold as well as to homes manufactured by Scotbilt in the future.

4.     Plaintiff seeks certification of a Class comprised of all United States residents who purchased a home manufactured and sold by Scotbilt who paid for goods and/or services they did not receive in the form of a lower R-Value of insulation as a result of the improper conduct of Scotbilt

5.     Scotbilt's illegal conduct, as alleged herein, injured Plaintiff and the Class in numerous ways, including, but not limited to

      a.  Plaintiff and the Class have lost the use of adequate insulation and, as a result, are incurring increased daily costs of heating and cooling their homes;

      b.  Plaintiff and the Class will experience diminution in value of their homes due to the fact that Plaintiff and the Class must disclose to prospective buyers that the insulation in their attic was not correctly installed, or alternatively, Plaintiff and the Class would be required to fix the problem prior to sale without disclosure;

      c.  Plaintiff and the Class are in possession of homes that do not comply with the material provisions of the Sales Agreements, the Scotbilt Warranty, and federal regulations.

6.     Plaintiff brings this seven count Complaint to redress said injuries on behalf of herself and the Class, alleging:

> I.     Breach of Express Warranty
>
> II.    Violation of Magnuson-Moss Warranty Act
>
> III.   Violation of the Georgia Uniform Deceptive Trade Practices Act
>
> IV.    Violation of the Georgia Fair Business Practices Act
>
> V.     Unjust Enrichment
>
> VI.    Misrepresentation by Concealment

## JURISDICTION AND VENUE

7.     The claims made by Plaintiff on behalf of herself and the other members of the Class are brought for relief including, but not limited to, injunctive relief, equitable monetary relief and monetary damages well in excess of $5,000,000.00, as appropriate for the particular causes of action asserted below. Although the exact number of Class members is unknown, upon information and belief, there are at least 100 members in the putative Class.  Plaintiff, a citizen of the state of Florida, is a citizen of a state different from Scotbilt and the Georgia State Office of Insurance and Safety Fire Commissioner, citizens of the state of Georgia.  Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d)(2)(A), 28 U.S.C. §1332(a)(1), and 28 U.S.C. §1331 and 28 U.S.C. §1367.

8.     Venue is proper in this District and Division pursuant to 28 U.S.C. §1391.

9.     Scotbilt is found, does business in or transacts business within this District and Division. Scotbilt maintains its world headquarters within this District and Division.

10.    Scotbilt's improper conduct set forth herein occurred in this District and Division. Scotbilt directly advertised, marketed and sold manufactured homes to consumers in this District.

Scotbilt's headquarters are located within this District and the wrongdoing described herein was directed by Scotbilt from its headquarters in this District.

11.     The harm alleged herein occurred in this District and Division or emanated from Scotbilt's improper conduct that occurred within this District and Division.

## PARTIES

### Plaintiff

12.     Plaintiff Sheila Lewis is an adult resident citizen of Florida.

### Defendants

13.     Defendant Scotbilt Homes, Inc. is believed by Plaintiff to be a Georgia corporation or business whose principal place of business is located at 2888 Fulford Road, Waycross, Georgia 31503 and whose agent for service in the State of Georgia is Sam P. Scott. Scotbilt manufactures homes in the State of Georgia and sells these homes throughout the United States.

14.     The Georgia State Office of Insurance and Safety Fire Commissioner ("the Office") is a Georgia governmental entity that develops rules and regulations for, among other things, manufactured homes. The Court ordered the addition of the Office as a party and therefore, it is included here.

## FACTS

15.     In manufacturing and distributing manufactured homes, Scotbilt installs insulation in those homes.  In particular, insulation is installed in the roof and/or attic cavity of the homes that are manufactured by CMH.

16.     As a seller of new manufactured homes, Scotbilt is required by law to provide to Plaintiff and others similarly situated certain information that discloses the type, thickness and R-

Value of the insulation that was installed in the roof and/or attic of their homes. 16 C.F.R. §460, *et seq.* (the "R-Value Rules").

17. The FTC has promulgated rules about R-Values to protect consumers against deceptive and misleading advertising claims. The FTC issued the R-Value Rules to prohibit, on an industry-wide basis, specific unfair or deceptive acts or practices that mislead consumers because of inaccurate representations about insulating capacity.

18. The FTC's R-Value Rules require home insulation industry members, including Scotbilt and its retailers, to provide R-Value information based on the results of standardized tests to consumers at the point of sale.

19. Scotbilt failed to comply with these FTC regulations that require Scotbilt to provide correct information to consumers, either directly or through its retailer agents, about the R-Value of the insulation used in its manufactured homes. Specifically, Scotbilt provided false and misleading information about the R-Value of the insulation that was installed in the roof and/or attic of the manufactured homes sold to Plaintiff and Class members.

20. For the insulation installed in the roof and/or attic cavity of the homes purchased by Plaintiff and Class members, Scotbilt uses "stabilized" blown insulation manufactured by US GreenFiber LLC or other insulation manufacturers.

21. An R-Value indicates the insulation's resistance to heat flow. The higher the R-Value, the greater the insulating effectiveness. With few exceptions, R-Values range from R-1 to R-30, and typically range between R-14 and R-28. Scotbilt systemically represents that insulation installed in its manufactured homes is installed to a certain R-Value when in fact the actual R-Value is less than what is promised and represented.

22.     Scotbilt failed to install insulation in the attic cavities of all its manufactured homes to the R-Value represented because (1) it systematically failed to follow proper installation techniques and/or (2) it used improper calculation methods to determine the amount of insulation that would be needed to obtain the insulation depth required to achieve the represented R-Value.

8.     Improper installation of insulation can affect the R-Value of the insulation. For example, the failure to add the required amount of moisture when installing "stabilized" blown insulation will cause the insulation to become compressed. Certain levels of moisture are necessary when installing stabilized blown insulation because stabilized insulation contains a special dry adhesive that, when installed correctly, is activated by water and "sets up" to create a blanket-like mass. Insulation that is compressed due to improper installation will not provide its full rated R-Value. Therefore, it is important to properly install insulation according to the insulation manufacturer's instructions to achieve the represented R-Value. A minor variation in the depth of insulation due to improper installation can materially affect the R-Value, as a one-inch variance can change the R-Value from R-21 to R-14.

9.     Regardless of whether Scotbilt properly installed the insulation, Scotbilt did not even install the amount of insulation into the attic cavities of its manufactured homes that was necessary to achieve the R-Value represented to customers because Scotbilt used a flawed methodology for calculating or determining the amount of insulation that would be necessary to achieve a specific R-Value.

10.     In December 2000, FTC staff issued a public letter stating that averaging insulation depths to determine R-Value violates FTC regulations, including 16 C.F.R. §460.1, *et seq.* This December 2000 letter stated that FTC regulations require "the installation of loose-fill

6

insulation at or above the required minimum settled thickness at every location" and that the "minimum thickness labeling requirement . . . [does not] provide[] loose-fill installers with the discretion to leave some areas at less than minimum settled thickness and then average the overall thickness as a means to yield the appropriate R-Value."

15.     In Plaintiff's home, the insulation is insufficient to produce the represented R- and U-Values (described below).  Because Scotbilt systematically failed to properly install the insulation, and/or improperly calculated R-Value by, among other things, averaging insulation depth, the R-Values and U-Values of insulation in Plaintiff's and Class members' homes are not as represented.

16.     Because the effect of R-Values is non-linear in terms of insulating capacity, the difference between what was represented and what Plaintiff and Class members received is material.

17.     As a result of Scotbilt's failure to properly install insulation and/or its failure to properly calculate the amount of insulation required to achieve the disclosed R-Value, the representations regarding R-Value provided by Scotbilt were false and misleading to consumers.

18.     Scotbilt also improperly calculated and fraudulently represented the U-Values of the insulation, which can be used to determine the R-Value, on the "data plate" included in every home prior to shipment as required by U.S. Department of Housing and Urban Development ("HUD") regulations.

19.     U-Values rate how much heat is lost through a material or combination of materials.  The lower the U-Value the better the insulation capacity provided by that material.  Thus, a U-Value of 0.35 would indicate better energy efficiency than a U-Value of 0.43.   U-

Values can also be correlated to the R-Value, such that if the U-Value is wrong, the R-Value is also wrong.

20.     Thus, when Scotbilt represents the R-Value or component U-Value of the blown insulation in its manufactured homes to its customers via advertising and other disclosures required by the FTC and HUD, it routinely misrepresents the R-Value of the insulation provided to consumers in these manufactured homes. Scotbilt also does not disclose the material fact that, to obtain the represented R-Value, the insulation needed to be properly installed, which it was not, and/or the insulation needed to be installed using proper calculations for determining the amount of insulation that would be necessary to achieve a certain R-Value, which it was not.

21.     Improper installation of insulation in a manufactured home is also a violation of quality assurance standards promulgated by HUD, as set forth in 24 C.F.R. § 3280, *et seq.* Under these regulations, and specifically 24 C.F.R. §3282.251(a), such homes should never have been sold in the first place if insulation is not properly installed.  Thus, as the insulation was uniformly improperly installed, such a failure constitutes a "defect" under the HUD regulations, requiring Scotbilt to repair Class members' homes for the life of their homes.  Such a uniform defect results not only in a need to make the appropriate repairs, but also in increased cooling and heating costs.

22.     As a result of these illegal practices, Plaintiff and other members of the Class have suffered injury in fact, lost money or property and/or have been damaged by Scotbilt's conduct in that they have (1) paid more for their manufactured homes than they would have if they had known that the home was not equipped with a the amount of insulation that was advertised in terms of the R-Value of the insulation; (2) incurred millions of dollars in losses in increased daily costs of heating and cooling their homes due to the lower R-Value of the

8

insulation actually installed; (3) incurred the costs of repair (or of the future repair to) the insulation to ensure that the home is actually insulated at the R-Value originally represented by Scotbilt; and, (4) suffered a diminution in the resale value of their homes as a result of the fact that the deficient R-Value must be disclosed to prospective buyers that the insulation in the attic was not correctly installed, or alternatively, Plaintiff and the Class are or were required to fix the problem prior to re-sale.

## SHEILA LEWIS' TRANSACTION

25.     In May of 2005, Plaintiff purchased a manufactured home that was manufactured by Scotbilt.  The manufactured home bears serial number SBHGA1180500605A/B.

26.     As part of the purchase of the manufactured home, Plaintiff received a sales order form and/or an Insulation Disclosure Form from Scotbilt that represented to Plaintiff that the insulation in the attic cavity of her manufactured home would have an R-Value of R-21.  Scotbilt also included a Data Sheet inside Plaintiff's home that represented to Plaintiff that the insulation in her attic would have a U-Value of U-.046.  At the time of issuing the Insulation Disclosure Form, Scotbilt was using blown insulation and represented that it blew the insulation in the attic cavity of Plaintiff's home to a depth of 5.68 inches.

27.     The insulation in the attic cavity of Plaintiff's home is significantly less than 5.68 inches.

28.     By representing to Plaintiff and others similarly situated that they were receiving a higher R-value of insulation than what was actually installed, Scotbilt has violated the federal law and the statutory and common laws in the State of Georgia.  Further, by providing misleading information on the FTC required Insulation Disclosure, Scotbilt violated federal law as well as the laws of the State of Georgia.  This action is brought pursuant to Georgia law.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on behalf of herself and all members of a Class composed of all those persons who purchased a manufactured home that was manufactured by Scotbilt Homes, Inc. who had blown insulation installed in their manufactured home at an insufficient depth to provide the R-Value represented.

31.     Plaintiff avers that the Class is so numerous that joinder of all persons is impractical. On information and belief, Scotbilt has sold thousands of manufactured homes that would be encompassed by the homes at issue in the proposed Class definition.

32.     Plaintiff believes that the names and addresses of the Class members are readily attainable from Scotbilt.

33.     Plaintiff avers that the questions of law and fact common to the Class predominate over questions which may affect individual Class members.  In fact, Georgia law governs the dispute for all Class members.  The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include, but are not limited to, the following:

      (a)   Whether Scotbilt misrepresented the R-Value of insulation in its manufactured homes;

      (c)   Whether Scotbilt engaged in fraudulent or deceptive conduct to mislead and conceal from home purchasers the amount of insulation in their homes;

      (d)   Whether, in representing that its homes contain a certain R-Value but providing a lower R-Value, Scotbilt breached express warranties with Plaintiff and the Class;

(e) Whether, in representing that the homes contain a certain R-Value but providing a lower R-Value, Scotbilt suppressed material issues of fact from Plaintiff and the Class;

(f) Whether, in representing that the homes contain a certain R-value but providing a lower R-value, Scotbilt violated the FTC's Trade Regulation Rule Covering Labeling and Advertising of Home Insulation (the "R-value Rule"), 16 C.F.R. Part 460;

(g) Whether Scotbilt has engaged and is still engaging in unfair or deceptive acts and practices;

(h) Whether Scotbilt has engaged and is still engaging in unconscionable acts and practices;

(i) Whether the members of the Class have been damaged and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief or statutory damages to which each Class member is entitled.

33. Plaintiff asserts claims that are typical of the claims of the entire Class.

34. Plaintiff will fairly and adequately represent and protect the interest of the Class in that she has no interest antagonistic to those of other members of the Class.

35. Plaintiff has retained counsel who is competent and experienced in the prosecution of class action litigation.

36. Plaintiff and members of the Class have all suffered irreparable harm and damages as a result of Scotbilt's unlawful and wrongful conduct.

37. Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

38.     Absent a class action, it is not likely that Scotbilt will ever be required to disgorge the profits that it has made as a result of activities which violate the various states' statutory and common law.  Further, the members of the Class will not obtain the full relief to which they are entitled.

36.     Absent a class action, Class members will continue to suffer losses without remedy and Scotbilt will be permitted to retain the proceeds of its ill gotten gains.

<u>COUNT I</u>

<u>BREACH OF EXPRESS WARRANTY</u>

37.     Plaintiff incorporates by reference all of the preceding paragraphs.

38.     Scotbilt expressly gives warranties by specific words or actions to Plaintiff and Class members, through the issuance of its written warranty accompanying all of its manufactured homes,,that the manufactured homes sold to Plaintiff and the Class were free from defects in materials and workmanship and that any defects would be repaired or replaced under the warranty.  In addition, Scotbilt is required to warrant such homes in terms of their insulating capacity and the homes' compliance with federal regulations for the life of such homes.

39.     The manufactured homes made by Scotbilt, at the time of sale and when delivered to Plaintiff and Class members, did not conform to Scotbilt's express warranties in that the homes were not free from defects in materials or workmanship due to the manner in which the insulation in such homes was installed.

40.     Plaintiff provided notice to Scotbilt of the defect and the breach of the warranty through a certified demand letter.  The returned receipt for the certified letter was signed by Caroline McNease on behalf of Scotbilt on September 20, 2007.  In the letter, Plaintiff has gave Scotbilt the opportunity to cure or attempt to cure the defects, but Scotbilt has failed or refused to

do so. Specifically, in the letter, Plaintiff notified Scotbilt of the defects in her manufactured home and in the manufactured homes of others similarly situated. Plaintiff also demanded that Scotbilt identify all consumers that were affected by the insulation defect and advise those consumers that they have the right to a refund of improper charges imposed as a result of its wrongful practices. Plaintiff also demanded that Scotbilt cease its systematic conduct in overstating the R-Value of insulation in its homes.

41. Scotbilt actively suppressed the material facts about the defects in the insulation. Because the insulation in Scotbilt homes is installed within an enclosed attic cavity, purchasers of its homes are not provided with the opportunity to view or inspect the level of insulation in the attic cavity before purchase. In addition, Plaintiff and Class members could not have discovered the insulation defect after purchase because of the limited access to the attic cavity. Specifically, the attic cavity is closed off and can only be inspected by opening roof vents while on the roof and lowering a camera and measuring device into the roof vent. Unlike in traditional construction, there is no access to the attic cavity from inside the home, the only access being from the roof of the home. Even if consumers did have the opportunity to inspect the insulation in the attic cavities, consumers would likely not know what level of insulation is necessary to reach a the R-Value on the disclosure cards. Consumers must rely on Scotbilt's superior knowledge of the technical issues regarding insulation as well as the R-Value disclosure statements that are provided to purchasers of Scotbilt homes.

42. Plaintiff and the Class, because of limited attic access, the technical issues regarding insulation installation and Scotbilt's superior knowledge, could not reasonably have had knowledge of the facts sufficient to discover the insulation defect, the cause of their injuries, during any claimed warranty period, as the acts of Scotbilt that caused such injuries were

13

undiscoverable to class members. Any claimed warranty limitations period would therefore be unconscionable and unenforceable.

43. Although the defect—the insufficient insulation—existed at the time of purchase, the defect was not discoverable by Plaintiff. Therefore, the notice provision in Plaintiff's and Class member's warranty requiring that the Plaintiff provide Scotbilt with notice of a defect within ten days of the expiration of the warranty is unenforceable with respect to the defect at issue in this case.

44. Scotbilt has failed or refused to repair the defects in the manufactured homes and/or the warranty has failed in its essential purpose causing Plaintiff and the Class to suffer injury and damages.

45. Scotbilt has failed or refused to correct the defect in Class members' homes despite being aware of the defect and having received complaints from Class members that their homes were difficult to heat and cool.

46. Scotbilt knew when it manufactured, distributed and sold the homes purchased by Plaintiff and Class members that the homes were defective and therefore in violation of the express warranty at the time of sale.

47. As alleged above, and due to the nature of the alleged defect, Scotbilt sold Class members manufactured homes that violated its express warranties. This defect has manifested itself in the homes of Plaintiff and all Class members. Class members will need to obtain an adequate and effective repair of their defective homes as soon as practicable to minimize further damage.

48. As a result of Scotbilt's breach of warranty, Plaintiff and Class members have been damaged.

## COUNT II

## MAGNUSON-MOSS WARRANTY ACT

52.     Plaintiff incorporates by reference all of the preceding paragraphs.

53.     Scotbilt provided a written warranty and implied warranty on its manufactured homes as part of the basis of the bargain that Plaintiff and others similarly situated had with Scotbilt.

54.     The sales transaction was subject to the provisions and regulations of the Magnuson Moss Warranty Act, 15 U.S.C. 2301 et. seq.

55.     Plaintiff and members of the Class are "consumers" as defined in the Magnuson Moss Warranty Act.  Scotbilt is a "supplier" and "warrantor" as defined by the Magnuson-Moss Warranty Act.

56.     The manufactured home in question is a "consumer product" as defined in the Magnuson Moss Warranty Act and the home was manufactured and sold after July 4, 1975. The express warranty provided by Scotbilt and/or required by statute to be provided by Scotbilt is a "written warranty" as defined in the Magnuson-Moss Warranty Act.

57.     Scotbilt breached the written warranty with regard to Plaintiff and other Class members manufactured homes.

58.     Scotbilt was aware or should have been aware of the defects at the time of the sale.

59.     Scotbilt's conduct described herein is a violation of the Magnuson-Moss Warranty Act.

## COUNT III

## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

## (Ga.Code Ann.§ 10-1-370)

54.    Plaintiff incorporates by reference all of the preceding paragraphs.

55.    Scotbilt as described above, undertook at least the following deceptive trade practices:

> Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; advertises goods or services with intent not to sell them as advertised; and engages in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

56.    Scotbilt knew that its conduct was deceptive, and continued to willfully engage in the conduct.

57.    Plaintiff and the Class have been damaged, or are likely to be damaged by Scotbilt's deceptive conduct.

58.    Plaintiff and the Class are entitled to injunctive relief as equity allows, including an injunction requiring that Scotbilt repair the homes purchased by Plaintiff and the Class.

## COUNT IV

## VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT

## (Ga.Code Ann.§ 10-1-390, *et seq*)

59.    Plaintiff incorporates by reference all of the preceding paragraphs.

60.    Scotbilt, as described above, undertook at least the following unfair business practices:

> Advertising goods or services with intent not to sell them as advertised; representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

59.     Scotbilt knew that its conduct was unfair and deceptive, and continued to willfully engage in the conduct.

60.     Plaintiff and the Class have been damaged, or are likely to be damaged by Scotbilt's unfair business conduct.

61.     Scotbilt intentionally undertook the unfair business practices described in this Complaint.

62.     Plaintiff and the Class are entitled to general, actual and exemplary damages, treble damages, and reasonable attorneys' fees and expenses incurred in connection with this action.

## COUNT V

## UNJUST ENRICHMENT

63.     Plaintiff incorporates by reference all of the preceding paragraphs.

64.     The acts of Scotbilt resulted in Plaintiff and Class members paying more for the homes than it was worth, resulting in profit earnings in excess of what should have been earned for the homes sold.  This resulted in Scotbilt being unjustly enriched by receiving profits in excess of the amount actually and fairly earned for the particular home sold.

65.     As a result, Scotbilt has retained money which, in justice and equity, belongs to Plaintiff and the members of the Class.  Scotbilt has been unjustly enriched and must return them to Plaintiff and the Class.

66.     Alternatively, Scotbilt must disgorge all amounts it was paid from the dealerships to whom it sold the homes that were sold to Plaintiff and the Class in the form of the difference in the value of a home with the represented R-value and the actual R-value delivered.

## COUNT VI

## MISREPRESENTATION BY CONCEALMENT

67.     Plaintiff incorporates by reference all of the preceding paragraphs.

68.     Scotbilt suppressed from Plaintiff and all Class members that it was not installing the insulation properly and in accordance with the manufacturer's installation instructions to obtain the R-value which was represented and required.

69.     Scotbilt entered into a pattern or practice of fraud that included the fraud practiced on Plaintiff and Class members.

70.     Plaintiff and Class members relied on and were induced to act by Scotbilt's misrepresentations and concealment.  The reliance of Plaintiff and Class members is inferred from the fact that Plaintiff and the Class purchased the homes and would not have done so if they had been told of the improper conduct of Scotbilt in installing the insulation in the attic of their homes.

71.     As a result of Scotbilt's suppression of material facts, Plaintiff and Class members have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an award against Scotbilt as follows:

a.      Certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and her counsel as counsel for the Class;

b.      Awarding Plaintiff and the Class compensatory damages and all statutory, exemplary  or treble damages from Scotbilt permitted by law;

c.      Awarding Plaintiff and the Class punitive damages as a result of Scotbilt's willful and intentional unlawful and inequitable conduct;

18

d.     Permanently enjoining Scotbilt from continuing to engage in the unlawful and inequitable conduct alleged herein;

e.     Granting Plaintiff and the Class all equitable remedies permitted by law against Scotbilt;

f.     Ordering and instructing Scotbilt to provide restitution and/or to disgorge into a common fund or constructive trust all monies paid by Plaintiff and the Class to full extent to which Scotbilt is unjustly enriched by its unlawful and inequitable conduct alleged herein;

g.     Granting Plaintiff and the Class the costs of prosecuting this action against Scotbilt, together with interest and reasonable attorneys' and experts' fees; and

h.     Granting such other relief against Scotbilt as the Court may deem just and proper under the circumstances and applicable laws.

i.     An order certifying that the action may be maintained as a class action against Scotbilt;

j.     An order enjoining Scotbilt from continuing to sell these homes until it begins to properly install the insulation.

This 10th day of  November, 2010.

Respectfully submitted,

/s/ Christina D. Crow
Christina D. Crow, Esq.
Georgia Bar No.: 198370
P.O. Box 350
Union Springs, AL 36089
Phone (334) 738-4225
ccrow@jinkslaw.com

Tony Center
**LAW OFFICE OF TONY CENTER, PC**
313 York Street
Savannah, Georgia 31401
(912) 233-9696
(912) 232-8620 *Fax*
tonycenter@comcast.net

Lynn W. Jinks, III
Christina D. Crow
Nathan A. Dickson II
**JINKS, CROW & DICKSON, P.C.**
P. O. Box 350
Union Springs, Alabama 36089
(334) 738-4225
(334) 738-4229 *Fax*
ljinks@jinkslaw.com
ccrow@jinkslaw.com
ndickson@jinkslaw.com

Joe R. Whatley, Jr.
Edith M. Kallas
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, New York, 10036
(212) 447-7070
(212) 447-7077 *Fax*
jwhatley@wdklaw.com
ekallas@wdklaw.com

W. Tucker Brown
Sara C. Hacker
**WHATLEY, DRAKE & KALLAS, LLC**
2001 Park Place North, Suite 1000
Birmingham, AL 35203
(205) 328-9576
(205) 328-9669 *Fax*
tbrown@wdklaw.com
shacker@wdklaw.com

David Selby II
**KEE & SELBY LLP**
1900 International Park
Suite 220
Birmingham, Alabama 35243
(205) 968-9906 Direct
(205) 968-9909 Fax
ds@keeselby.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2010, I have this date served a true and correct

copy of the foregoing document via the Court's CM/ECF electronic filing system upon the

following counsel of record:

Wallace E. Harrell, Esq.
James L. Roberts, IV, Esq.
Jeffrey S. Ward, Esq.
Stephen V. Kinney, Esq.
Jason M. Tate, Esq.
GILBERT HARRELL SUMERFORD &
 MARTIN, PC
777 Gloucester Street
Post Office Box 190
Brunswick Georgia 31520

Neal L. Conner, Jr., Esq.
CONNER AND JACKSON, PC
Post Office Box 1278
Waycross, Georgia 31502

      /s/     Christina D. Crow
           OF COUNSEL