| | |
|---|---|
| SHEILA LEWIS,<br>**Individually and on behalf of a class of**<br>**Persons similarly situated,** )<br><br>**Plaintiff,** )<br><br>vs. )<br><br>SCOTBILT HOMES, INC. and<br>GEORGIA STATE OFFICE OF<br>INSURANCE AND SAFETY FIRE<br>COMMISSIONER, )<br><br>**Defendants.** ) | **Civil Action No.: 5:10-CV-016-LGW-JEG** |

## PLAINTIFF'S RESPONSE TO DEFENDANT SCOTBILT HOMES, INC'S MOTION TO DISMISS

Plaintiff Sheila Lewis ("Plaintiff" or "Lewis") submits this response in opposition Defendant Scotbilt Homes, Inc.'s ("Defendant" or "Scotbilt") Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. # 83).

## PROCEDURAL BACKGROUND

On February 3, 2010, Lewis filed a Class Action Complaint on behalf of herself and on behalf of a nationwide class of individuals who purchased a Scotbilt mobile or manufactured home. *See* Complaint (Dkt. #1) ("Compl.") at ¶1. Plaintiff alleged the following claims against Scotbilt: (I) violation of the of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); (II) violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (Georgia RICO), O.C.G.A. § 16-4-4; (III) Breach of Express Warranty; (IV) Violation of Magnuson-Moss Warranty Act; (V) Violation of the Georgia Uniform Deceptive

Trade Practices Act; (VI) Breach of Contract; (VII) Unjust Enrichment; and (VIII) Misrepresentation by Concealment. Compl. at ¶6.

On May 3, 2010, Defendant moved to dismiss a number of Counts in the Complaint.[1] *See* Defendant's Motion to Dismiss (Dkt. #11). On October 27, 2010, the Court granted in part and denied in part the Defendant's Motion to Dismiss. *See* Order (Dkt. # 27). Specifically, the Court granted Defendant's motion to dismiss Plaintiff's claims for breach of contract (Count VI) but denied Defendant's motion to dismiss all of the other counts in Plaintiff's Complaint. The Court, however, further ordered that Plaintiff must amend the federal and state civil RICO counts (Counts I and II) to comply with Local Rule 9.1. The Court also granted Plaintiff leave to amend the express warranty claim (Count III) to comply with Federal Rule of Civil Procedure 15(a)(2). Lastly, the Court ordered that the Plaintiff join the State Office of Insurance and Safety Fire Commissioner as a defendant in the action pursuant to Federal Rule of Civil Procedure 19.

Plaintiff then filed a First Amended Class Action Complaint ("Am. Compl.") (Dkt. #34) on November 10, 2010. In the Amended Complaint, Plaintiff asserted the following claims: (I) Breach of Express Warranty; (II) Violation of the Magnuson-Moss Warranty Act; (III) Violation of the Georgia Uniform Deceptive Trade Practices Act; (IV) Violation of the Georgia Fair Business Practices Act; (V) Unjust Enrichment; and (VI) Misrepresentation by Concealment).[2] Defendant moved to dismiss the Plaintiff's First Amended Complaint on December 22, 2010. After Defendant filed this motion, the parties unsuccessfully attempted to resolve this action through mediation.

The Court then granted in part and denied in part the Defendants' motion to dismiss. *See*

---

[1] Defendant did not move to dismiss Counts 5, 7 and 8 of the Complaint.

[2] The Plaintiffs did not assert federal or civil RICO claims in the Amended Complaint. In addition, on December 27, 2010, the Court granted Plaintiff's motion for leave to add an additional claim in the amended complaint under the Georgia Fair Business Practices Act.

Order (Dtk. #77). The Court dismissed Plaintiff's breach of express warranty and Magnuson-Moss Warranty Act claims. The Court denied the motion to dismiss the remaining claims but ordered that the Plaintiff's were permitted to amend the complaint to fully allege facts relating to the timeliness of the claims.

Plaintiff then filed the Second Amended Class Action Complaint ("2d Am. Compl.") (Dkt.# 78) on September 9, 2011. Plaintiff asserted the following claims: (I) Violation of the Georgia Uniform Deceptive Trade Practices Act; (II) Violation of the Georgia Fair Business Practices Act; (III) Unjust Enrichment; and (IV) Misrepresentation by Concealment. In the Complaint, the Plaintiffs also alleged additional facts relating to tolling of the relevant statutes of limitation. 2d Am. Compl. at ¶¶ 37-44.

On October 7, 2011, the Defendants' filed a motion to dismiss the Second Amended Class Action Complaint. (Dkt. # 83).

## **FACTUAL BACKGROUND**

Lewis's claims arise out of Scotbilt's uniform failure to provide purchasers of its manufactured homes with the amount of attic insulation that Scotbilt represented would be installed in the attic. 2d Am. Compl. ¶¶ 1-6. When a consumer purchases a Scotbilt manufactured home, Scotbilt is required by federal law to provide these purchasers with information that discloses the type, thickness and R-Value[3] of insulation that is installed in the attic of the home. 2d Am. Compl. ¶¶ 15-17. As part of its fraudulent conduct, Scotbilt systematically represents to its consumers through these required disclosures that the insulation installed in its manufactured homes is installed to a certain R-Value when, in fact, the actual R-Value is less than what Scotbilt represents and promises. 2d Am. Compl. ¶ 18.

---

[3] R-Value indicates insulation's resistance to heat flow. The higher the R-Value, the greater the insulating effectiveness. 2d Am. Compl. at ¶ 20.

In every home Scotbilt manufactured, Scotbilt systematically and uniformly failed to install insulation in the attic cavities to the R-Value represented to the purchasers. 2d Am. Compl. ¶ 21. Specifically, Scotbilt systematically failed to follow proper installation techniques and/or used improper calculation methods to determine the amount of insulation that would be needed to obtain the insulation depth required to achieve the represented R-Value. *Id.* Because of Scotbilt's uniform and systematic failures, Scotbilt's representations to Lewis and the class members regarding R-Value were false and misleading. 2d Am. Compl. at ¶¶ 25-27.

Plaintiff and Class members must rely on Scotbilt's superior knowledge of technical issues regarding insulation as well as the federally-required R-Value disclosure statements because there is no access to the attic cavity from inside the home. 2d Am. Compl. at ¶ 37. Purchasers of Scotbilt's homes are not given the opportunity to view or inspect the level of insulation in the attic cavities before purchase. *Id.* Scotbilt customers must rely on and trust Scotbilt's disclosures. *Id.*

The roof cavities of Scotbilt's manufactured homes are closed off and can only be accessed and inspected from outside the home by opening roof vents while on the roof and lowering a camera and measuring device into the roof vent. *Id.* Because of the inability of Plaintiff and Class members to inspect the level of insulation of the attic cavities of their homes, they could not have discovered the insulation defect even after purchase of their homes because of the limited access to the attic cavity. 2d Am. Compl. at ¶ 38.

As a result of Scotbilt's illegal practices, Lewis and the class members have been injured in numerous ways including paying too much for their home, increased daily costs of heating and cooling and diminution in the value of their homes. 2d Am. Compl. at ¶ 32.

When Lewis purchased her Scotbilt manufactured home in May 2005, she received an

insulation disclosure form from Scotbilt that represented that the insulation in the attic cavity of her home would have an R-Value of R-21. 2d Am. Compl. at ¶¶ 33-34. At the time it issued her disclosure form, Scotbilt represented that it installed the insulation in the attic cavity of her home to a depth of 5.68 inches. *Id*. The depth of insulation in the attic cavity of Plaintiff's home is significantly less than 5.68 inches. 2d Am. Compl. at ¶ 35.

By representing to Plaintiff and others similarly situated that they were receiving a higher R-value of insulation than what was actually installed, Scotbilt has committed fraud on the Plaintiff and other putative class members. As set forth above, because of Scotbilt's systematic fraudulent conduct, all putative class members would have received similarly fraudulent and misleading Insulation Disclosure Forms and Data Sheets regarding the insulative capacity of their homes.

After Plaintiff Lewis finally discovered the insulation defect in her Scotbilt manufactured home, she gave notice of the defect to Scotbilt by certified letter. 2d Am. Compl. at ¶ 40. The letter was received by Caroline McNease on behalf of Scotbilt on September 20, 2007. *Id*. On April 28, 2008, consistent with the arbitration agreement included in the homeowner's manual provided to Lewis when she purchased the home, Lewis filed an arbitration demand with the American Arbitration Association seeking to arbitrate claims on behalf of herself and on behalf of those similarly situated. 2d Am. Compl. ¶ 41. The arbitration demand contained the same factual allegations set forth in the Second Amended Class Action Complaint and all prior complaints filed by Plaintiff in this action. *Id*.

After the arbitration has been pending for approximately one year and three months[4], Scotbilt and Plaintiff Lewis agreed that the arbitration would be dismissed and the class claims

---

[4] The proceedings in the arbitration during the year and three month period were focused on whether Plaintiff Lewis could assert claims on behalf of a class in the arbitration.

could be pursued in court rather than arbitration. 2d Am. Compl. ¶ 42. The parties' agreement contained a provision tolling the statutes of limitations on Plaintiff Lewis's claims so long at Plaintiff Lewis's complaint was filed within 120 days after the dismissal of the arbitration. 2d Am. Compl. ¶ 43, n. 1.

The arbitration was dismissed on July 15, 2009. 2d Am. Compl. ¶ 42. Plaintiff then filed the initial Complaint in this action on October 27, 2010. 2d Am. Compl. ¶ 44. Because this Complaint was not filed within 120 days after the dismissal of the arbitration, the tolling agreement does not apply and the relevant statutes of limitation for Plaintiff Lewis's claims started to run again after the dismissal of the arbitration. 2d Am. Compl. ¶ 43, n. 1.

## STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. A motion under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). In making this determination, "a court must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 555). Furthermore, the court must construe the complaint in a light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179 (2002).

At the beginning of its motion and in the section addressing the standard of review, Defendant also states that it is moving to dismiss Plaintiff's fraud and fraud-based claims under Rule 9(b) of the Federal Rules of Civil Procedure. *See* Memorandum of Law in Support of Scotbilt's Motion to Dismiss Plaintiff's Second Amended Complaint ("Def's Br.") at pp. 1, 5. (*citing* Rule 9(b)). Rule 9(b) requires that fraud-based claims be pleaded with particularity.

However, Defendant never explains in its brief which of Plaintiff's claim are subject to Rule 9(b), never explains which facts were not pleaded with particularity, and never addresses how Rule 9(b) applies to Plaintiff's allegations at all.[5]  Rather, with respect to Plaintiff's claims that could potentially be subject to the heightened pleading requirements of Rule 9(b), Defendant simply argues that these claims should be dismissed as a matter of law because of statutes of limitation issues and statutory exemptions.  Therefore, any argument relating to Rule 9(b) should be rejected by the Court and Defendant's motion should be construed only under Rule 12(b)(6).

### I.      All of Plaintiffs' Claims Were Timely Filed

The statute of limitation for Plaintiff's unjust enrichment, misrepresentation by concealment and Georgia Uniform Deceptive Trade Practices Act claims is four years.  The statute of limitations for Plaintiff's claim under the Georgia Fair Business Practices Act is two years.  All of Plaintiff's claims were timely filed because the statutes of limitation were tolled during the pendency of the arbitration (from April 28, 2008 to July 15, 2009) and were tolled until Plaintiff discovered the fraud.  Lastly, Plaintiff's claims under the Georgia Fair Business Practices Act, which was first asserted with the Plaintiff's First Amended Class Action Complaint, was timely filed because it relates back to the filing of the original complaint.

### a.    The Law is Clear that Arbitration Tolled Plaintiff's Claims

Contrary to Scotbilt's reasoning, Georgia law does not support that the filing of the prior arbitration in this case would not toll the statute of limitations during the pendency of that arbitration.  Scotbilt attempts to support their reasoning by relying on the holding of *Rakestraw v. Berenson*, 153 Ga. App. 513, 266 S.E.2d 249 (1980).  The *Rakestraw* opinion simply

---

[5] Defendant's reliance on Rule 9(b) is curious because Defendant later claims that "the gravamen of the Complaint is breach of warranty, not fraud."  Defs' Brief at 22.  While Plaintiff disagrees with Defendant's assertion, it cannot argue that Rule 9(b) applies on the one hand, while arguing that Plaintiff's claims are not even fraud based on the other.

addressed a specific statute ("the renewal statute") which was applicable to the facts of that particular case. The renewal statute "comes into play only if the if the case would otherwise be barred by the statute of limitation." *Rakestraw* at 515. For the reasons set forth herein, the Plaintiff's claims in this case are not otherwise barred by the statute of limitations. In addition, the language of the renewal statute provides in pertinent part: "[w]hen any case has been *commenced in either a state or federal court* within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state . . . either within the original period of limitations or within six months after discontinuance or dismissal, whichever is later . . ." (*emphasis added*) OCGA § 9-2-61(a). Due to Scotbilt's arbitration agreement, absent the parties' agreement, this case could not have been commenced in state or federal court. It was only after the parties reached an agreement that the language of the arbitration clause would not apply to Plaintiff's class action claims that the action could be commenced in either state or federal court.

Consistent with the arbitration agreement in the homeowner's manual, Plaintiff filed a Class Action Arbitration before the American Arbitration Association alleging many of the claims included in the most recent complaint based on the same underlying factual allegations included in her letter to Scotbilt and this action. After the class action arbitration was filed Scotbilt took the position that its own arbitration agreement was not enforceable for class claims. The Arbitrator never ruled on whether the arbitration agreement allowed for the arbitration of class claims and Scotbilt ultimately agreed that the class claims should proceed in Court rather than arbitration. Until this agreement was made, Plaintiff could not have brought her claims in court because, under the Arbitration Agreement, she was required to pursue those claims in arbitration and was barred from pursuing those claims in court absent consent from Scotbilt. The

Arbitration was dismissed by the AAA based on the parties' agreement on July 15, 2009. When all this is taken into consideration it becomes evident why the Arbitration was not the equivalent to the filing of a prior suit in state or federal court and *Rakestraw v. Berenson* or the "renewal statute" is not applicable.

Under Georgia law, the statute of limitations was tolled during the pendency of the class action arbitration. See *Butler v. Glen Oak's Turf*, 196 Ga. App. 98, 101 (Ga. Ct. App. 1990) and *Antinoro v. Browner*, 223 Ga. App. 664, 667 (Ga. Ct. App. 1996) (Holding that statute of limitations was tolled while Plaintiff was legally barred from pursing her common law claim due to Administrative Law proceedings) and *Antinoro v. Browner*, 223 Ga. App. 664, 667 (Ga. Ct. App. 1996) (Statute of limitations was tolled from time plaintiff client filed non-binding arbitration against defendant attorney at least until arbitration was concluded.). Thus, Plaintiff's claims were tolled from April 28, 2008 to July, 15, 2009—for approximately one year and three months. Accounting for this time, the statute of limitations has not run on any of the Plaintiff's claims. Despite some of the disagreements on the tolling issue, Scotbilt does agree with the reasoning in *Butler* that tolling was appropriate because the plaintiff was legally barred from pursuing her tort claim. *See* Def's Br. at p. 7.

It is clear that, under Georgia law, the statute of limitations was tolled during the pendency of her class action arbitration. *See Butler v. Glen Oak's Turf*, 196 Ga. App. 98, 101 (Ga. Ct. App. 1990) (Holding that statute of limitations was tolled while Plaintiff was legally barred from pursing her common law claim due to Administrative Law proceedings) and *Antinoro v. Browner*, 223 Ga. App. 664, 667 (Ga. Ct. App. 1996) (Statute of limitation was tolled from time plaintiff client filed non-binding arbitration against defendant attorney at least until arbitration was concluded.). With respect to Defendant's second argument, the question is

whether the tolling of the statute of limitations did not apply because of language in the agreement. The parties did not agree that the statute was tolled "if, and only if," Plaintiff instituted the action within one hundred and twenty days of dismissal of the arbitration. Instead, the parties agreed that it was tolled from the time the arbitration was filed until the time the new case was filed if the case was re-filed within one hundred and twenty days. There was no agreement as to what would occur if the case was not re-filed within one hundred and twenty days. "The courts should hesitate to rewrite private contracts." *Electronic Data Systems Corp. v. Heinemann*, 268 Ga. 755, 757 493 S. E. 2d 132 (Ga. 1997). Where parties do not agree to specific covenants, the courts are "not authorized to rewrite the contract to create such a provision." *Piggly Wiggly Southern, Inc. v. Heard*, 261 Ga. 503, 405 S. E. 2d 478 (1991).

The cases cited by the Defendant involved situations where there was a specific provision that a suit must be brought within a limited period of time provided in the contract. *See e.g. Southern Telecom, Inc. v. Level 3 Communications, L.L.C.*, 295 Ga. App. 268, 272 671 S. E. 2d 283, 287 (Ga. App. 2008) wherein both agreements contacted  identical 12-month limitation periods on claims and provided that failure to assert a claim within such period constituted a waiver of the claim; *Darnell v. Fireman's Fund Ins. Co.*, 115 Ga. App. 367, 154 S.E. 2d 741 (Ga. App. 1967) upholding insurance policy provision that "specifically prescribe[d] a period of twelve months next after inception of the loss within which a suit may be brought under the policy"; *Livaditis v. American Cas. Co. of Reading, PA*, 117 Ga. App. 297, 301, 160 S.E. 2d 449, 452 (Ga. App. 1968) involving the following policy provision: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity …unless commenced within 12 months after inception of the loss."

There was no similar limiting language in the contract between the parties in the case at bar. While the parties specifically agreed that the statute of limitations would be tolled if the case was re-filed within 120 days, there was no agreement as to the implications of not re-filing the case within 120 days. As such, this Court should not rewrite a private contract to create such a provision and should simply look to Georgia law as to the effect of the filing of the class arbitration on the tolling of the statute of limitations. When considering that, it is clear that the Plaintiff's claims were tolled from April 28, 2008 to July, 15, 2009—for approximately one year and three months. Accounting for this time, the statute of limitations has not run on any of the Plaintiff's claims.

### b. Plaintiffs' Claims Were Also Tolled Until She Discovered the Fraud

Defendant argues that Plaintiff's claims accrued on the date of purchase. Def's Br. at 21-25. Defendants are incorrect. Scotbilt's fraud could not have been discovered by Plaintiff Lewis at the time of the purchase due to Defendant's actions in concealing the true level of insulation it installed in her home and in Class members' homes.

In support of its argument, Defendant cites a number of cases addressing the tolling of the statutes of limitations due to fraud. Defendant fails to mention, however, that in the majority of the decisions it cites, the courts were addressing the summary judgment or trial phase rather than the motions to dismiss phase. *See Hamburger v. PFM Capital Mgmt.*, 649 S.E. 2d 779 (Ga. App. 2007) (reviewing order on motion for summary judgment finding that plaintiffs' claims were time barred); *Jim Walter Corp. v. Ward*, 265 S.E. 2d 7, 9 (Ga. 1980) (addressing instruction given to jury on tolling of the statute of limitations); *Shipman v. Horizon Corp.*, 267 S.W. 2d 244 (Ga. 1980 (certiorari review of the judgment of the Georgia Court of Appeals regarding tolling of the statute of limitations where the trial court had instructed the jury as to tolling due to fraud);

*Brooks v. Freeport Kaolin Co.*, 253 Ga. 678, 679 (1985) (granting summary judgment because claims time-barred because fraud could have been discovered within the limitations period); *Wender & Roberts, Inc. v. Wender*, 518 S.W. 2d 154 (Ga. App. 1999) (review of summary judgment ruling).[6]

The only case Defendant cites which addressed the motion to dismiss phase was *Anthony v. American Gen.*, 697 S.E. 2d 166 (Ga. 2010). In *Anthony,* the Court addressed four questions of Georgia law that were certified to the Court by the Eleventh Circuit Court of Appeals. *Id*. at 167-68. The plaintiff's claims in that case were based on notary fees that were charged in excess of the amount allowed by law and the Court dismissed the plaintiff's claims for failure to file within the relevant statute of limitations. *Id*. at 168. The fourth question certified to the Court was whether " … the statute of limitations was tolled on fraud and money had and received claims when notarial fees are collected in excess of, and without providing the required notice of, the statutorily-prescribed maximum notary fee when the contract represents that the fees are 'reasonable and necessary.'" *Id*. at 175. The Court answered that the statute of limitations was not tolled because the plaintiffs "were not prevented from subsequently discovering the impropriety of these actions by simple reference to OCGA § 45-17-11 of the readily-available Georgia Code." *Id*. at 176.

The facts alleged in this case are drastically different from that in *Anthony*. First, in *Anthony*, there was a clearly written statute that would have allowed plaintiffs to discover their claims. Here, the only clearly written material that Plaintiff Lewis and the Class members could

---

[6] Defendant cites the *Wender* case for the proposition that "A Party may fail to exercise due diligence as a matter of law." In addition to the fact that the *Wender* decision addressed whether there was due diligence at the summary judgment stage, the *Wender* case did not even address any issues relating to statutes of limitation and tolling. Rather, this portion of the *Wender* decision relied upon by Defendants is addressing whether the plaintiff in that case, the president of a company and the company itself, justifiable relied on the silence of the defendant in the context of a common law fraud claim. The due diligence requirement of a sophisticated business entity and its officers cannot be compared to that of the consumer that relies on the explicit disclosures of the manufacturer.

rely on were the disclosure cards they were given disclosing the R-value of the insulation in their homes, and this written material was fraudulent in that it misrepresented the amount of insulation that was installed in their homes. Second, while the plaintiffs in *Anthony* could have discovered the fraud by opening a book or reviewing statutes online, discover of the fraud here was nearly impossible. As set forth in the Complaint, to discover the fraud, Plaintiff and Class member would have had to crawl on their roofs, open the enclosed attic cavity, and use a measuring device along with a camera to determine the level of insulation that was in the attic. Even if Plaintiff could have pulled off this feat, she would not have had the highly technical knowledge as to what depth of insulation is required to achieve the R-Value that was disclosed to her.

As the Defendant itself admits, "issues concerning a plaintiff's diligence in discovering fraud and tolling of the statute of limitations usually must be resolved by the trier of fact[.]" *See* Defs' Br. at 24. The facts alleged show that this is not a case where this issue can be decided as a matter of law. Plaintiff has alleged sufficient facts giving rise to a question of fact that is inappropriate for the motion to dismiss stage as to whether Plaintiff's claims were tolled due to the inability to discover the fraud.

Even if resolution of the tolling issue was appropriate at this state, the case law actually supports that tolling is appropriate in this action. When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered the fraud. *Hahne v. Wylly*, 406 S.E. 2d 94 (Ga. App. 1991). Actual fraud, through nondisclosure of a known injury or through acts to conceal the injury, which deters the bringing of the action tolls the running of the statute of limitations until discovery of the fraud. *Miller v. Lomax*, 596 S.E.2d 232 (Ga. App. 2004). In *Miller*, a decedent concealed

the true nature of financial transactions that could have been designed to defraud creditors. In denying summary judgment, the court held that the statute of limitation would not have begun to run until the cause of actions should have been discovered. *Id*. Likewise, the defendant here concealed the true amount of insulation installed within the walls and ceilings of its mobile homes, and thus the statute is tolled until the plaintiff should have discovered such. Defendant argues that Plaintiff's Second Amended Complaint points to no specific actions of Scotbilt that deterred Plaintiff Lewis from bringing this action. As discussed above, Plaintiff's point to a number of actions taken by Scotbilt which kept her from bringing this action. Primarily, Scotbilt issued fraudulent insulation disclosures cards that Lewis and other purchasers like her relied on. In fact, this was the *only* information that Lewis had to inform her of the level of insulation in her attic cavity. Plaintiff alleged that Scotbilt knowingly failed to provide Lewis and other class members with the amount of insulation disclosed to consumers. The courts have applied the tolling principal specifically to the Uniform Deceptive Trade Practices Act, holding that claims were not barred by the four year limitations period which was tolled by the Georgia fraud discovery rule. *Currie v. Cayman Resources Corp.*, 595 F. Supp. 1364 (N.D. Ga. 1984), *modified on other grounds*, 835 F.2d 780 (11th Cir. 1988).

In *Stamschoror v. Allstate Ins. Co.*, 600 S.E.2d 751 (Ga. App. 2004) a claim for personal property damage was found to accrue on the date of the fire which damaged the property, not when the subcontractor negligently installed the wiring in the house which caused the fired. As such, the claim was filed within the limitations period and summary judgment was denied. *Id*. The plaintiff did not have knowledge of the faulty wiring until the fire. Likewise, Plaintiff Lewis did not have knowledge of the latent defect of insufficient insulation when the mobile home was purchased, so the statute does not begin to run until discovery of the defect.

In *GE Life & Annuity Assur. Co. v. Combs*, 191 F. Supp. 2d 1364 (M.D. Ga. 2002) the court held that statute of limitations did not bar a declaratory judgment action where the plaintiff contended there was actual fraud in the procurement of a life insurance policy. The statute of limitations would not have begun to run until the plaintiff discovered that the premiums had been fraudulently raised in contradiction to the terms to which the plaintiff had agreed and paid for, or until the plaintiff could have reasonably discovered the alleged fraud. *Id*. Likewise, the sale of the mobile home in this case was procured by fraudulently misrepresenting the amount of the insulation installed. Therefore, the statute of limitations did not begin to run until the Plaintiff discovered the actual amount of insulation in the home.

Where fraud prevents a plaintiff from discovering a cause of action, the statute will be tolled. *PricewaterhouseCoopers, LLP v. Bassett*, 666 S.E. 2d 271 (Ga. App. 2008). In *Bassett*, a trustee obtained a $10 Million verdict against an accounting firm despite filing more than four years after defendant's alleged fraud. The court held that the evidence authorized the jury to find that the fraud itself prevented the trustees from discovering their cause of action despite reasonable diligence, and therefore, the claim was properly filed within four years after the beginning of the limitation. *Id*. In the case at bar, Defendant's fraud of misrepresenting the amount of insulation in the mobile home, likewise prevented Plaintiff from discovering her cause of action despite reasonable diligence. Therefore, the statute of limitations did not begin to run until she actually discovered the fraud, meaning the allegation was filed within the four year limitation period.

Lastly, Defendant also argues that Plaintiff's claim cannot be tolled based on fraud because this Court already dismissed Plaintiff's breach of contract claim on the basis that Plaintiff failed to allege any fraud by Defendant that kept her from bringing her action. Plaintiff,

however, amended her complaint after that time to specifically allege facts (set forth above in the statement of the facts and in the arguments above) alleging that Defendant's actions did, in fact, keep her from discovering the fraud.

### c. Plaintiff's Fair Business Practice Act Claim is timely filed because it relates back to the time of filing the original complaint.

Plaintiff asserted a claim under the Georgia Fair Business Practice Act in her first amended complaint. Defendant argues that the amended complaint was filed outside of the two year statute of limitation period, but does not contest that the original complaint was timely filed.

With regards to amended pleadings, whenever a claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading. O.C.G.A. §9-11-15 (c).[7] The provision of relating back should be liberally construed to affect its purpose of ameliorating the impact of the statute of limitation. *Morris v. Chewning*, 201 Ga. App. At 659. The strict rule that an amendment asserting a new cause of action will not relate back to the time of filing of the original complaint is no longer applicable, unless the causes of action are not only different but arise out of wholly different facts. *Sam Finley, Inc. v. Interstate Fire Ins. Co.*, S.E. 2d 358 (Ga. App. 1975).

In this case, plaintiff did not allege any new or different facts in adding her Fair Business Practice Act Claim. The claim arises out of the exact same set of facts and circumstances originally alleged. Therefore, the amended complaint relates back to the filing of the original complaint and is timely filed.

---

[7] In *Saxon v. ACF Industries, Inc.*, 254 F.3d 959, 963 (11th Cir. 2001), the Eleventh Circuit held that state law relation-back rules, not federal, would apply "to amendments in a diversity case where state law provides the applicable statute of limitations." Therefore, Georgia relation-back rules, set forth in O.C.G.A. §9-11-15 (c) apply to Plaintiff's Fair Business Practices Act Claim as opposed to the federal relation-back rules.

II.   **Georgia's Uniform Deceptive Trade Practices Act and Fair Business Practices Act apply to Mobile Home Manufacturing Industry.**

There is no statutory or case law exempting the mobile home manufacturing industry from the provisions of the Deceptive Trade Practices and Fair Business Practices Acts (hereinafter collectively referred to as "the Acts"). Defendant argues that it should be exempt under the reasoning applied in *Northeast Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 676 S.E. 2d 428 (Ga. 2009) which exempts the insurance industry from the Acts because insurance transactions are instead governed by the Georgia Insurance Code. *Id.* Defendant erroneously contends that, because it is regulated by the Georgia Office of Insurance and Safety Fire Commissioner, it is also exempt under the Acts. However, unlike the insurance industry, no separate, specific code governs the manufacture of mobile homes. Furthermore, the Georgia Department of Insurance exclusively deals with the regulation of the insurance industry, whereas the state fire commissioner has a wide range of responsibilities from building constructions of all types to fire prevention, protection, and investigation.

If the Court were to hold, as Defendant suggests, that any regulated activity is exempt from the Acts, then the Uniform Deceptive Trade Practices Act and the Fair Business Practices Act would be rendered useless. Nearly all aspects of commerce are subject to some form of governmental or administrative regulation. The mobile home manufacturing industry is more analogous, and arguably even less regulated, than many industries to which the courts have applied the acts.

The poultry industry is not exempt from the Deceptive Trade Practices Act. *Gold Kist, Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291 (N.D. Ga. 1989). In *Gold Kist*, a corporate poultry producer was found to have engaged in deceptive trade practices by adopting and using an existing trademark on its products. *Id.* Trademark issues are regulated by a numerous patent

statutes.  Furthermore, the poultry industry is much more highly regulated than the mobile home manufacturing issue.  They are subject to the United States Food and Drug Administration, United States and Georgia Department of Agriculture, and various EPA regulations.  If an industry subject to both numerous food and agriculture regulations at both the state and federal level is not exempt as a heavily regulated industry, then it stands to reason that neither is the mobile home manufacturing industry.

The wireless communications industry is also subject to the deceptive trade practices act.  In *Tracfone Wireless, Inc. v. Zip Wireless Prods.*, 716 F. Supp. 2d 1275 (N.D. Ga. 2010) the court held that a plaintiff's complaint alleging that defendant was buying phones in bulk and altering them to circumvent prepaid airtime to resell under the holder's marks, properly stated a claim for unfair competition and deceptive trade practices.  *Id*.  The cell phone industry is also much more heavily regulated than the mobile home manufacturing industry.  The wireless industry is subject to FCC and FAA regulations, as well as the Georgia Public Service Commission.  Again, if the wireless industry is not considered so heavily regulated as to be exempt, neither is the mobile home manufacturing industry.

The home construction industry is subject to the Georgia Fair Business Practices Act O.C.G.A. §10-1-390 *et seq*.  *Bowen & Bowen Constr. Co. v. Fowler*, 593 S.E. 2d 668 (Ga. App. 2004).  In *Bowen*, the court upheld an award in a homeowner's suit against a construction company for failing to remedy a defect in the homeowner's house, finding that treble damages could be awarded under the Georgia Fair Business Practices Act.  *Id*.  The home construction industry is subject to mostly the same regulations as the mobile home manufacturing industry, including oversight from the Georgia Fire Commissioner.  The mobile home manufacturing industry is much more analogous to the home building industry than to insurance, and as such, is

subject to the provisions of the Georgia Fair Business Practices Act and the Uniform Deceptive Trade Practices Act.

**III.   Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed**

Plaintiff's Unjust Enrichment claim is also in the alternative to her Breach of Contract claim. Should the Court find that the Plaintiff has stated a valid claim for breach of contract, Plaintiff is aware that her unjust enrichment claim cannot be maintained should her Breach of Contract claim be successful. *Nat'l Elite Transp. LLC. v. Angel Foor Ministries, Inc.*, No. 11-CV-41, 2011 U.S. Dist. LEXIS 74528, at *14-15 (M.D. Ga. July 12, 2011). As Defendants will almost certainly challenge the validity of Plaintiff's Contract claim, there is no basis for dismissing the Unjust Enrichment claims, on those grounds, as this time.

<u>**CONCLUSION**</u>

Wherefore, premises considered, Plaintiff respectfully requests that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint be DENIED.

Respectfully Submitted this the 14th day of November, 2011.

*/s/ Christina D. Crow*
CHRISTINA D. CROW
Attorney for Plaintiff

OF COUNSEL:

Christina D. Crow
**JINKS, CROW & DICKSON, P.C.**
P. O. Box 350
Union Springs, Alabama 36089
(334) 738-4225
(334) 738-4229 *Fax*
ljinks@jinkslaw.com
ccrow@jinkslaw.com
ndickson@jinkslaw.com

Tony Center,
LAW OFFICE OF TONY CENTER, P.C.

313 W. York Street
Savannah, GA 31401
tonycenter@comcast.net

Joe R. Whatley, Jr.
Edith M. Kallas
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, New York, 10036
(212) 447-7070
(212) 447-7077 *Fax*
jwhatley@wdklaw.com
ekallas@wdklaw.com


W. Tucker Brown
Sara C. Hacker
**WHATLEY, DRAKE & KALLAS, LLC**
1000 Park Place Towers
2001 Park Place North
Birmingham, AL 35203
(205) 328-9576
(205) 328-9669 *Fax*
tbrown@wdklaw.com
shacker@wdklaw.com


David Selby II
**KEE & SELBY LLP**
1900 International Park
Suite 220
Birmingham, Alabama 35243
(205) 968-9906 Direct
(205) 968-9909 Fax
ds@keeselby.com


## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, I have this date served a true and correct copy of the foregoing document via the Court's CM/ECF electronic filing system upon the following counsel of record:

Wallace E. Harrell, Esq.
James L. Roberts, IV, Esq.
Jeffrey S. Ward, Esq.

Stephen V. Kinney, Esq.
Jason M. Tate, Esq.
GILBERT HARRELL SUMERFORD &
  MARTIN, PC
777 Gloucester Street
Post Office Box 190
Brunswick Georgia 31520

Neal L. Conner, Jr., Esq.
CONNER AND JACKSON, PC
Post Office Box 1278
Waycross, Georgia 31502

 /s/Christina D. Crow
OF COUNSEL