UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| SHEILA LEWIS, Individually and on behalf of a class of Persons similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No.: CV-510-016 |
| v. ) ) | |
| SCOTBILT HOMES, INC. ) ) | |
| Defendant. ) | |

**DEFENDANT SCOTBILT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

DEFENDANT SCOTBILT HOMES, INC. (hereinafter "ScotBilt") replies to Plaintiff's Response to ScotBilt's Motion to Dismiss Plaintiff's Second Amended Complaint as follows:

**INTRODUCTION**

Now before the Court is ScotBilt's third motion to dismiss in this case. Plaintiff has been granted leave to amend her complaint twice, yet continues to fail to allege the necessary elements of her claims. Plaintiff routinely goes outside of her pleadings in her response to Defendant's Motion to Dismiss. This is particularly true with respect to her arguments that the statutes of limitation for her claims were tolled during the pendency of the prior Arbitration between the parties and due to fraudulent conduct on behalf of ScotBilt. It is clear that Defendant's Motion to Dismiss is to be based upon the sufficiency of Plaintiff's Complaint and not supplemental facts alleged in response to a Motion to Dismiss.[1]

---

[1] To the extent Plaintiff is attempting to amend her Complaint through their Response, federal courts consistently hold that a plaintiff cannot amend his complaint through new allegations in a brief. *See, e.g., Tie Qian v. Sec'y, Dept. of Veterans Affairs*, 2011 WL 2496287, at *1 (11th Cir. June 23, 2011) ("[a] plaintiff may not amend his complaint through argument in a brief . . . ."); *Frederico v. Home Depot,* 507 F.3d 188, 201-02 (3d Cir. 2007) ("It is axiomatic that the

To the contrary, where Plaintiff's allegations are defective on their face, they are due to be dismissed. Plaintiff cannot rely on allegations asserted in response to a Motion to Dismiss to save her insufficient pleadings.

**ARGUMENT AND CITATION OF AUTHORITY**

**I.**

**ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED**

As set forth fully in ScotBilt's Motion to Dismiss, the statute of limitations for each of Plaintiff's claims has expired. [*See* ECF 82 at 15, 17, 18, 21]. Plaintiff erroneously argues that: 1) the filing of the prior Arbitration in this case tolled the statutes of limitation during the pendency of the Arbitration; and 2) Plaintiff's claims were also tolled until she discovered fraud perpetrated by Defendants. [ECF 86 at 7, 11]. Both of these arguments fail as a matter of law and Plaintiff's Second Amended Complaint should be dismissed.

**A.    The Arbitration has no tolling effect on Plaintiff's claims**

   **1.    No tolling applies under the Binding Agreement as the instant action was not initiated within 120 days of dismissal of the AAA Arbitration**

Plaintiff incorrectly contends the statutes of limitation for her claims were tolled during the pendency of the prior Arbitration. This contention is contrary to the plain language of the binding agreement entered into by the Parties upon dismissal of the prior Arbitration (hereinafter "Binding Agreement") and contrary to Georgia law. Plaintiff failed to comply with the terms as

---

complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted); *Bankers Ins. Co. v. DLJ Mortgage Capital, Inc.*, 2011 WL 2470615, at *2 (M.D. Fla. June 21, 2011) (holding that plaintiff could not amend her complaint in a brief opposing a motion to dismiss, and dismissing that count of the complaint); *Walker v. SunTrust Bank of Thomasville, GA*, 2008 WL 4004714, at *3, n.1 (M.D. Ga. Aug. 26, 2008) (granting motion to dismiss despite plaintiff trying to save claims by making additional allegations in brief in opposition to motion).

clearly set forth in the Binding Agreement and now attempts to save her claims by asserting a strained reading of the Binding Agreement unsupported by its plain language and manufacturing arguments based on case law which clearly does not support her position.

Plaintiff did not file her original Complaint until February 3, 2010 [ECF 1], well after the expiration of the one hundred and twenty (120) day period as provided in the Binding Agreement. Under the plain language of the Binding Agreement, Plaintiff and Defendant agreed to a tolling of the statutes of limitation "from the date of the filing of the original Arbitration demand until such time as [Plaintiff] re-files her case ***provided*** such re-filling occurs within 120 days of the dismissal of the AAA Arbitration." [*See* ECF 75-1]. Based on Plaintiff's allegation that the AAA Arbitration was dismissed on July 15, 2009, Plaintiff was required to initiate suit on or before November 13, 2009. She did not. [ECF 1].

Remarkably, Plaintiff argues that the provision above simply means that the statutes of limitation would be tolled if the case were re-filed within the 120 day period, and there was no agreement as to what would occur if the case were filed after the expiration of the 120 day period. Plaintiff's contention is nonsensical in light of the circumstances. If such were the case, the entire tolling provision would be rendered superfluous. *See Landmark American Ins. Co. v. Khan*, 307 Ga. App. 609, 612, 705 S.E.2d 707, 710 (2011) (it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless). As set forth fully in Defendant's Motion to Dismiss, Parties may contractually alter statutes of limitation or tolling periods under Georgia law. [ECF 82 at 8-9]. This is exactly what the parties did in this case. Having failed to re-file suit within the agreed upon 120 day period following dismissal of the AAA Arbitration, no tolling applies.

Even if the Court were to find merit in Plaintiff's contention there was no agreement as to what would occur if suit were re-filed after the 120 day period, Georgia law clearly does not support the tolling of the statutes of limitation during the pendency of a binding arbitration

Contrary to Plaintiff's contention, the holding in *Rakestraw v. Berenson*, 153 Ga. App. 513, 266 S.E.2d 249 (1980), controls and sets forth the generally recognized law in Georgia that the filing of a prior action alleging the same claims between the same parties does not toll the statute of limitations during the pendency of the original action. *See also McCabe v. Garrett*, 211 Ga. App. 848, 848, 440 S.E.2d 734, 735 (1994) ("The rule that the statute of limitations begins to run from the time when a complete cause of action accrues is not affected by the fact that the result of a pending lawsuit may largely affect a party's rights"). Plaintiff contends that the prior Arbitration should be treated differently than a prior case commenced in a court of law. [ECF 86 at 7]. This is simply incorrect and wholly unsupported by Georgia case law.

Plaintiff argues in her response that she was barred from pursuing her claims in this Court until such time as the parties executed the Binding Agreement and agreed to dismiss the Arbitration based on an arbitration agreement in her homeowner's manual. [*Id.* at 8]. Nowhere in Plaintiff's Second Amended Complaint do any allegations exist concerning the existence of a binding, enforceable arbitration agreement or that binding arbitration was Plaintiff's exclusive remedy. Moreover, the existence of such allegations would not cure Plaintiff's flawed theory. Even assuming the existence of a mandatory and enforceable arbitration agreement, Plaintiff could have without question initiated suit in this Court in the first instance. Had ScotBilt failed to raise the defense of a binding arbitration agreement, its right to insist upon arbitration would have been waived. *See Tillman Group, Inc. v. Keith*, 201 Ga. App. 680, 411 S.E.2d 794, 796 (1991) (holding defendant waived right to enforce arbitration clause where it litigated claim and

4

failed to move to compel arbitration). Had Plaintiff initiated suit in this Court instead of filing the AAA Arbitration, ScotBilt's remedy, if it believed an enforceable arbitration clause existed, would have been to move to stay the pending suit in this Court and move to compel arbitration. *See id.* (holding that proper remedy to compel arbitration is to move to stay action pending arbitration rather than moving for summary judgment).

Plaintiff misconstrues the limited holdings of *Butler v. Glen Oaks Turf, Inc.,* 196 Ga. App. 98, 395 S.E.2d 277 (1990) and *Antinoro v. Browner*, 223 Ga. App. 664, 478 S.E.2d 392 (1997). These cases represent narrow exceptions to the general rule set forth in *Rakestraw*. In *Butler*, the Georgia Court of Appeals held the statute of limitations was tolled from the date an Administrative Law Judge (ALJ) found the plaintiff was covered under the Workers' Compensation Act until the time this decision was reversed by the Georgia Court of Appeals. 196 Ga. App. at 100. Notably, the court declined to toll the statute of limitations from the filing of plaintiff's administrative action, but rather only from the time the ALJ ruled she was covered by the act. Thus, until such time as the ruling of the ALJ was reversed, the plaintiff was legally precluded from pursuing a tort action. In this action, at no time was an erroneous ruling in effect declaring Plaintiff's exclusive remedy to be arbitration. Moreover, as set forth above, Plaintiff could have chosen to initiate an action in this Court rather than the AAA Arbitration.

<u>Antinoro</u> is based on a policy determination by the court concerning a voluntary Arbitration of Fee Disputes Program (hereinafter "AFD") operated by the State Bar of Georgia. 223 Ga. App. at 664. Under this voluntary program, a responding lawyer does not have to agree to be bound by the result of the arbitration. *Id.* at 666. In such a case, the State bar will provide the petitioner legal counsel without cost in any litigation necessary to adjust the fee in accordance with the award. *Id.* "In an effort to… encourage use of the program", the court held

5

that that the statute of limitations for bringing a claim to dispute a legal fee was tolled during the pendency of the non-binding arbitration proceedings. *Id.* at 667. To hold otherwise would have created a disincentive for the use of the program by clients. Under the AFD program, if a lawyer chooses not to be bound by the arbitration, subsequent litigation will be necessary to enforce any award obtained pursuant to the non-binding arbitration. It would be defeat the program's purpose to allow an individual to elect the use of this program to resolve a fee dispute, only to bar any subsequent claim necessary to enforce an award obtained due to the expiration of the statute of limitations during the time the claim was pending. In contrast, had the AAA Arbitration proceeded to a conclusion the result would have been binding upon the parties. Accordingly, no such policy considerations or potential for unfairness and abuse is present in the instant action.

For these reasons, the AAA Arbitration has no tolling effect on the statute of limitations for Plaintiff's claims and each of Plaintiff's remaining claims are barred by the applicable statute of limitations.

**B.** **Plaintiff's Second Amended Complaint contains no allegations sufficient to warrant the tolling of any statute of limitations based on fraud**

In order to establish fraud sufficient to toll the statute of limitations, a plaintiff must plead and prove that "the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation." *PricewaterhouseCoopers, LLP v. Bassett*, 293 Ga. App. 274, 278, 666 S.E.2d 721 (2008). This

is true regardless of whether the Court deems fraud to be the gravamen[2] of the complaint. *See Jim Walter Corp. V. Ward*, 245 Ga. 355, 357, 265 S.E.2d 7, 9 (1980) (stating reasonable diligence as an element Plaintiff must show in order to toll statutes of limitation where fraud is not gravamen of complaint); *Anthony v. American General Financial Services, Inc.*, 287 Ga. 448, 697 S.E.2d 166 (2010) (addressing reasonable diligence as an element of Plaintiff's tolling claim where actual fraud is gravamen of complaint). Simply put, Plaintiff's Second Amended Complaint is devoid of any allegations demonstrating the exercise of reasonable diligence by the Plaintiff to discover her alleged cause of action or any specific action by ScotBilt after Plaintiff's purchase.

Georgia Courts have routinely held that a plaintiff failed to exercise ordinary diligence in discovering alleged fraud as a matter of law where the facts demonstrate a lack of inquiry on the part of the plaintiff. *See Anthony*, 287 Ga. 448 (finding as a matter of law that Plaintiff could have discovered fraud by reference to applicable Georgia law); *Bowen & Bowen, Inc. v. McCoy-Gibbons, Inc.,* 185 Ga. App. 298, 363 S.E.2d 827 (1987) (finding as a matter of law that plaintiff in the exercise of reasonable diligence could have become aware of alleged fraud as to Defendant's credentials by inquiry to appropriate state agency); *Bauer v. Weeks,* 267 Ga App. 617, 600 S.E.2d 700 (2004) (finding a failure to exercise due diligence as a matter of law where plaintiff knew "there was something amiss" with the integrity of his exterior stucco, yet failed to

---

[2] ScotBilt contends that the gravamen of Plaintiff's Second Amended Complaint is breach of warranty. Any allegations of fraud are merely tangential to the underlying substantive claims that the product delivered by ScotBilt was not in the condition represented and warranted. As such the statute of limitations is only tolled upon a showing of a separate independent and actual fraud involving moral turpitude which deters a plaintiff from filing suit. *Hamburger v. PFM Capital Management, Inc*., 286 Ga. App. 382, 649 S.E.2d 779 (2007). As set forth fully in Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff utterly fails to establish these elements.

investigate); *Fuller v. Dreischarf*, 238 Ga. App. 18, 517 S.E.2d 89 (finding as a matter of law plaintiff failed to exercise ordinary diligence where he uncritically accepted the statements of defendant regarding certain investments without making inquiry to a licensed stock broker for verification). Therefore, Plaintiff has not plead facts sufficient to warrant tolling of the statutes of limitation on the basis of fraud and her Second Amended Complaint should be dismissed as all remaining claims are barred by the applicable statutes of limitation.

Plaintiff argues that ScotBilt's fraud could not have been discovered by the exercise of ordinary diligence because it was impossible for Plaintiff to examine the insulation contained in her home's attic cavity. [*See* ECF 86 at 13; ECF 78 at ¶¶ 37-39]. This Court already rejected Plaintiff's impossibility arguments as a matter of law when it dismissed Plaintiff's breach of warranty claims. [*See* ECF 77 at 5-9]. This Court found that Plaintiff did not make any claim that she "attempted to discover the alleged defect in her home's insulation, either by examining the insulation herself or by hiring an inspector to do so" nor did Plaintiff claim "that there was any change in condition rendering discovery of the alleged defect impossible during the reporting period but possible when she actually provided notice." [*Id.* at 8]. Although given the opportunity to amend her Complaint, Plaintiff fails to allege that she "attempted to discover the alleged defect in her home's insulation either by examining the insulation herself or by hiring an inspector to do so" prior to the ultimate discovery of the alleged defective condition.

Moreover, as noted by the Court in its Order dismissing Plaintiff's breach of contract claim, review of Plaintiff's Second Amended Complaint illustrates Plaintiff's failure to "point to any specific actions that Defendant took to deter her from bringing her claim...in the time allowed by Georgia law, but instead has simply set forth conclusory allegations of fraudulent concealment without particularity." [ECF 27 at 22]. The allegations on which Plaintiff's tolling

based on fraud are based are set forth in Paragraphs 37-42 and 71-75. None of these allegations allege specific actions taken by ScotBilt which prevented Plaintiff from discovering the alleged fraud after the purchase. Accordingly, the allegations are insufficient under Rule 9(b) and fail to allege a plausible basis for tolling of the statute of limitations based on fraud.

Contrary to Plaintiff's contention, the court's dismissal of the claims at issue in *Anthony* at the 12(b)(6) stage demand the dismissal of Plaintiff's claims in the instant action. Plaintiff contends that she did not possess the requisite technical knowledge to determine whether the insulation was adequate. [ECF 86 at 13]. However, locating the correct section of the Georgia code is a task for which most individuals turn to lawyers because of their specialized knowledge, yet the Georgia Supreme Court did not consider this a relevant factor. In fact, the instant facts present an even more compelling case for finding the lack of ordinary diligence as a matter of law. Unlike the plaintiffs in *Anthony* who may or may not have had ready access to the Georgia Code containing the key to discovery of the alleged fraud, Plaintiff at all times could have simply checked the insulation in the attic above her head or hired someone to check it for her. As in *Anthony*, the key point is that neither alleged any effort to do so thereby demanding a holding of lack of ordinary diligence as a matter of law.

Further, the lack of inquiry by Plaintiff apparent on the face of Plaintiff's Complaint is similar to that found by the Georgia Court of Appeals in *McCoy-Gibbons*. In that case the plaintiff sued an individual hired to perform soil testing after the expiration of the applicable statute of limitations, arguing that the individual's fraud in representing himself as a licensed professional kept them from discovering they had a cause of action. 185 Ga. App. at 298. Plaintiff asserted the statute of limitations did not begin to run until plaintiff sought a second opinion which revealed the individual deviated from the professional standard, which was the

plaintiff's first notice that the individual was not a licensed professional. *Id*. at 300-301. The court held that nothing prevented plaintiff prior to or following the time of contracting from contacting the appropriate state agency and inquiring as to the individual's credentials. *Id.* at 301. Similarly, nothing prevented Plaintiff prior to or following the time of purchasing from undertaking the steps necessary to inspect the insulation in her home and making an inquiry as to its sufficiency. As in *McCoy-Gibbons*, here there was no change in circumstance making Plaintiff's discovery of the alleged defect possible when it had previously been impossible. Rather, like the plaintiff in *McCoy-Gibbons*, Plaintiff possessed everything necessary to discover the alleged fraud from the date of delivery of her home.

Significantly, the plaintiffs in *Anthony* and *McCoy-Gibbons* were found to have failed to exercise ordinary diligence, even though there was arguably nothing which could have provided notice to those plaintiffs that an inquiry should be undertaken. However, Plaintiff alleges she suffered substantial loss in increased daily cost of heating and cooling her home since the date of purchase. [ECF 78 at 8]. Accordingly, from the outset Plaintiff was on notice of the alleged "injury" of which she complains but fails to allege any actions to discover its cause. *See e.g. Bauer,* 267 Ga App. at 619 (holding failure to exercise due diligence as a matter of law where plaintiff knew "there was something amiss" with the integrity of his exterior stucco, yet failed to investigate).

Finally, the cases cited by Plaintiff are not relevant to the Court's determination of whether Plaintiff could have discovered ScotBilt's alleged fraud through the exercise of ordinary diligence. First, Plaintiff cites *Stamschoror v. Allstate Ins. Co.,* 267 Ga. App. 692, 600 S.E.2d 751 (2004). *Stamschoror* concerned a negligence action against an electrician for faulty wiring which caused a fire. There was no issue of fraud. *Id.* Further, the Court's determination

of the accrual of the cause of action was based on the date the harm occurred. *Id.* at 693, 753. The harms as alleged by Plaintiff began occurring on the date of purchase and therefore her cause of action accrued on that date unless tolled by fraud. Plaintiff also cites *GE Life & Annuity Assur. Co. v. Combs*, 191 F. Supp. 2d 1364, 1370 (M.D. Ga. 2002), which concerned fraudulent misrepresentations about insurance policy premiums in which the Court determined that Plaintiff "could not have discovered the alleged fraud until some time" after receipt of a letter from the insurer several years after the purchase of the policy. Accordingly, *Combs* is inapposite as discovery of the alleged fraud by plaintiff required receipt of additional information. Here, Plaintiff has not alleged the occurrence of an event or change in circumstances that allowed her to discover the alleged defect. Rather, the only change in condition between Plaintiff's purchase of her home and the ultimate discovery of the alleged "defect" was Plaintiff actually making inquiry. "[W]here diligent inspection would have revealed the defect, there cannot be reasonable reliance." *Middleton v. Troy Young Realty, Inc.*, 357 Ga. App. 771, 572 S.E.2d 334 (2002).

**C.** **It is irrelevant whether Plaintiff's FBPA relates back to the time of filing of the original complaint.**

Plaintiff's claim under the Fair Business Practice Act has a two year statute of limitations. O.C.G.A. § 10-1-401(a)(1). Plaintiff argues her claim relates back to the filing of her original Complaint. [ECF 86 at 16]. This is entirely irrelevant. Plaintiff makes an inexplicable statement that Defendant "does not contest that the original complaint was timely filed." *Id.* As evident from the totality of Defendant's pleadings in this case, Defendant contends that no claims were timely filed. Plaintiff alleges she provided notice of the alleged insulation defect to ScotBilt by certified letter, the return receipt of which was dated September 20, 2007. [ECF 78 at ¶ 40]. At the very latest, the statute of limitations for Plaintiff's claims began to run on that

date.[3] Thus the statute of limitations for Plaintiff's claim under the Fair Business Practice Act expired on September 20, 2009. Plaintiff did not file her original Complaint until February 3, 2010. [ECF 1]. Thus, Plaintiff's Second Amended Complaint shows on its face that her FBPA claim is barred by Georgia law.

## II.

**THE GEORGIA FAIR BUSINESS PRACTICES ACT AND THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT DO NOT APPLY TO PLAINTIFF'S CLAIMS AS A MATTER OF LAW (PLAINTIFF'S SECOND AMENDED COMPLAINT COUNTS I AND II)**

Plaintiff does not take issue with the conclusion that the Fair Business Practices Act (hereinafter the "FBPA") and Uniform Deceptive Trade Practices Act (hereinafter the "UDTPA") were intended to have a restricted application only to the **unregulated** consumer marketplace but instead, argues that the manufacture and sale of manufactured homes is not a regulated industry. To make her argument plausible, Plaintiff disregards, and in some cases misrepresents the extensive regulations enacted and enforced by both the State of Georgia and the Federal government as to create the impression that the process of manufacturing and selling a manufactured home is subject to no more regulation than any other industry.

Plaintiff incorrectly represents to the Court that "unlike the insurance industry [which has been exempted from the FBPA and the UDTPA as a result of extensive state regulation], no separate, specific code governs the manufacture of mobile homes." [ECF 86 at 14]. The manufacture of mobile homes, however, is specifically and extensively governed by both

---

[3] Defendant contends that the statute of limitations for all Plaintiff's claims accrued on the date of Plaintiff's purchase. However, even assuming Plaintiff's causes of action accrued on the date of the return receipt of Plaintiff's letter, which is the latest possible time the statute of limitations could have begun to run, Plaintiff's claim under the FBPA is still barred by the two year statute of limitations.

Georgia law at O.C.G.A. § 8-2-130 *et seq.* ("The Uniform Standards Code for Manufactured Homes Act") and Ga. Comp. R. & Regs. 120-3-7 *et seq.* ("Rules and Regulations for Manufactured Homes"), as well as Federal law at 42 U.S.C. § 5401 *et seq.* ("The National Manufactured Housing Construction and Safety Standards of 1974") and 24 CFR § 3280 *et seq.* ("Manufactured Home Construction and Safety Standards").

To be certain, the manufacture and sale of manufactured homes is subject to more regulation than most industries.[4] Plaintiff's argument to the contrary is unpersuasive. Most industries are not subject to the "separate, specific code" setting forth expensive regulations under which ScotBilt and other mobile home manufacturers must operate and which Plaintiff attempts to ignore. The FBPA and UDTPA apply to such unregulated industries. The FBPA and UDTPA, by their plain language, and the cases interpreting their scope, however, make clear that the FBPA and the UDTPA were never intended to apply where regulatory agencies provide

---

[4] Plaintiff attempts to argue that the manufacture and sale of manufactured homes are not excluded from the FBPA and the UDTPA because the poultry industry, the wireless communication industry, and the home construction industry are not excluded. Unlike ScotBilt who has undertaken to identify the extensive and specific statutory framework which excludes this industry from the FBPA and UDTPA, Plaintiff has provided no citations or other basis to support her self-serving conclusive statements. Plaintiff completely fails to identify the regulations governing the internal policing of deceptive trade practices – which constitute the primary basis for an exclusion from the FBPA and UDTPA. Furthermore, the cases cited by Plaintiff do not address the issue before this Court, that is, whether the extensive internal regulations of the poultry, wireless communication, or home construction industries exempt these industries from the FBPA and UDTPA. Plaintiff cites these cases for the proposition that simply because the FBPA and/or UDTPA were applied, then these industries must not be exempt. However, the cases do not indicate that the issue regarding the application of either the FBPA or the UDPTA to these industries was raised. Moreover, none of the cases cited by Plaintiff involve claims involving the very conduct regulated as in *Northeast Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.,* 297 Ga. App 28, 676 S.E.2d 428 (2009) and the instant action. *See Goldkist v. Conagra, Inc.*, 708 F.Supp. 1291 (N.D. Ga. 1989) (addressing trademark infringement claim); *Tracfone Wireless v. Zip Wireless Products, Inc.,* 716 F.Supp.2d 1275 (2010) (addressing trademark infringement claim); *Bowen & Bowen Construction Co. v. Fowler*, 265 Ga. App. 274, 593 S.E.2d 668 (2004) (addressing fraud action for failure to correct alleged construction defect after promising to correct after completion).

protection or the ability to protect against the known evils in the area of the agency's expertise, such as in the case of the mobile home manufacturing industry. *See* O.C.G.A. § 10-1-396(1) (stating that the FBPA does not apply to "... [a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States") *and* O.C.G.A. § 10-1-374(a)(1) (stating that the UDTPA does not apply to "[c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local government agency"). *See also, e.g., Northeast Georgia Cancer Care, LLC*, 297 Ga. App. 28 (excluding the insurance industry from the UDTPA because it contains its own statutory scheme that regulates unfair trade practices within the insurance industry and gives the Insurance Commissioner the power to investigate and act upon such claims against an insurer); *Ferguson v. United Ins. Co.*, 163 Ga. App. 282, 283, 293 S.E.2d 736, 737 (1982) (excluding the insurance industry from the sufficiently analogous Georgia Fair Business Practices Act "…since the Insurance Code regulates unfair trade practices within the insurance industry…").

The state and federal regulations cited herein regulate the deceptive trade practices within the manufactured home industry. *See* O.C.G.A § 8-2-139 and § 8-2-141 and § 8-2-143 and Ga. Comp. R. & Regs. 120-3-7-19 and 2 U.S.C. §§ 5409-5411. Perhaps more importantly, the regulations cited herein police the very issues of which Plaintiff complains. *See* 24 CFR §§ 3280.501-3280.511 (Construction Standards concerning "Thermal Protection" which governs the calculation and installation of insulation); *accord* O.C.G.A. § 8-2-132 (expressly adopting the federal Construction Standards to apply to manufacturers here in Georgia, such as ScotBilt). Violations of these regulations, including the construction standards established for the calculation and installation of insulation, are internally regulated and enforced by the Department

of Housing and Urban Development and the Georgia Office of Insurance and Fire Safety. *Compare* 24 CFR §§ 3280.501-3280.511 *with* 42 U.S.C. § 5409. In the event a manufacturer violates this provision, then it is subject to civil and criminal penalties from the United States Government and/or the State of Georgia. *See* 42 U.S.C. §§ 5410-5412; *accord* O.C.G.A. § 8-20-143; Ga. Comp. R. & Regs. 120-3-7-.19 (permitting the Office of Insurance and Fire Safety Commissioner to penalize any persons who violate the Rules and Regulations). In addition, there is a comprehensive federal and state consumer complaint and remedial action plan in place to protect consumers against defective construction triggering the manufacturer's obligation to inspect, repair, and in the event repair is not possible, replace or repurchase the defective manufactured home. *See* 42 U.S.C. § 5412; 24 CFR §§ 3282.401-3282.411; Ga. Comp. R. & Regs. 120-3-7-.07; Ga. Comp. R. & Regs. 120-3-7-.12.

The sum product of the cited regulations, and those not specifically referenced herein, is a highly regulated industry, not an unregulated consumer market which the FBPA and the UDTPA were intended to apply.

**III.**

**PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS AS A MATTER OF LAW.
(PLAINTIFF'S SECOND AMENDED COMPLAINT COUNT III)**

As fully set forth in Defendant's Motion to Dismiss, Plaintiff pled an express contract in her original Complaint. [ECF 82 at 19]. "[W]here there is an express contract, ***there can be no recovery*** based upon an unjust enrichment theory." *Han v. Han*, 295 Ga. App. 1, 4, 670 S.E.2d 842, 845 (2009)(cit. omitted in original; internal quotes omitted; emphasis added). Moreover, "[a]s a rule, there is no equity jurisdiction where there exists an adequate remedy at law." *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga. App. 254, 258, 687 S.E.2d 233, 239 (2009) citing *Total Supply v. Pridgen*, 267 Ga. App. 125, 128, 598 S.E.2d 805, 808 (2004) (punctuation and

footnote omitted in original). Having pled the existence of the valid contract and the Court having dismissed this claim as untimely, Plaintiff may not now seek equity for recovery in the face of a pled express contract. [ECF 27 at 22].

Alternatively, viewing Plaintiff's Second Amended Complaint independently of her prior allegations reveals the absence of any allegation that a contract existed between the parties. [*See* ECF 78]. "A claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Wachovia Ins. Services, Inc. v. Fallon*, 299 Ga. App. 440, 449, 682 S.E.2d 657, 664 quoting *Tidikis v. Network for Med., etc.,* 274 Ga. App. 807, 811(2), 619 S.E.2d 481 (2005). An unjust enrichment claim cannot be maintained as a matter of law where there is no allegation of a contract. *See Wachovia*, 299 Ga. App. 440, 449 ("Because Wachovia Insurance asserts unjust enrichment as a separate tort and not an alternative theory of recovery for a failed contract, this claim fails as a matter of law"). Alternatively, having failed in the Second Amended Complaint to include allegations that an unenforceable contract existed between the parties, Plaintiff's unjust enrichment claim contained in her Second Amended Complaint fails.

## **CONCLUSION**

For the reasons set forth herein as well as the arguments set forth in ScotBilt's Motion to Dismiss, ScotBilt respectfully requests that its Motion to Dismiss Plaintiff's Second Amended Complaint be GRANTED.

Respectfully submitted, this 9th day of December, 2011.

                                    ROBERTS TATE, LLC

                                    ***s/ James L. Roberts, IV***
                                    James L. Roberts, IV
                                    Georgia Bar No.: 608580
                                    Jason M. Tate
                                    Georgia Bar No. 250827

Post Office Box 21828
400 Main Street Cottage 1
St. Simons Island, GA 31522
Telephone: (912) 638-5200
Facsimile: (912) 638-5300

                                    CONNER AND JACKSON, PC
                                    Neal L. Conner, Jr.
                                    Georgia Bar No.: 182000

P.O. Box 1278                        *ATTORNEYS FOR DEFENDANT*
Waycross, GA 31502               *SCOTBILT HOMES, INC.*
Phone: (912)-283-4394
Fax: (912)-285-9813

CERTIFICATE OF SERVICE

I hereby certify that on this 9th Day of December, 2011, I electronically filed the foregoing **DEFENDANT SCOTBILT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

The following have been notified via U.S. Mail:

Joe R. Whatley, Jr., Esq.
Edith M. Kallas, Esq.
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036

W. Tucker Brown, Esq.
Sara C. Hacker, Esq.
WHATLEY DRAKE & KALLAS, LLC
1000 Park Place Towers
2001 Park Place North
Birmingham, Alabama 35203

Lynn W. Jinks, III, Esq.
Nathan A. Dickson, II, Esq.
JINKS, CROW & DICKSON, PC
P.O. Box 350
Union Spring, AL 36089

David Selby, II, Esq.
KEE & SELBY LLP
1900 International Park, Suite 220
Birmingham, AL 35243

This 9th day of December, 2011.

*s/ James L. Roberts, IV*
James L. Roberts, IV
Georgia Bar No.: 608580

1